**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

COALITION FOR OPEN DEMOCRACY,
*et al.*,

      *Plaintiffs*,

      v.

DAVID M. SCANLAN, in his official capacity
as New Hampshire Secretary of State, *et al.*,

      *Defendants*.

Case No. 1:24-cv-00312-SE-TSM

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION

An American citizen's fundamental right to vote, and to do so on equal footing with fellow citizens, is the practical manifestation of the principle of one person, one vote.[1] The United States Supreme Court has warned that voting rights "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."[2] Accordingly, federal law prohibits noncitizens from voting in elections for federal offices.[3] Likewise, New Hampshire law prohibits noncitizens from voting in state elections.[4]

The purpose of House Bill 1569 ("HB 1569") is to prevent debasement and dilution of New Hampshire citizens' votes.[5] It does so by requiring each prospective voter to present

---

[1] *See Rucho v. Common Cause*, 588 U.S. 684, 731, (2019) (citing *Reynolds v. Sims*, 377 U. S. 533, 566 (1964)).

[2] *See id.* (quoting *Reynolds*, 377 U. S. at 555) (internal quotations omitted).

[3] *See* 18 U.S.C. § 611.

[4] *See* RSA 654:1.

[5] *See* Sen. Election Law & Muni. Affairs Comm. H'rg at 1-2 (Apr. 23, 2024) (Rep. Bob Lynn) (explaining that proof of citizenship is important to election integrity and preventing fraud). The Senate hearing notes are attached as Exhibit A. The Secretary offers Exhibit A for context only.

documentation that he or she satisfies the voting qualifications set forth in long-standing federal and state law.[6]  Documentation may include a birth certificate, passport, naturalization papers, "or ***any other reasonable documentation*** which indicates the applicant is a United States citizen."[7]  This proof-of-citizenship requirement is far from burdensome, and to Defendant Secretary of State's knowledge, no applicant has been denied voter registration for failure to present citizenship documentation since HB 1569 went into effect.

The plaintiffs in this case are three organizations ("Organizational Plaintiffs") and five individuals ("Individual Plaintiffs") who challenge the constitutionality of HB 1569.[8]  Plaintiffs assert that requiring a prospective voter to prove that he or she is a citizen imposes an undue burden on that person.[9]  They ask the Court to enjoin the New Hampshire Secretary of State and Attorney General from implementing and enforcing HB 1569.[10]  The Secretary and Attorney General will assert that HB 1569's proof-of-citizenship requirement is constitutional for several reasons, not the least of which being the law's direct relation to voter qualifications and its flexibility with respect to accepting any reasonable citizenship documentation.[11]

But the merits of the parties' arguments are not yet before the Court because Plaintiffs do not have standing to bring this lawsuit.  Standing doctrine reflects "concern about the proper— and properly limited—role of the courts in a democratic society."[12]  A plaintiff's standing is a constitutional imperative, and a "threshold question in every federal case, determining the power

---

[6]  RSA 654:12, I.
[7]  RSA 654:12, I(a) (emphasis added).
[8]  ECF No. 1, ¶ 1.
[9]  *See id.* ¶¶ 95, 102.
[10]  *Id.* ¶ 124.
[11]  *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008).
[12]  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732 (1st Cir. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal quotations omitted).

of the court to entertain the suit."[13]  In this case, the Court does not have the power to entertain the suit because Plaintiffs have not alleged facts to establish that they or their members have been injured by HB 1569 or that their alleged injuries are fairly traceable to HB 1569.  If the Individual Plaintiffs or members of the Organizational Plaintiffs are nonvoters who do not have "***any*** … reasonable documentation which indicates the applicant is a United States citizen[,]" the Complaint must unambiguously state so, and identify the aggrieved members.[14]  But because Plaintiffs have made no such showing, the Individual Plaintiffs do not have standing and the Organizational Plaintiffs cannot pursue this lawsuit in a representative capacity.[15]

Also, the Organizational Plaintiffs lack standing on their own accord because they have not demonstrated a legally cognizable injury.[16]  They complain that HB 1569 has diverted their resources from their public policy advocacy, but diverted resources are not concrete injuries for the purposes of Article III standing.[17]  Moreover, "[a] mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury."[18]  Where, as here, a law does not directly impose an impediment to an organization's advocacy mission, doctrinal standing analysis does not recognize the organization's increased costs or diversion of resources as actual injuries.[19]

The Secretary and Attorney General, therefore, challenge the sufficiency of the Complaint's jurisdictional allegations.  Even assuming the Complaint's factual allegations as true

---

[13] *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

[14] *See* RSA 654:12, I(a) (emphasis added) *and see Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

[15] *See Housatonic River Initiative v. EPA*, 175 F.4th 248, 265 (1st Cir. 2023); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (holding that standing cannot rely upon "a highly attenuated chain of possibilities[.]").

[16] *See Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021).

[17] *Compare* ECF No. 1, ¶¶ 98 & 103 *with FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

[18] *AVX Corp.*, 962 F.2d at 114.

[19] *See All. for Hippocratic Med.*, 602 U.S. at 395.

3

for the purposes of this Rule 12(b)(1) Motion to Dismiss, the Court should dismiss the Complaint because Plaintiffs have not met their burden to establish this Court's subject-matter jurisdiction. Plaintiffs have not sufficiently alleged that they have suffered injury-in-fact caused by HB 1569, from which they could be relieved by a favorable judicial decision.[20]  Alternatively, if the Court were to find that any Plaintiff has standing (which none do for the reasons stated below), the Court should nevertheless dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint does not state claims upon which the Court may grant relief.

For these reasons, and as explained in greater detail below, the Court should dismiss the Complaint in its entirety.

## STANDARD OF REVIEW

Federal courts presume that causes of action lie outside their limited Article III constitutional authority, so plaintiffs have the burden to establish subject-matter jurisdiction by a preponderance of the evidence.  *See Spencer v. Doran*, 560 F. Supp. 3d 648, 651 (D.N.H. 2021) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).  "[W]here standing is at issue, heightened specificity is obligatory at the pleading stage[.]" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (quoting *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)).  So, a defendant may assert a facial challenge to the sufficiency of a plaintiff's jurisdictional allegations pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See Ives v. Bath & Body Works, LLC*, No. 23-cv-432, 2024 U.S. Dist. LEXIS 70611, *1-2 (D.N.H. Apr. 18, 2024) (citing *Freeman v. City of*

---

[20]  *See Housatonic River*, 175 F.4th at 265 (citing *Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 4 (1st Cir. 2022)).

*Keene*, 561 F. Supp. 3d 22, 25 (D.N.H. 2021)). Such motions to dismiss challenge whether a complaint "set[s] forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *See Draper*, 827 F.3d at 3 (quoting *AVX Corp.*, 962 F.2d at 115). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft" to satisfy a plaintiff's "burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (collecting cases).

