## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Coalition for Open Democracy, et al
*Plaintiff,*

v.

John Formella, et al.,

*Defendant.*

No. 1:24-cv-00312

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO INTERVENE

The Republican National Committee (RNC) and the New Hampshire Republican State Committee (NHRSC) move to intervene as defendants in this case. Throughout the Nation, federal district courts routinely allow political committees to intervene to protect and defend their interests in the rules governing their state's elections.[1] That's unsurprising, as political parties "brin[g] a unique perspective" to these cases, which is why courts routinely let them intervene "in actions challenging voting laws." *Democratic Party of Va. v. Brink*, 2022 WL 330183, at \*2 (E.D. Va. Feb. 3, 2022).  The Court should grant the motion for two independent reasons.

*First*, Movants satisfy Rule 24(a)(2)'s standard for intervention as of right. Their motion is timely because this case appears on track to be consolidated with Case No. 24-cv-00291-SE-TSM on February 3, 2025, and the Court recently granted Plaintiffs' motion to extend time to respond to Defendants' motion to dismiss until February 21, 2025. . Accordingly, this case

---

[1] *E.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (reversing the district court's denial of the Republican committee's motion to intervene as of right); *League of Women Voters of Ohio v. LaRose*, Doc. 25, No. 1:23-cv-2414 (N.D. Ohio Feb. 6, 2024) (granting intervention to RNC and Ohio GOP); *Mont. Pub. Int. Rsch. Grp. v. Jacobsen*, Doc. 34, No. 6:23-cv-70 (D. Mont. Jan. 18, 2024) (granting intervention to RNC and Montana GOP); *Vote.org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *RNC v. Chapman*, 447 M.D. 2022 (Pa. Common. Ct. Sept. 29, 2022) (granting intervention to various Democratic political committees); *DNC v. Hobbs*, Doc. 18, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022); *Mi Familia Vota v. Hobbs*, Doc. 53, No. 2:21-cv-1423 (D. Ariz. Oct. 4, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186 (N.D. Fla. June 4, 2021); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *DNC v. Bostelmann*, 2020 WL 1505640, at \*5 (W.D. Wis. Mar. 28, 2020); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020); *Pavek v. Simon*, Doc. 96, No. 19-cv-3000 (D. Minn. July 12, 2020); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-01143 (D. Ariz. June 26, 2020); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236 (N.D. Fla. May 28, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at \*5 (E.D. Mich. May 22, 2020); *Thomas v. Andino*, 2020 WL 2306615, at \*4 (D.S.C. May 8, 2020).

remains in its early stages and no party will be prejudiced if the Court permits intervention. Movants also have clear interests in in the subject matter of the case: protecting their candidates, voters, and resources from Plaintiff's attempt to invalidate New Hampshire's duly enacted election laws. And no other party adequately represents Movants' distinct interests in helping Republican candidates and voters.

*Second*, in the alternative, the Court should grant Movants permissive intervention under Rule 24(b). As stated above, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties and claims, and intervention will result in no delay or prejudice. Movants will adhere to any discovery plan the Court approves. The Court's resolution of the important questions in this case will have significant implications for Movants as they work to ensure that candidates and voters can participate in fair and orderly elections.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as defendants. Judges often grant these Movants permissive intervention under Rule 24(b), absolving the need to address intervention as of right under Rule 24(a). Movants maintain that they have a right to intervene under Rule 24(a), but they do not object to that efficient resolution here.

### INTERESTS OF PROPOSED INTERVENORS

The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, including in New Hampshire, coordinates fundraising and election strategy,

and develops and promotes the national Republican platform. The New Hampshire Republican State Committee is a political party in New Hampshire under RSA 652:11, that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in the rules and procedures governing New Hampshire's elections. That includes New Hampshire's future elections for federal and state office.

## ARGUMENT

### I.    Movants are entitled to intervene as of right.

Rule 24 "should be liberally construed," *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors." *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). This rule of construction "serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

Under Rule 24(a)(2), this Court "must allow" intervention as of right if four things are true: (1) the motion is timely; (2) movants have a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents Movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Movants satisfy all four elements.

## A.    The motion is timely.

This Court considers four factors in determining the timeliness of a motion to intervene: the delay after the movants knew their interests in the case; any prejudice to the existing parties from that delay; prejudice to the movants from denying intervention; and any unusual circumstances. *Id.* These factors all favor Movants.