In a facial jurisdictional challenge, a defendant raises questions of law without contesting a complaint's alleged jurisdictional facts. *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). Courts analyze these challenges in the same way they analyze Rule 12(b)(6) assertions that a complaint fails to state claims. *Id.* In Rule 12(b)(6) motions to dismiss, a court must "accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 23 (1st Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). A court "need not credit a plaintiff's threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

## RELEVANT FACTUAL BACKGROUND

New Hampshire enacted House Bill 1569 to ensure the integrity of New Hampshire elections. *See* Ex. A at 1-2 (Rep. Bob Lynn) (explaining that proof of citizenship is important to

election integrity and preventing fraud). Among other things, the new law requires voter registration applicants to provide proof of United States citizenship through a birth certificate, a United States passport, or naturalization papers. RSA 654:12, I(a). Notably—and of particular relevance to Plaintiffs' claims in this lawsuit—HB 1569 also offers applicants alternatives to these self-authenticating proof-of-citizenship documents by allowing other reasonable documentation to establish that prospective registrants are United States citizens. *See id.* Supervisors of the checklist, or city or town clerks, determine that which is or is not "reasonable documentation." *Id.* New Hampshire law, therefore, no longer permits applicants to submit affidavits to unilaterally profess their voter qualifications. *See, e.g.*, Ch. 378, HB 1569-FN (Final Version) (redlines to RSA 378:7 and repeals listed in RSA 378:10).[21]

Plaintiffs in this matter are three organizations and five individuals. Defendants accept their allegations as true for the limited purpose of this Motion to Dismiss. *See Cebollero-Bertran*, 4 F.4th at 69. Plaintiff Coalition for Open Democracy ("Open Democracy") is a non-profit 501(c)(3) organization whose mission it is "to bring about and safeguard political equality for the people of New Hampshire." ECF No. 1, ¶¶ 21-22. Plaintiff The Forward Foundation ("Forward Foundation") is a 501(c)(3) organization whose mission it is "to increase the participation of working-age people in democracy, enabling the next generation to thrive." *Id.* ¶¶ 39-40. Plaintiff League of Women Voters of New Hampshire ("League of Women Voters") is a 501(c)(4) organization with at least 350 members in three New Hampshire chapters. *Id.* ¶ 33. Its mission "is to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and

---

[21] The final approved version of HB 1569 is attached hereto as Exhibit B.

advocacy." *Id.* ¶ 34.  The three Organizational Plaintiffs do not identify or name the members of their organizations who have been or will be injured by HB 1569.

Plaintiff McKenzie Nykamp Taylor is a United States citizen, a resident of New Hampshire, and registered to vote in this state.  *Id.* ¶ 48.  Plaintiff December Rust is also a United States citizen, a resident of New Hampshire, and registered to vote in this state.  *Id.* ¶ 49. Plaintiff Miles Borne is a United States citizen and resident of New Hampshire who is not yet old enough to register to vote.  *Id.* ¶ 51.  Plaintiffs Alexander Muirhead and Lila Muirhead are also United States citizens and residents of New Hampshire who are not yet old enough to register to vote.  *Id.* ¶¶ 52-53.

Plaintiffs bring this action against Defendants Secretary of State David M. Scanlan and Attorney General John M. Formella, in their official capacities.  *Id.* ¶¶ 54-55.  Secretary Scanlan is New Hampshire's chief election officer, and Attorney General Formella is New Hampshire's chief legal officer.  *See* RSA 652:23; 7:6; 7:11.  New Hampshire law requires the Secretary to prepare a manual on election law and procedures for conducting elections, which he will update to reflect HB 1569's changes prior to the next election.  RSA 652:22.  New Hampshire law requires the Attorney General to provide legal advice to the Secretary in preparing the updated election manual.  *Id.*

HB 1569 went into effect on November 11, 2024.  *See* RSA 378:11.  On information and belief, no applicant has been denied voter registration for failure to present reasonable citizenship documentation as required by HB 1569, including the Individual Plaintiffs and the Organizational Plaintiffs' members.  *See generally* ECF No. 1, ¶¶ 56-91 (Statement of Facts).

## ARGUMENT

The Organizational Plaintiffs have not satisfied their burdens to establish this Court's subject-matter jurisdiction in at least two respects.  First, the Organizational Plaintiffs cannot

proceed in a representative capacity because (a) they either do not have members or their members do not have standing to sue in their own right; (b) their challenges to HB 1569 are not germane to their organizational purposes; and (c) the Complaint provides insufficient detail to determine whether the nature of the claims or the relief sought requires individual member participation.  Second, the Organizational Plaintiffs do not have standing independent of their members because HB 1569 does not directly invade the organization's own rights by frustrating the organizations' purposes.

Likewise, the Individual Plaintiffs have not satisfied their burdens to establish this Court's subject-matter jurisdiction.  The Individual Plaintiffs (a) have not suffered injuries-in-fact that are concrete, particularized, and actual or imminent; (b) the injuries they allege to have suffered are not fairly traceable to HB 1569; and (c) their alleged injuries are not likely to be redressed by a favorable judicial decision.

For the reasons explained below, Plaintiffs do not have standing to assert their challenges to HB 1569, but were the Court to conclude differently, it should nevertheless dismiss the Complaint because Plaintiffs fail to state claims upon which the Court may grant relief.  The Complaint does not offer any facts from which the Court could reasonably infer that the "character and magnitude" of Plaintiffs' alleged injuries outweighs New Hampshire's important interest in ensuring that the state counts only the votes of eligible voters.

I.    **The Organizational Plaintiffs Do Not Have Associational Standing Because They Do Not Have Members or Their Members Do Not Have Standing in Their Own Right, House Bill 1569 Is Not Germane to Their Organizational Purposes, and Their Claims May Require Individual Member Participation**

Standing doctrine mandates that the Organizational Plaintiffs "establish each part of a familiar triad: injury, causation, and redressability."  *Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)) (internal

quotations and citations omitted). Although it is not clear on the face of the Complaint, it appears that each Organizational Plaintiff purports to assert representational standing on behalf of its members. *See, e.g.*, ECF No. 1, ¶¶ 98, 103. If that is the case, this Court's subject-matter jurisdiction is governed further by a doctrinal subset of standing, commonly referred to as "associational standing." *See Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 107-08 (1st Cir. 2006). Associational standing requires each Organizational Plaintiff to demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) its claims are germane to its purpose; and (c) neither its claims nor the relief they seek require its members to participate individually. *Id.* (quoting *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (internal quotations and citations omitted). The Organizational Plaintiffs do not have standing because they have not sufficiently alleged these mandatory prerequisites.

### A.    The Organizational Plaintiffs Have Not Sufficiently Alleged That Each Organization Has a Member with Individual Standing to Challenge House Bill 1569 in His or Her Own Right

At least one member each of the Coalition for Open Democracy, The Forward Foundation, and the League of Women Voters of New Hampshire, must have individual standing to confer subject-matter jurisdiction upon this Court. *Housatonic River Initiative v. United States EPA*, 175 F.4th 248, 265 (1st Cir. 2023) (quoting *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010)). To establish a member's individual standing, each Organizational Plaintiff must plausibly allege that it has a member who: (1) has suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the member's injury is fairly traceable to HB 1569; and (3) that the member's alleged injury will likely be redressed by a favorable judicial decision. *See id.* (citing *Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 4 (1st

Cir. 2022)).  The Organizational Plaintiffs have not named any member who satisfies these elements of individual standing.

The requirement that an association **specifically** identify at least one member with standing is well-settled and unambiguous.  In *Draper v. Healey*, for example, a Second Amendment advocacy group challenged the constitutionality of a Massachusetts firearms regulation.  *Draper v. Healey*, 827 F.3d 1, 2 (1st Cir. 2016).  The court explained that "where standing is at issue, heightened specificity is obligatory at the pleading stage." *Id.* at 3 (quoting *AVX Corp.*, 962 F.2d at 115) (internal quotations omitted).  The court held that dismissal for lack of subject-matter jurisdiction was appropriate at the pleading stage because a "complaint must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *See id.* at 3-4 (quoting *AVX Corp.*, 962 F.2d at 115) (internal quotations omitted).