Movants filed their motion before the two related cases have been consolidated and before the Defendants filed an answer. Their motion to dismiss remains pending as of the time of filing. That the Court has not yet taken substantive action further confirms the motion is timely. And much later intervention motions have been declared timely. *See e.g.*, *id.* (motion filed over seven months after complaint was filed and three months after motion to dismiss filed); *Snadon v. SEW-Eurodrive, Inc.*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (Grimberg, J.) (motion filed ten months after case removed to federal court was "not untimely"); *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (motion filed six months after complaint and "discovery was largely complete"); *Davis v. BancInsure, Inc.*, 2013 WL 1226491, at *2 (N.D. Ga. Mar. 18, 2013) (motion filed four and a half months after complaint and the parties had already fully briefed motions for summary judgment); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer).

Nor will Movants' intervention prejudice the parties. This litigation has not yet begun in earnest. Movants will comply with all deadlines that govern the parties, will work to prevent duplicative briefings, and will coordinate with the parties on discovery. If Movants are not allowed to intervene, however,

their interests could be irreparably harmed by an order overriding New Hampshire's election rules and undermining the integrity of New Hampshire's elections. There are no unusual circumstances.

### B.    Movants have protected interests in this action.

Movants interests fall squarely within Rule 24. Movants have "a specific interest" in "promoting their chosen candidates and protecting the integrity of [the state's] elections." *Black Voters Matter Fund v. Raffensperger*, Doc. 42 at 5, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020). Specifically, Movants have at least four "direct, substantial, legally protectable interest[s] in the proceeding." *Chiles*, 865 F.2d at 1213-14 (citation omitted).

*First*, Movants have a specific interest in accurate voting procedures. Due to its 400-member House of Representatives and the large number of elected officials in our numerous small towns, New Hampshire has a large number of elections involving relatively small numbers of voters compared to other states. And those elections are often decided by razor-thin margins. The New Hampshire General Court recently found that, "over the past 45 years, New Hampshire has had 44 state elections that ended in a tie or one-vote victory. On average, that is almost once per year." 2022 Laws Ch. 239.

*Second*, Movants have "a direct and substantial interest in the proceedings" because they "affect the [Movants'] ability to participate in and maintain the integrity of the election process…." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Laws like the one Plaintiffs challenge here serve "the integrity of [the] election process," *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly

6

administration" of elections. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). This is particularly important because voters are more likely to vote and more likely to trust the outcome of the elections when voters see that elections are safe, secure, and decided by persons participating in the election process legally. Indeed, federal courts "routinely" find that political parties have interests that support intervention in litigation regarding election rules. *Issa v. Newsom*, 2020 WL 3074351, at \*3 (E.D. Cal. June 10, 2020); *see also Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001).

*Third*, political parties have inherent interests in the rules that govern the elections in which they participate. "[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles*, 865 F.2d at 1214 (citation omitted). Indeed, given their inherent interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, \*2 (D. Col. Sept. 15, 2014).

Election rules affect political parties most of all. Parties and their voters must comply with rules such as the voter identification rules and proof of citizenship provisions Plaintiff seeks to change with this lawsuit. They must ensure their candidates, members, and voters are informed of those rules and have the resources to comply. And—a critical point for federal lawsuits—they must work quickly to respond to sudden, court-ordered changes to those rules

in the lead-up to an election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party" there is "no dispute that the … Republican Party ha[s] an interest in the subject matter of this case." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005).

*Fourth*, all of this regulation, compliance, and education don't come cheap. Every election cycle, party organizations like Movants "expend significant resources" on the election process—a process that the challenged laws "unquestionably regulat[e]." *La Union del Pueblo Entero*, 29 F.4th at 305. Movants' success depends on their ability to reach voters quickly and accurately with election-related communications. Those activities cost money. Safeguarding Movants' mission-critical activities from costs associated with sudden court-ordered changes in election procedures is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020).

In short, if Plaintiff has standing to bring this lawsuit, then Movants have an interest in defending against this lawsuit. *See Chiles*, 865 F.2d at 1213 ("a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24").

C.    **This action threatens to impair Movants' interests.**

Going forward without Movants would "impair" their interests. Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be

8

impaired." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Instead, they must show "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id*. This language from Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

Here, Movants' interests will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996). Not only would an adverse decision undercut democratically enacted laws that protect voters and candidates (including Movants' members), *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014), but it would also "change the entire election landscape for [Movants'] members and volunteers," thereby "chang[ing] what [Movants] must do to prepare for upcoming elections." *La Union*, 29 F.4th at 307; *see also Shays*, 414 F.3d at 85-86. That alone satisfies the impaired interest requirement. *La Union*, 29 F.4th at 307; *Shays*, 414 F.3d at 85-86.