Writing for the *Draper* court while sitting by designation, Justice Souter explained that an "association must, **at the very least**, identify a member who has suffered the requisite harm." *Id.* at 3 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)) (cleaned up) (emphasis added).  Justice Souter held that the firearms association did not have standing because "the complaint did not identify any member of the group whom the regulation prevented from selling or purchasing" a firearm. *Id.*  Also, although "[t]he group submitted an affidavit asserting that many of its members asked it to take legal action challenging the regulation, [] the Supreme Court has said that an affidavit provided by an association to establish standing is insufficient unless it **names** an injured individual." *Id.* (citing *Summers*, 555 U.S. at 498) (emphasis added).

So, to satisfy the prerequisites for standing in this case, the Organizational Plaintiffs must each **name** at least one of its members who alleges to be: (1) a New Hampshire citizen; (2) who

is not currently registered to vote; (3) who has been denied the right to register to vote or who (at a minimum) will imminently register to vote; and (4) who cannot produce, or will be severely burdened by producing, a birth certificate, passport, naturalization papers, or any other reasonable documentation which indicates that he or she is a United States citizen. *See* ECF No. 1, ¶ 9 ("This lawsuit challenges HB 1569's requirement of documentary proof of citizenship for registrants."), ¶¶ 98 & 103 ("HB 1569 would also harm Organizational Plaintiffs because it would disproportionately impact their members and constituents[.]").  Not one of them has satisfied its burden.

### 1.    Coalition for Open Democracy and The Forward Foundation Have Not Alleged That They Have Members of Any Sort

Open Democracy purports to have "constituencies," "volunteers," and "student partners." *Id.* ¶¶ 23, 25.  Likewise, Forward Foundation purports to have "constituencies," "citizens who actively volunteer," and "partner organizations." *Id.* ¶¶ 41, 44, 47.  Alleging that an organization has supporters is not the same as alleging that an organization has membership. *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 6-7 (D. Mass. 2020) (citing *Hunt*, 432 U.S. at 344) (holding that merely alleging an organization has supporters who "voluntarily associate" with the organization does not sufficiently establish standing).  Where an organization has "not alleged that [it] has members of any sort," it cannot assert associational standing. *See Equal Means Equal*, 450 F. Supp. 3d at 7.

Here, Open Democracy and Forward Foundation do not allege that they have members. *See generally* ECF No. 1, ¶¶ 21-32 (describing Open Democracy's 501(c)(3) status, mission, and public interest engagement), ¶¶ 39-47 (describing Forward Foundation's 501(c)(3) status, mission, and public interest engagement).  The Complaint does not even assert that these organizations have non-traditional members who bear "all the indicia of membership in an

organization." *See Equal Means Equal*, 450 F. Supp. 3d at 6 (quoting *Hunt*, 432 U.S. at 344).

For example, "indicia of membership" include individuals with the exclusive right to elect

organizational members, the exclusive right to serve in organizational leadership, and who

exclusively finance the organization and its litigation. *See Hunt*, 432 U.S. at 344. Such indicia

are required where a non-membership organization asserts that it represents the "functional

equivalent" of members. *See Flyers Rights Educ. Fund, Inc. v. United States Dep't of Transp.*,

957 F.3d 1359, 1361 (D.C. Cir. 2020).

Neither Open Democracy nor Forward Foundation allege indicia of membership for those

it purports to represent in this lawsuit. Voluntary association and support for their organizations

is not sufficient to establish that the organizations are the functional equivalent of membership

associations. *See Equal Means Equal*, 450 F. Supp. 3d at 6. So, it follows that the alleged harm

cannot be fairly traceable to HB 1569, nor can the Court redress the alleged harm by a favorable

decision. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (describing the

relationship among the three jurisdictional factors). Accordingly, the Complaint does not allege

sufficient facts to establish the Court's subject-matter jurisdiction over Open Democracy's and

Forward Foundation's representational claims.

> **2.    The League of Women Voters of New Hampshire Has Not Sufficiently Alleged That It Has a Member with Individual Standing to Challenge House Bill 1569 in His or Her Own Right**

League of Women Voters alleges that it has 350 members across three New Hampshire

chapters. *See ECF No. 1, ¶ 33.* The organization claims that its "membership includes qualified

voters who would be substantially burdened by HB 1569[,]" but statistical probability of harm to

an association's membership is not enough to confer subject-matter jurisdiction upon this Court.

*Summers*, 555 U.S. at 499. The Complaint does not reference ***any*** specific member—much less

identify a member's name—who has suffered the alleged injury of which it complains. Instead,

the Complaint alleges that the League of Women Voters' "volunteers routinely encounter individuals who do not possess or cannot find documentary proof of citizenship."  ECF No. 1, ¶ 36.  "Individuals" are not members.  *See Equal Means Equal*, 450 F. Supp. 3d at 6 (holding that voluntary association with an organization does not establish membership in an organization).

But even **had** League of Women Voters named a member, or even **if** a member could be creatively coaxed from the Complaint's penumbra, the Complaint nevertheless offers no facts to support its jurisdictional assertions.  To be sure, the Complaint is replete with legal conclusions regarding the constitutionality of HB 1569, but legal conclusions may only provide the framework of a complaint.  *See Medeiros v. Town of Rindge*, 671 F. Supp. 3d 96, 103 (D.N.H. 2023) (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted).  Legal conclusions must be supported by plausible factual allegations but there are none here.  *See id.*  It is impossible to ascertain on the face of the Complaint whether the harm alleged is actual or imminent or concrete and particularized to **any** member.  *See All. for Hippocratic Med.*, 602 U.S. at 379-80 (describing the importance and requirements for a plaintiff to establish Article III standing).  The Court should not countenance League of Women Voters' "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *See Alston*, 988 F.3d at 571 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).  This is particularly true where, as here, the organization is obligated to provide "heightened specificity" with respect to its members' standing and this Court's subject-matter jurisdiction.  *See Draper*, 827 F.3d at 3 (quoting *AVX Corp.*, 962 F.2d at 115).

So, since League of Women Voters has not plausibly alleged that any specific member has suffered a concrete and particularized harm that is actual or imminent, it follows that the

alleged harm cannot be fairly traceable to HB 1569, nor can the Court redress the alleged harm by a favorable decision. *See All. for Hippocratic Med.*, 602 U.S. at 380 (describing the relationship among the three jurisdictional factors). Accordingly, the Complaint does not allege sufficient facts to establish the Court's subject-matter jurisdiction over League of Women Voters' representational claims.

**B.    The Organizational Plaintiffs' Purposes Are Not Germane to House Bill 1569's Proof-of-Citizenship Voter Registration Requirement**

The interests the Organizational Plaintiffs seek to protect in this lawsuit must be germane to the organizations' purposes, to confer subject-matter jurisdiction. *See Council of Ins. Agents & Brokers*, 443 F.3d at 108 (quoting *Hunt*, 432 U.S. 333, 343 (1977)) (internal quotations and citations omitted). In other words, the lawsuit's objective must align with the Organizational Plaintiffs' core purposes. *See Housatonic River*, 75 F.4th at 265 (citing *Hunt*, 432 U.S. at 343). The Court, therefore, must examine whether the lawsuit reasonably tends "to further the general interests that individual members sought to vindicate in joining the association and … bears a reasonable connection to the association's knowledge and experience." *Saget v. Trump*, 375 F. Supp. 3d 280, 336 (E.D.N.Y. 2019) (quoting *Bldg. & Constr. at Trades Council & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006)) (internal quotations omitted). The Complaint manifests a misalignment of this lawsuit's objective with the Organizational Plaintiffs' missions.