More concretely, granting Plaintiff's requested relief will harm New Hampshire's expressed interest in ensuring that its elections are decided by qualified voters generally, and United States citizens in particular. Movants and Plaintiffs have similar *interests* at stake, they just disagree on the merits of how this challenge affects those interests.

Further, "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the only time that Movants can litigate Plaintiff's claims. This Court's decision could be the final word on the laws governing the next election. Because the "very purpose of intervention is to allow interested parties to air

their views … before making potentially adverse decisions," *Brumfield*, 749 F.3d at 345, the "best" course is to give "all parties with a real stake in [the] controversy … an opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D.    The existing parties do not adequately represent Movants' interests.

Finally, no party adequately represents Movants' interests. Inadequacy is not a demanding standard. In *Daggett v. Commission on Governmental Ethics and Election Practices,* 172 F.3d 104 (1st Cir. 1999), the First Circuit held that while adequate representation is presumed "where the goals of the applicants are the same as those of the plaintiff or defendant," *id.* at 111, such presumption can be rebutted. Further, "tests of 'inadequacy' tend to vary depending on the strength of the [party's] interest. Courts might require very little 'inadequacy' if the would-be intervenor's home were at stake and a great deal if the interest were thin and widely shared." *Id.* at 113-14.

Movants satisfy this minimal and flexible standard. To begin with, the State doesn't even share Movants' interests, let alone adequately represent them. The State Defendants necessarily represent "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). While the State "may well believe that what best serves the public welfare will also best serve the overall interests of [Movant], the fact remains that the [Movant] may see their own interest in a different, perhaps more parochial light." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992).

For that reason, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

That's especially true in election litigation. The State has no interest in the election of Movants' candidates, the mobilization of Movants' voters, or the costs associated with either. Instead, as state officials acting on behalf of all New Hampshire citizens and the State itself, the State Defendant must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Those clashing interests include:

- the interests of Plaintiff. *See In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991).

- "the expense of defending the current [laws] out of [state] coffers." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999).

- "the social and political divisiveness of the election issue" to the State. *Meek*, 985 F.2d at 1478.

Movants' participation will allow them to address the issue's effect on the Republican Party and Republican voters.

At a minimum, Movants will "serve as a vigorous and helpful supplement" to Defendants and "can reasonably be expected to contribute to the informed resolutions of these questions." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Movants seek to preserve New Hampshire's election safeguards and Movants bring a wealth of knowledge and experience to the table. Movants thus should be granted intervention under Rule 24(a)(2).

## II.    Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), a requirement that "is generally given a liberal construction," *Ga. Aquarium*, 309 F.R.D. at 690 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977)). Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Chiles*, 865 F.2d at 1213

The requirements of Rule 24(b) are met here. As explained in Section I, this motion is timely. And Movants will raise defenses that share common questions with the parties' claims and defenses. Specifically, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, their members' interest in the integrity of New Hampshire's elections.

Movants' intervention will not unduly delay this litigation or prejudice anyone. "[A]llowing intervention by Movants will not unduly delay or prejudice the adjudication of [Plaintiffs'] claims" when the litigation is in a relatively nascent stage. At this stage, "[w]hatever additional burdens adding the [intervenors] to this case may pose, those burdens fall well within the bounds of everyday case management.*" Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). This is particularly true in light of the apparent imminence of the joinder of this matter with Case 24-cv-291-SE-TSM, a matter in which Movants have already moved to intervene.

Responding to Movants' arguments will not "unduly delay or prejudice" the case, Fed. R. Civ. P. 24(b)(3), since Plaintiff "can hardly be said to be prejudiced by having to prove a lawsuit [it] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow "the Court … to profit from a diversity of viewpoints as [Movants] illuminate[s] the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Where a court has doubts "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

Movants respectfully request that the Court grant their motion and allow them to intervene as defendants.

This 2nd day of February, 2025.

Respectfully Submitted,

Republican National Committee, and New Hampshire Republican State Committee,

By their attorneys,

Lehmann Major List, PLLC

February 2, 2025

*/s/Richard J. Lehmann*
_____

Richard J. Lehmann (Bar No. 9339)
6 Garvins Falls Road
Concord, N.H. 03301
(603) 731-5435
rick@nhlawyer.com

## CERTIFICATION

I hereby certify that a copy of this pleading was this day forwarded to opposing counsel via the court's electronic service system.

February 2, 2025

*/s/Richard J. Lehmann*
_____

Richard J. Lehmann

14