This lawsuit's objective is to declare HB 1659's proof-of-citizenship voter registration unconstitutional. ECF No. 1, ¶¶ 123-126. So, a favorable decision would purportedly serve the interests of (1) unregistered prospective voters who (2) cannot produce reasonable documentation to establish their United States citizenship as required by HB 1569. *Id.* ¶ 74 ("Those prospective registrants unable to present one of these documents would be stripped of

the right to vote.").  The Organizational Plaintiffs' missions, on the other hand, are to "bring about and safeguard political equality for the people of New Hampshire[,]" to "increase the participation of working-age people in democracy, enabling the next generation to thrive[,]" and to "encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy."  *Id.* ¶ 22 (Open Democracy), ¶ 40 (Forward Foundation), ¶ 34 (League of Women Voters).  The Organizational Plaintiffs do ***not*** allege that they represent the interests of people who are unregistered prospective voters who cannot produce reasonable documentation to establish their citizenship.

The Organizational Plaintiffs' missions are undeniably broad, but broad missions do not cure the Organizational Plaintiffs' jurisdictional defect.  Broad mission statements that promote civic engagement do not evince that members joined the associations to take on every conceivable issue in the realm of public debate.  *Cf. Katz*, 672 F.3d at 72 (explaining that prudential standing requires more than a generalized grievance shared by the public at large).  That is why "an organization cannot manufacture standing merely by defining its mission with hydra-like or extremely broad aspirational goals[.]"  *Nielsen v. Thornell*, No. 22-15302, 2024 U.S. App. LEXIS 16550, at *9 (9th Cir. July 8, 2024).  Were it otherwise, Article III standing would have little practical purpose, as every public policy advocacy group could contrive an injury in virtually any voting-related case.  *See id.*

To establish germaneness, the Organizational Plaintiffs must allege that New Hampshire's proof-of-citizenship voting registration requirement directly impedes their missions.  *Cf. All. for Hippocratic Med.*, 602 U.S. at 395 (holding that medical associations did not have standing where the associations failed to allege injury caused by a regulatory

15

impediment to their advocacy).  Instead, they merely allege that the new law requires them to

alter their advocacy strategies and tactics.  *See, e.g.*, *id.* ¶ 26 ("Open Democracy would be forced

to redirect and expend significant resources to address the law's effect on this core service."),

¶ 42 ("The Forward Foundation would need to expend significant resources to modify and

recreate all of its educational materials, mailings, TV and digital ads, and website[.]"), ¶ 35,

("[League of Women Voters] would be forced to devote significant time and resources toward

redesigning its informative printed and online materials[.]").

That the Organizational Plaintiffs' endeavor to increase civic engagement is too

attenuated to HB 1569's proof-of-citizenship requirement to confer standing.  Indeed, the

associations support citizenship as a voter registration requirement and acknowledge that

prospective voters must be required to "demonstrate[e] citizenship, identity, and age."  *See id.*

¶ 73.  The Organizational Plaintiffs simply object to the ***mechanism*** adopted by the political

branches to ensure that registrants are citizens.  Accordingly, the Complaint does not allege that

the interests asserted in this lawsuit are germane to their organizational purposes, so the Court

lacks subject-matter jurisdiction over the Organizational Plaintiffs' representational claims.

### C.    The Organizational Plaintiffs' Challenges to House Bill 1569 May Require the Participation of the Organizational Plaintiffs' Members

Neither the claims asserted nor the relief requested in this case can require the

Organizational Plaintiffs' members to individually participate, to confer subject-matter

jurisdiction.  *See Council of Ins. Agents & Brokers*, 443 F.3d at 108 (quoting *Hunt*, 432 U.S. at

343) (internal quotations and citations omitted).  This is a prudential test.  *Pharm. Care Mgmt.*

*Ass'n v. Rowe*, 429 F.3d 294, 306 (1st Cir. 2005).  Typically, individual member participation is

not required in cases that seek only declaratory judgment and prospective injunctive relief.  *See,*

*e.g.*, *Coll. of Dental Surgs. of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009).

But plaintiffs are not entitled to an automatic pass simply because they do not seek damages. *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006). Rather, the question is whether adjudicating the merits of an association's claim requires the court to engage in a "fact-intensive-individual inquiry." *Id.*

Here, the Organizational Plaintiffs failed to identify any member that has allegedly suffered harm that is actual or imminent or concrete and particularized, so they have also failed to provide sufficient information from which this Court could determine whether this case presents a "fact-intensive-individual inquiry" that would preclude associational standing. Accordingly, the Court lacks subject-matter jurisdiction over the Organizational Plaintiffs' representational claims.

## II.    None of the Organizational Plaintiffs Have Direct Standing Independent of Their Members Because House Bill 1569 Has Not Caused Them to Suffer a Legally Cognizable Injury

The Organizational Plaintiffs also have failed to establish that they have standing as organizations, independent of their members. An organization may assert its own standing to sue in federal court, but an organization must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *All. for Hippocratic Med.*, 602 U.S. at 393-94 (citing *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 378-79 (1982)). So,

> [l]ike an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization[.]

*Id.* at 394 (internal quotations and citations omitted). The Complaint does not plausibly allege that HB 1569 has caused or will cause the Organizational Plaintiffs a cognizable injury.

The Complaint contends that HB 1569 will require the Organizational Plaintiffs "to "dedicate more resources toward efforts to assist voters who are forced to navigate the

17

burdensome restrictions imposed by the requirement to present documentary proof of citizenship." *Id.* ¶ 98.  Also, it claims that HB 1569 will cause them to "dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the threat of a voter challenge to their qualifications to vote." *Id.* ¶ 103.  Open Democracy alleges that it must "revise, reprint, and redistribute its voter education materials and retool its programming[,]" and "create programming to educate the most vulnerable populations … about HB 1569's documentary proof of citizenship requirements and how to obtain the necessary documentation to register to vote." *Id.* ¶ 30.  Forward Foundation alleges that is must "modify and recreate all of its educational materials, mailings, TV and digital ads, and website to reflect HB 1569's changes and to combat the confusion that it would cause[,]" and "develop and conduct new volunteer training programs and in-person education sessions." *Id.* ¶ 42.  League of Women Voters alleges that it must "redesign[] its informative printed and online materials to reflect the new documentary proof requirements under the law[,]" and create "longer educational materials that cost more to print." *Id.* ¶ 35.  In sum, each alleges that the net effect of HB 1569's changes to New Hampshire law will negatively impact their other advocacy activities.  *Id.* ¶¶ 30, 42, 35.

But even accepting these allegations as true for the limited purpose of this Motion to Dismiss, these allegations do not plausibly allege injury to the Organizational Plaintiffs.  Time and again, the First Circuit and the United State Supreme Court have explained that injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *See, e.g.*, *Katz*, 672 F.3d at 71 (quoting *Lujan*, 504 U.S. at 560) (internal quotations omitted).  Notably, "an organization cannot establish standing if the 'only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy.'" *Equal Means Equal*,

3 F.4th at 30 (quoting *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015)).

The Supreme Court specifically addressed injury as it relates to an association's standing in *FDA v. Alliance for Hippocratic Medicine*. In that case, pro-life medical associations and doctors argued that the FDA's relaxed regulatory requirements for an abortion drug violated the Administrative Procedure Act. *All. for Hippocratic Med.*, 602 U.S. at 373. The associations alleged that they had standing to challenge the FDA's regulation because the FDA "impaired their ability to provide services and achieve their organizational missions." *Id.* at 394 (internal quotations omitted). They asserted that the FDA "'caused' the associations to conduct their own studies … so that the associations [could] better inform their members and the public about [the drug's] risks." *Id.* The associations said that the FDA "'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging in public advocacy and public education." *Id.* All of this, the plaintiffs asserted, would result in considerable resource reallocation "to the detriment of other spending priorities." *Id.*

The Supreme Court unanimously held that the associations lacked standing. It explained that "[a] plaintiff must show 'far more than simply a setback to the organization's abstract social interests.'" *Id.* (quoting *Havens Realty Corp.*, 455 U. S. at 379 n.19). The Court reasoned that:

> an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way.

*Id.* The principal rule of *Alliance for Hippocratic Medicine* is that where a governmental action does not directly impose an impediment to an association's advocacy, the association has not suffered injury to a legally protected interest. *See id.* at 395.

If the *Alliance for Hippocratic Medicine*'s jurisdictional allegations sound familiar, there is a reason. They are nearly identical to those presented by the Organizational Plaintiffs in this case. The Organizational Plaintiffs complain of diverted resources from their advocacy to public assistance and public education. *See id.* ¶¶ 30, 42, 35. As the Supreme Court explained, these purported harms are not concrete injuries for the purposes of Article III standing. *All. for Hippocratic Med.*, 602 U.S. at 394. And without a cognizable concrete and particularized harm, HB 1569 could not have caused injury to the Organizational Plaintiffs, nor could the Court redress their alleged injuries with a favorable decision. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1375 (1st Cir. 1992). Like the associations in *Alliance for Hippocratic Medicine*, the Organizational Plaintiffs do not plausibly allege standing independent of their members, so the Court lacks subject-matter jurisdiction over the Organizational Plaintiffs' direct claims.

## III. The Individual Plaintiffs Do Not Have Standing Because They Have Not Suffered Injuries-in-Fact, Their Alleged Injuries Were Not and Will Not Be Caused by House Bill 1569, and Their Alleged Injuries Will Not Be Redressed by the Relief the Individual Plaintiffs Seek

"Standing is built on a single basic idea—the idea of separation of powers." *All. for Hippocratic Med.*, 602 U.S. at 378 (quoting *United States v. Texas*, 599 U. S. 670, 675 (2023)) (internal quotations omitted). Accordingly, Article III of the United States Constitution "requires a plaintiff to first answer a basic question: 'What's it to you?'" *Id.* at 379 (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)) (internal quotations omitted). In other words, a "plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *All. for*

*Hippocratic Med.*, 602 U.S. at 379 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423

(2021)).  A plaintiff must demonstrate:

> (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury
> likely was caused or will be caused by the defendant, and (iii) that the injury likely
> would be redressed by the requested judicial relief.

*All. for Hippocratic Med.*, 602 U.S. at 380 (citing *Summers*, 555 U. S. at 493; *Lujan*, 504 U. S. at

560-561).  "Neither conclusory assertions nor unfounded speculation can supply the necessary

heft" to plausibly demonstrate a plaintiff's standing.  *Hochendoner*, 823 F.3d at 732 (citing

*Iqbal*, 556 U.S. at 678-79).  Here, the Individual Plaintiffs merely speculate as to the harm that

they may one day suffer and they have not alleged a causal link between their alleged harm and

HB 1569, so they have not sufficiently alleged the prerequisites for standing.

### A.    The Individual Plaintiffs Have Not Sufficiently Alleged That They Have Suffered Actual or Imminent Concrete and Particularized Harm

The first element of individual standing is injury-in-fact.  *All. for Hippocratic Med.*, 602

U.S. at 381.  A plaintiff has the burden to allege a concrete injury, "meaning that it must be real

and not abstract."  *Id.* (citing *TransUnion LLC*, 594 U.S. at 424); *Spokeo, Inc. v. Robins*, 578

U.S. 330, 340 (2016) (citing Webster's Third New International Dictionary 472 (1971) and

Random House Dictionary of the English Language 305 (1967)).  Furthermore, the alleged

concrete injury must be actual or imminent and not speculative, "meaning that the injury must

have already occurred or be likely to occur soon."  *All. for Hippocratic Med.*, 602 U.S. at 381

(citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

The United States Supreme Court has "repeatedly reiterated that 'threatened injury must

be ***certainly impending*** to constitute injury in fact,' and that '[a]llegations of ***possible*** future

injury' are not sufficient."  *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S.

149, 158 (1990) and collecting cases)) (emphasis in original).  Imminence "cannot be stretched

beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is ***certainly*** impending." *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2 (emphasis in original; internal quotations omitted).

The alleged actual or imminent concrete injury must be particularized, meaning that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *All. for Hippocratic Med.*, 602 U.S. at 381 (quoting *Lujan*, 504 U. S. at 560 n.1). "The requirement that a plaintiff must adduce facts demonstrating that he himself is adversely affected guarantees that 'the decision as to whether review will be sought [is] in the hands of those who have a direct stake in the outcome[.]'" *Hochendoner*, 823 F.3d at 732 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)). The Individual Plaintiffs have not articulated their injuries-in-fact.

### 1. Plaintiff McKenzie Nykamp Taylor Has Not Sufficiently Alleged That She Has a Direct Stake in the Outcome of This Lawsuit

Ms. Taylor alleges that she is a United States citizen who is currently registered to vote in Manchester, New Hampshire. ECF No. 1, ¶ 48. She alleges that she was married more than four months ago and that her marriage license changed her surname to Taylor, but she has not yet updated her passport, driver's license, "or other identifying documents[.]" *See id.* She believes that she must re-register to vote with her new name in future elections. *Id.* Ms. Taylor asserts further that she intends to move "in the near future," perhaps to a "different ward in Manchester or in a different municipality[.]" *Id.* If that happens, she believes that she must again re-register to vote. *Id.* (citing RSA 654:12, III).

Accepting the foregoing allegations as true for the limited purpose of this Motion to Dismiss, Ms. Taylor's assertions do not sufficiently allege that Ms. Taylor has suffered or will

suffer injury-in-fact.[22]  She has not alleged that she does not have a birth certificate or that she cannot update her passport prior to the next election.  Nor has Ms. Taylor alleged that she lacks any other reasonable documentation which indicates that she is a United States citizen, much less that a supervisor of the checklist or the city clerk has refused or will refuse to register her as a voter because Ms. Taylor believes that her alternative citizenship documentation is somehow deficient.  Ms. Taylor cannot support her claim to standing with conclusory statements regarding the theoretical injury she ***may*** suffer ***if*** a supervisor of the checklist or the city clerk does not accept her citizenship documentation.  *See Alston*, 988 F.3d at 571; *Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Ms. Taylor's allegations are impermissibly conjectural and hypothetical.  *See Spokeo, Inc.*, 578 U.S. at 340.  Her right to register to vote is not imminently at risk—she is a registered voter.  *Compare* ECF No. 1, ¶ 48 (alleging that she is a current voter merely "at risk" HB 1569 could impair her right to vote) *with Clapper*, 568 U.S. at 409.  As to particularity, Ms. Taylor offers only conjecture to suggest that she, herself, will be among those potentially injured by HB 1569 when (or, more correctly, ***if***) she moves.  *See Hochendoner*, 823 F.3d at 732.  That of which Ms. Taylor complains is a generalized grievance, which is not enough to establish standing in federal courts.  *See All. for Hippocratic Med.*, 602 U.S. at 381.

---

[22]  Please note that Ms. Taylor also misunderstands that which HB 1569 requires of her upon changing her name or moving—HB 1569 does not require her to prove her citizenship.  RSA 654:12, III.  So even if Ms. Taylor adequately alleged standing here, which she has not, Ms. Taylor has failed to state a claim upon which the Court may grant relief, as explained in greater detail in Section IV.A. below.

### 2.     Plaintiff December Rust Has Not Sufficiently Alleged That He Has a Direct Stake in the Outcome of This Lawsuit

Mr. Rust alleges that he is a United States citizen who is currently registered to vote in Littleton, New Hampshire.  ECF No. 1, ¶ 49.  He alleges that he does not have a permanent address and that he has lived in three different places in Littleton in the last year.  *Id.*  Mr. Rust asserts that he does not have a passport or access to his birth certificate, and is nondriver identification inaccurately reflects his current domicile.  *Id.* ¶¶ 49, 50.  He asserts further that he "expects to be required to move" in the next year, and that "[i]f he moves outside his current ward," he believes that he must re-register to vote.  *Id.* ¶ 49 (citing RSA 654:12, III).  Mr. Rust also claims that he "is at substantial risk" of being denied his right to vote if he is confronted with a voter challenge to his domicile at the polls.  *Id.* ¶ 50.

Accepting the foregoing allegations as true for the limited purpose of this Motion to Dismiss, Mr. Rust's assertions do not sufficiently allege that Mr. Rust has suffered or will suffer injury-in-fact.[23]  Although he has alleged that he does not have "access" to his birth certificate, he has not alleged that he cannot retrieve it from his birthplace, Portland, Maine.  Perhaps more importantly, Mr. Rust has not alleged that he lacks any other reasonable documentation which indicates that he is a United States citizen, much less that a supervisor of the checklist or the town clerk has refused or will refuse to register him as a voter because Mr. Rust believes that his alternative citizenship documentation is somehow deficient.  Mr. Rust cannot support his claim to standing with conclusory statements regarding the theoretical injury he ***may*** suffer ***if*** a supervisor of the checklist or the town clerk does not accept his citizenship documentation.  *See*

---

[23]  Please note that like Ms. Taylor, Mr. Rust also misunderstands that which HB 1569 requires of him upon moving—HB 1569 does not require him to prove his citizenship.  RSA 654:12, III.  So even if Mr. Rust adequately alleged standing here, which he has not, Mr. Rust has failed to state a claim upon which the Court may grant relief, as explained in greater detail in Section IV.A. below.

*Alston*, 988 F.3d at 571; *Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Mr. Rust's allegations are impermissibly conjectural and hypothetical. *See Spokeo, Inc.*, 578 U.S. at 340. His right to register to vote is not imminently at risk—he is a registered voter. *Compare* ECF No. 1, ¶¶ 49-50 (alleging that he is a current voter merely "at risk" HB 1569 could impair his right to vote) *with Clapper*, 568 U.S. at 409. As to particularity, Mr. Rust offers only conjecture to suggest that he, himself, will be among those potentially injured by HB 1569 when (or, more correctly, *if*) he moves. *See Hochendoner*, 823 F.3d at 732. That of which Mr. Rust complains is a generalized grievance, which is not enough to establish standing in federal courts. *See All. for Hippocratic Med.*, 602 U.S. at 381.

### 3. Plaintiffs Miles Borne, Alexander Muirhead, and Lila Muirhead Have Not Sufficiently Alleged That They Have a Direct Stake in the Outcome of This Lawsuit

Mr. Borne, Mr. Muirhead, and Ms. Muirhead allege that they are United States citizens living in Rye and Hanover, New Hampshire. ECF No. 1, ¶¶ 51, 52, 53. Mr. Borne asserts that he intends to register to vote when he turns 18 in 2025, and Mr. Muirhead and Ms. Muirhead assert that they intend to register to vote when they turn 18 in 2026. *Id.* They express concern that registering to vote will "require[] [them] to locate and present either [their] birth certificate or passport upon registering." *Id.*

Accepting the foregoing allegations as true for the limited purpose of this Motion to Dismiss, Mr. Borne's, Mr. Muirhead's, and Ms. Muirhead's assertions do not sufficiently allege that they suffered or will suffer injury-in-fact. It appears that all three youths have ***both*** their birth certificates and passports—they merely allege that they would have to "locate and present either." *See id.* Mr. Borne, Mr. Muirhead, and Ms. Muirhead have not alleged that they lack any

other reasonable documentation which indicates that they are United States citizens, much less

that a supervisor of the checklist or the town clerk will refuse to register them as voters.  The

three youths cannot support their claim to standing with conclusory statements regarding the

theoretical injury they *may* suffer *if* a supervisor of the checklist or the town clerk does not

accept their alternative citizenship documentation.  *See Alston*, 988 F.3d at 571; *Clapper*, 568

U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to

how independent decisionmakers will exercise their judgment.").

      Mr. Borne's, Mr. Muirhead's, and Ms. Muirhead's allegations are impermissibly

conjectural and hypothetical.  *See Spokeo, Inc.*, 578 U.S. at 340.  Their rights to register to vote

are not imminently at risk.  *Compare* ECF No. 1, ¶ 48 (alleging that HB 1569 puts his future

voter registration merely at "substantial risk") *with Clapper*, 568 U.S. at 409.  As to particularity,

the youths offer only conjecture to suggest that they, themselves, will be among those potentially

injured by HB 1569 when they register to vote.  That of which Mr. Borne, Mr. Muirhead, and

Ms. Muirhead complain is a generalized grievance, which is not enough to establish standing in

federal courts.  *See All. for Hippocratic Med.*, 602 U.S. at 381.

    **B.**    **The Individual Plaintiffs Have Not Sufficiently Alleged That the Harm of
Which They Complain Is Fairly Traceable to House Bill 1569 or That the
Relief They Seek Would Redress Their Grievances**

      The second element of standing, causation, requires a plaintiff to allege that a defendant

likely caused or will cause the actual or imminent concrete and particularized harm of which the

plaintiff complains.  *Id.* at 382.  Like injury-in-fact, "the causation requirement screens out

plaintiffs who were not injured by the defendant's action."  *Id.* at 383.  "Without the causation

requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of

government action."  *Id.* at 383-84 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)).  The

third element, redressability, is closely related to causation.  *Id.* at 380-81 (citing *Sprint*

*Commc'ns Co. v. APCC Servs., Inc.*, 554 U. S. 269, 288 (2008). "If a defendant's action causes an injury, enjoining the action … will typically redress that injury." *Id.* at 381.

For the reasons stated in Section III.A. above, the Individual Plaintiffs have not sufficiently alleged injury-in-fact. It follows, therefore, that injury cannot be fairly traceable to HB 1569, nor can the Court redress the alleged injury by a favorable decision. *See id.* at 380. (describing the relationship among the three jurisdictional factors). Accordingly, the Complaint does not establish that any of the Individual Plaintiffs have standing, so the Court lacks subject-matter jurisdiction over the Individual Plaintiffs' claims.

## IV. Alternatively, Were the Court to Find That Plaintiffs Have Sufficiently Alleged Standing, the Court Should Nevertheless Dismiss the Complaint Because It Fails to State Claims Upon Which the Court May Grant Relief

Even were the Court to find that the Organizational or Individual Plaintiffs have standing to proceed, the Complaint fails to state plausible claims upon which the Court may grant relief to either. Counts I and II should be dismissed for failure to state plausible claims that HB 1569 imposes an unjustifiable burden on their right to vote. Count III should be dismissed for failure to state a plausible claim that HB 1569 denies them due process. Lastly, Count IV should be dismissed for failure to state a plausible claim that HB 1569 denies them equal protection under the law for reasons of disparate treatment.

### A. Plaintiffs McKenzie Nykamp Taylor and December Rust Concede That House Bill 1569 Does Not Apply to Them

Before discussing the specific failures to state claims, it is important to note that Ms. Taylor and Mr. Rust acknowledge that HB 1569 does not apply to them, so it is impossible for them to state claims upon which relief may be granted. Ms. Taylor alleges that her recent marriage requires that she re-register to vote and that *if* she moves, she must again re-register. ECF No. 1, ¶ 48. Mr. Rust alleges that *if* he moves, he too must re-register to vote. *Id.* ¶ 49. If

they register in a new jurisdiction, though, election officials will confirm their current voting status in the centralized voter registration database—neither will prove their citizenship. RSA 654:12, III. This is so because Ms. Taylor and Mr. Rust are both registered to vote. ECF No. 1, ¶¶ 48, 49. Indeed, they concede that:

> [a]lthough **HB 1569's documentary proof of citizenship requirement should not, by its terms, apply to those already registered** in New Hampshire who are transferring their registration to a different municipality within the state, *see* RSA 654:12, III, in practice, the law is just as likely—and perhaps even more likely—to disenfranchise previously registered voters who relocate and attempt to re-register within the state.

*Id.* ¶ 83 (emphasis added). It is unclear what Plaintiffs mean by "in practice" the law is "even more likely to disenfranchise previously registered voters who relocate[,]" but what is clear is that Plaintiffs are fully aware that HB 1569 does not require them to prove their citizenship. Accordingly, Ms. Taylor and Mr. Rust have failed to state claims upon which the Court may grant relief to either.

### B.    The Complaint's Conclusory Legal Statements Do Not State Plausible Factual Claims Upon Which the Court Could Grant Relief

Where factual allegations regarding the basis for Plaintiffs' claims *should* reside in the Complaint, Plaintiffs instead make conclusory legal statements. That is not surprising, since the Complaint does not identify the nature or extent of *anyone's* burden in producing *any* reasonable documentation to prove citizenship. *See, e.g.*, *id.* ¶¶ 21-47 (Organizational Plaintiffs failing to identify a member who does not have reasonable documentation of citizenship), ¶¶ 48-55 (Individual Plaintiffs failing to allege that they lack reasonable documentation of citizenship). For example, the Complaint asserts that HB 1569 will "erect barriers to enfranchisement[,]" "make it materially harder, if not impossible, for thousands of New Hampshire citizens to exercise their right to vote[,]" and require proof-of-citizenship documents that "may also be expensive and time consuming to acquire." *Id.* ¶¶ 4, 71, 78. Allegations that the Organizational

Plaintiffs' unnamed "members and constituents" are "disproportionately impacted" by HB 1569 do not suffice to establish anything more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Compare id.* ¶¶ 98, 103 *with Alston*, 988 F.3d at 571.

Moreover, the Complaint does not offer an affidavit regarding the degree of any specific New Hampshire citizen's burden to prove citizenship by reasonable documentation to support its conclusory legal contentions. Indeed, four of the five Individual Plaintiffs either admit that they have reasonable citizenship documentation, admit that such documentation is in their control, or they fail to allege that they do not have such documentation. *See* ECF No. 1, ¶ 48 (Ms. Taylor "has ***not yet*** formally updated her U.S. passport"); ¶ 51 (Mr. Borne must "***locate*** and present either his birth certificate or U.S. passport upon registering"); ¶ 52 (Mr. Muirhead must "***locate*** and present either his birth certificate or U.S. passport upon registering"); ¶ 53 (Ms. Muirhead must "***locate*** and present either his birth certificate or U.S. passport upon registering") (all emphases added). The lone exception is Mr. Rust (who alleges that he does not have a U.S. passport or access to his birth certificate), but Mr. Rust does ***not*** allege that he cannot obtain his Maine birth certificate, that obtaining his Maine birth certificate would be unduly burdensome on him, or that he lacks other reasonable citizenship documentation. *See id.* ¶¶ 49-50.

These pleading defects are fatal to all Plaintiffs' claims because legal conclusions may only provide the framework of a complaint—they do not satisfy the pleading requirement of setting forth a plausible claim for relief. *See Medeiros*, 671 F. Supp. 3d at 103 (citing *Iqbal*, 556 U.S. at 679). The Court should not credit Plaintiffs' threadbare assertions that HB 1569 has violated or will violate Plaintiffs' constitutional rights, as they support their claims (if at all) with conclusory statements that cannot support a reasonable inference of a claim upon which this

Court can grant relief. *See Alston*, 988 F.3d at 571 (citing *Iqbal*, 556 U.S. at 678); *Garayalde-Rijos*, 747 F.3d at 23. Accordingly, Plaintiffs have failed to state claims upon which the Court may grant relief.

### C.    Counts I and II Do Not State Plausible Claims That House Bill 1569 Imposes an Unjustifiable Burden on Plaintiffs' Rights to Vote

The Individual and Organizational Plaintiff's pleading deficiencies are evident in their claims that eliminating the Qualified Voter Affidavit and the Challenged Voter Affidavit unjustifiably burden their rights to vote. The First Circuit has made two things abundantly clear with respect to election law challenges. First, not all burdens on a citizen's right to vote are unconstitutional. *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). Burdens may be constitutionally permissible where a state shows that it has an "important regulatory interest" that reasonably justifies the burden. *See id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 430 (1992)). Second, a state's "regulatory interest" in preventing voting fraud and enhancing election integrity is "substantial and important." *Common Cause R.I.*, 970 F.3d at 15. Moreover, the Supreme Court has held that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).

So, to balance a citizen's interest in burden-free voting with a state's substantial and important interest in counting only the votes of eligible voters, courts apply the *Anderson-Burdick* analytical framework. *See id.* at 14; *see also* ECF No. 1, ¶ 64 (citing *Burdick*, 504 U.S. at 434, *Anderson*, 460 U.S. at 789, and *Common Cause R.I.*, 970 F.3d at 14). *Anderson-Burdick* requires courts to "weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden

imposed.'" *Id.* (quoting *Anderson*, 460 U.S. at 788-89). To state a claim that HB 1569 violates Plaintiffs' First and Fourteenth Amendment rights, the Complaint must allege that reasonable citizenship documentation is unavailable to them and allege the "character and magnitude" of the burden each faces in attaining such documentation. *See Common Cause R.I.*, 970 F.3d at 14 (identifying express allegations of burdens on the right to cast a ballot amid the COVID-19 pandemic and weighing those against the state's interests).

As a balancing scale requires one pan on each side of the fulcrum, a balancing test requires specific facts and contextual circumstances on Plaintiffs' side to weigh against the state's interests on the other. *See* Kathleen M. Sullivan, *The Supreme Court 1991 Term: Foreword: The Justices of Rules & Standards*, 106 Harv. L. Rev. 22, 60 (1992) ("Balancing takes into account background principles or policies affecting each of these components—how important is the right, how bad was the infringement, and how good is the government's reason."). "Balancing requires the ***explicit articulation and comparison of rights*** or structural provisions, modes of infringement, and government interests." *Id.* (emphasis added). Neither the Individual nor Organizational Plaintiffs have identified the character or magnitude of the alleged burdens to themselves or their members in complying with HB 1569's requirements. They fail to state a claim because the Court cannot apply the *Anderson-Burdick* analytical framework without a reasonable inference of the contextual character or magnitude of burdens HB 1569 imposes on Plaintiffs. *Cf. Common Cause R.I.*, 970 F.3d at 14-15 (considering specific allegations on both "side[s] of the *Anderson-Burdick* scales[.]"). So, Plaintiffs have not stated plausible claims that HB 1569 imposes unjustifiable burdens upon them.[24]

---

[24] To be clear, "Plaintiffs" includes the direct standing claims of the Organizational Plaintiffs. As detailed above in Section II., HB 1569 does not directly regulate them, and this is disqualifies the Organizational Plaintiffs' participation in Complaint Counts I and II. To state a claim that HB 1569 imposes an "unjustifiable burden" upon

**D.    Count III Does Not State a Plausible Claim That House Bill 1569 Denies Plaintiffs Due Process**

The Individual and Organizational Plaintiffs' use of hypotheticals and conjecture to assert their claims are evident in Count III, in which they allege that HB 1569 does not afford them procedural due process.  To the contrary, it is well-settled that:

> [p]rocedural due process guarantees that before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner.

*Harper v. Rettig*, 675 F. Supp. 3d 190, 205 (D.N.H. 2023) (quoting *Perrier-Bilbo v. United States*, 954 F.3d 413, 433 (1st Cir. 2020)) (internal quotations and citations omitted); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  HB 1569 affords Plaintiffs due process with forewarning, an opportunity to be heard, and an immediate appeal to the superior court (if necessary) before polls close on election day.  *See* RSA 654:12, V.

Plaintiffs assert that HB 1569 will deny Plaintiffs adequate process to overcome *ad hoc* qualification challenges.  *See* ECF No. 1, ¶ 110.  There are at least three reasons that Claim III cannot proceed.  First, as explained in Sections IV.A. and B. above, Plaintiffs have not provided sufficient facts from which a reasonable inference could be made that any of them are imminently likely to face a challenge to their qualifications.  Second, although Plaintiffs assert that a voter qualification challenge determination is "subjective" and "not sufficiently defined[,]" they do not allege facts to contradict the plain statutory language defining a detailed and objective standard for election official decisions.  *See id.* ¶ 110.

---

the Organizational Plaintiffs *directly*, they cannot simply allege increased costs of advocacy or public education. *See Equal Means Equal v. Ferriero*, 478 F. Supp. 3d 105, 123 (D. Mass. 2020).  They must allege a *direct* invasion of the organizations' own rights.  *See id.* (citing *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152 (D.C. Cir. 2005)).  They have not identified any organizational substantive right that HB 1569 purportedly violates.

HB 1569 mandates that only those with statutory authority may mount a qualification challenge, that the challenge must be in writing using the required form, that the challenger must provide his or her full name, that the challenger identify at least one challengeable qualification from form's list of 10, that the challenger must state the basis and source of the challenge, and that he or she must swear to the challenge under oath. *See* RSA 659:27, I; 659:27-a. The election official must employ a "more likely than not" standard to determine whether the challenge is well grounded. RSA 659:27, II. The moderator must state his or her decision by completing the mandatory form—a form which lists all bases for making the decision and requires the challenged voter to have an opportunity to be heard. RSA 659:27-a. "More likely than not" is a preponderance of the evidence standard. *United States v. Aiken*, 877 F.3d 451, 458 (1st Cir. 2017). In other words, HB 1569 empowers election officials to adjudicate voter challenges according to a commonplace legal standard with specific and objective criteria to decide the challenge—Plaintiffs do not allege any facts to the contrary.

Third, and perhaps most importantly, an aggrieved voter may appeal an election official's adverse decision to the superior court. RSA 654:12, V. Plaintiffs assert that where an election official determines that a challenged voter is not qualified to vote, the superior court's "review is not likely to meaningfully occur" before the close of the polls on election day. *See* ECF No. 1, ¶ 112 (quoting RSA 659:27-a, II(b)). But Plaintiffs' citation of RSA 659:27-a, II(b) incompletely details the statutory mandates HB 1569 imposes upon the superior courts. The superior court's duty on appeal is mandatory, immediate, and comprehensive:

> [a] person aggrieved by the decision of said [election] official may take an ***immediate appeal*** to the superior court, ***which shall hear the appeal forthwith*** and ***shall make every reasonable effort to decide*** the matter as soon as possible and ***before the close of the polls on election day***.

RSA 654:12, V (emphasis added).  Plaintiffs have no basis to assert that "review is not likely to ***meaningfully*** occur before the voter is ultimately deprived of the right to vote on election day[,]" and they do not cite any authority to support this proposition.  *Contra* ECF No. 1, ¶ 112 (emphasis added) (citing RSA 659:27-a, II(b) (putting challengers and election officials on notice that aggrieved voters have an immediate right of appeal to the superior court)).  Plaintiffs have not offered any plausible factual allegations to support their conjecture that a superior court cannot make a timely decision on a voter's qualifications before polls close, or extend polls as justice requires.  *See, e.g.*, James Pinell, *Judge rules polls to stay open an extra hour in Dover, N.H.*, Boston Globe (Nov. 8, 2016);[25] RSA 659:26-a (acknowledging the inherent power of a state court to extend polling hours).  So, Plaintiffs have not stated a plausible claim that HB 1569 denies them due process.

### E.    Count IV Does Not State a Plausible Claim That House Bill 1569 Disparately Treats Plaintiffs, Denying Them Equal Protection Under the Law

Plaintiffs argue that HB 1569 disparately treats them, denying them equal protection under the law, because HB 1569 "arbitrarily treats New Hampshire voters differently solely based on the subjective and variable determinations of moderators on election day."  ECF No. 1, ¶ 121.  This does not state a disparate treatment equal protection claim.  A disparate treatment claim requires a plausible allegation that HB 1569 selectively treats Plaintiffs differently than other similarly situated New Hampshire citizens and that it does so on impermissible considerations, with the intent to injure, inhibit, or punish the exercise of Plaintiffs' constitutional rights.  *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).  Plaintiffs

---

[25]    Available at https://www.bostonglobe.com/metro/2016/11/08/dover/hSX7r7yGNOg0jTEgFbSyBN/ story.html (last visited Jan. 15, 2025).

do not even offer a comparator, much less allege that New Hampshire has singled them out for arbitrary classification.

Moreover, and as explained in Section IV.D. above, it is not true that election day registrants' qualifications will be "***solely*** based on" election officials' determinations. *Contra* ECF No. 1, ¶ 121 (emphasis added). Aggrieved registrants have an automatic and immediate right of appeal to the superior court. RSA 654:12, V. Plaintiffs have not plausibly alleged that a superior court judge cannot apply HB 1569's objective "more likely than not" standard equally to all who appear before him or her. Accordingly, Plaintiffs do not state a plausible claim that HB 1569 denies them equal protection under the law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: January 16, 2025

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

 /s/ Michael P. DeGrandis
Michael P. DeGrandis