UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| COALITION FOR OPEN DEMOCRACY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-00312-SE-TSM |

### DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT

**INTRODUCTION**

The Court should dismiss the Complaint because Plaintiffs have not plausibly alleged that they have standing to challenge House Bill 1569 ("HB 1569"). Under Plaintiffs' permissive theories of standing, it is difficult to imagine who would not have standing to challenge any law with which an organization or individual disagrees. But even if Plaintiffs had standing to challenge HB 1569, their factual allegations amount to nothing more than legal conclusions that cannot support a reasonable inference that HB 1569 will imminently deprive them of their constitutional rights or unduly burden the exercise of their rights.

**ARGUMENT**

**I.     The Organizational Plaintiffs Do Not Have Standing to Challenge House Bill 1569**

    **A.     *Havens*-Standing Is Unusual and Does Not Apply to Plaintiffs**

Plaintiffs allege that "voter registration, poll operation, and voter education" are the "nuts and bolts" of their organizations. ECF No. 45 at 8. They assert that three categories of diverted resources, educating the public and volunteers, modifying and creating new materials and outreach, and recruiting additional poll workers and observers, establish their injuries-in-fact.

*See id.* at 9-11.  But contrary to Plaintiffs' assertions, *Havens Realty Corp.* does not support their theory of standing.  These alleged harms are the consequences of Plaintiffs' voluntary responses to HB 1569, they are not consequences of burdens that HB 1569 directly imposes upon them.  Therein lies the critical distinction between the Organizational Plaintiffs and *Havens*.

The Fair Housing Act ("FHA") establishes legally cognizable rights in equal and nondiscriminatory access to housing.  *Havens Realty*, 455 U. S. at 367 n.2.  The *Havens* plaintiff's ("HOME") FHA-anchored mission was to ensure "equal access to housing" through its core activities of "counseling and other referral services." *Id.* at 379.  The landlord-defendant steered a minority HOME employee away from a predominantly white apartment complex to an "integrated" apartment.  *Id.* at 368 n.4.  The landlord's racial discrimination, therefore, **directly** undermined HOME's core activities of fighting housing discrimination and advancing equal housing opportunity.  *See id.* at 379.  That is why the Supreme Court held that "there can be no question that [HOME] has suffered injury in fact." *See id.*  HOME's standing did not rely upon voluntary resource diversion.  *See id.*  Rather, HOME **could not operate** its pre-existing core counseling and referral business activities where the landlord denied its employee and clients equal access to housing.[1]  *See id.*  The facts of *Havens* make it an unusual case that is wholly dissimilar to the parties and claims at issue here.  *See AHP*, 602 U.S. at 396.

---

[1] The Supreme Court illustrated the type of relationship between governmental action and organizational harm that must exist to potentially implicate *Havens*-standing.  HOME is like a retailer who received defective goods from a manufacturer, the landlord.  *See AHP*, 602 U.S. at 395.  As a retailer cannot operate its business in a defective product marketplace, HOME could not operate its business in a racially discriminatory housing marketplace.  *See id.*  To be sure, HOME expended resources to educate its clients in response to the landlord's actions, but that was **not** its basis for its standing.  *See id.*  Here, no similar retailer-manufacturer dynamic manifests between the Organizational Plaintiffs and HB 1569.  Plaintiffs allege that they "will be unable to carry out [their] mission[s]," but their factual allegations do not support this conclusion.  *See* ECF No. 45 at 8.  For example, they assert that their "core registration assistance services to young voters who lack immediate access to documentary proof of citizenship w[ill] be **less effective**." *E.g., id.* (quoting ECF No. 1, ¶¶ 24-25) (emphasis added).  Plaintiffs do not explain how their pre-existing services will be **less** effective, but even if that were true, their investment in responding to HB 1569 to make their services **more** effective does not confer *Havens*-standing upon them.

### B. The Court Should Not Extend *Havens*-Standing to Plaintiffs

Plaintiffs' expansive interpretation of *Havens* conflicts with *Hippocratic Medicine*'s rationale, rule, and holding. Contrary to Plaintiffs' argument, *Havens* does not stand for the proposition that an organization may "establish standing where the challenged policy has negatively impacted its core activities or caused it to divert funds from those activities." *Contra* ECF No. 45 at 7-8 & n.2 (asserting that *AHP* merely reaffirmed *Havens* and First Circuit cases). As *AHP* made perfectly clear, indirect impacts on missions and goals alone never confer standing. *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1175 (9th Cir. 2024).

Prior to *AHP*, the Ninth Circuit held an expansive view of *Havens*-standing like that proposed by Plaintiffs, but that has since changed. *See id.* (overruling *Havens*-standing cases predating *AHP*). "Under *Hippocratic Medicine*," the Ninth Circuit explained, "plaintiffs must allege more than that their mission or goal has been frustrated—they must plead facts showing that their core activities are ***directly affected*** by the defendant's conduct." *Id.* at 1172 (citing *AHP*, 602 U.S. at 395) (emphasis added). Courts require a direct causal nexus between governmental action and injury-in-fact because, among other things, plaintiffs may not rely on "distant (even if predictable) ripple effects." *Id.* at 1173 (quoting *AHP*, 602 U.S. at 383).

The *Mayes* plaintiffs ("AARA") alleged that new Arizona election laws could jeopardize the right to vote. *Id.* at 1169. The court described plaintiffs' standing theory as "conjecture-laden" because the challenged law did "not directly affect their pre-existing core activities." *Id.* at 1178. This was so because AARA could "still register and educate voters—in other words, continue their core activities that they have always engaged in." *Id.* (citing *AHM*, 602 U.S. at 396). AARA asserted that it must develop new training materials and counsel voters differently than before. *Id.* "But as *Hippocratic Medicine* explains, spending money voluntarily in response to a governmental policy cannot be an injury in fact. *See* 602 U.S. at 394." *Id.* If the court were

3

to accept such an "extravagant theory of standing,"

> a law school professor who teaches election law would have standing to challenge [election-related statutes] because she would have to expend resources to change her curriculum and further educate her students about the state of the law. Article III standing cannot be based on such fanciful or speculative harm.

*Id.* at 1180-81. This Court should not storm the beach from which the Ninth Circuit just retreated.[2]

Just as the Arizona law regulated third parties, so too HB 1569 only regulates third parties. So, as AARA could continue its pre-existing activities, so too the Organizational Plaintiffs may still engage in their "voter registration, poll operation, and voter education" activities.[3] Neither AARA's nor Plaintiffs' responses to new election laws confer standing.[4] And as AARA could not establish injury-in-fact by creating new training programs, updating

---

[2] The Ninth Circuit is not alone. *See, e.g.*, *AFGE v. Ezell*, No. 25-10276-GAO, 2025 U.S. Dist. LEXIS 25269, at *5 (D. Mass. Feb. 12, 2025); *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 903 (6th Cir. 2024). Moreover, Plaintiffs' claim that "numerous courts" have conferred standing upon plaintiffs like the Organizational Plaintiffs is not accurate. *See* ECF No. 45 at 11 (citing *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 707 n.3 (N.D. Ohio 2024) ("Ohio law now forbids [the organization's] members from assisting disabled voters and its members could be subject to felony criminal charges[.]"); *Get Loud Ark. v. Thurston*, No. 5:24-CV-5121, 2024 WL 4142754, at *14 (W.D. Ark. Sept. 9, 2024) (holding that Arkansas election law "specifically targeting [the organization's] activity of registering voters through its online tool."); *Caicedo v. DeSantis*, No. 6:23-CV-2303-JSS-RMN, 2024 WL 4729160, at *5 (M.D. Fla. Nov. 8, 2024) (denying dismissal on standing where the defendant did not object to the organization's diversion-of-resources theory); *but see Repub. Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 410 (4th Cir. 2024) (noting that post-*Hippocratic Medicine* courts require much more than diversion of resources to confer organizational standing) (Diaz, C.J., concurring).

[3] To the extent that Open Democracy and League of Women voters allege that they are "unable" to engage in their core business activities, their conclusory assertions are demonstrably incorrect. *Contra, e.g.*, ECF No. 45 at 9-10. HB 1569 does not regulate nonprofit advocacy, education, or poll operation services. It should be noted that Forward Foundation does not make similarly absolute allegations about an "inability" to perform its purported core business activities. *See id.* at 11-12. Indeed, it alleges that HB 1569's impact may be partially mitigated by redirecting Forward Foundation's expenditures and updating its materials. ECF No. 1, ¶ 43.

[4] The Organizational Plaintiffs insist that their future expenditure and reallocation of resources is not "to advocate against HB 1569[.]" ECF No. 45 at 9. They assert that HB 1569 impedes their missions and activities. *See id.* "Advocacy" relates to more than political opposition, though. In the *Hippocratic Medicine* context, it includes an organization's activities to support its clients. *See AHM*, 602 U.S. at 395 (explaining that the plaintiff's opposition and advocacy included FDA petitions, but it also included public education). Plaintiffs' assertion that they engage in voter registration, poll operation, and voter education are all "advocacy," as they inform the public about state election law requirements. *See* ECF No. 1, ¶¶ 21-22, 39-40, 34 (self-describing missions to advocate for political equality, political participation, and public policy); *Mayes*, 117 F.4th at 1175 (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040-41 (9th Cir. 2015)). That which is or is not "advocacy" is less probative of standing, however, than the question of whether a plaintiff establishes that, as an unregulated party, there is a causal nexus between the government's regulation of third parties and the organization's alleged injuries. *See AHM*, 602 U.S. at 395. The Organizational Plaintiffs have made no such showing here.

educational materials, and diverting time and resources, the Organizational Plaintiffs' diversion-of-resources and frustration-of-mission injury theories also fail.[5]

**II.    The Individual Plaintiffs Do Not Have Standing to Challenge House Bill 1569**

Plaintiffs' Opposition asserts that it is improper to ask the Individual Plaintiffs to demonstrate whether HB 1569 applies to them or whether HB 1569 will imminently prevent their voter registration. *See* ECF No. 45 at 14. Plaintiffs offer no authority to support this novel proposition, nor can they dispute their obligations to plausibly allege that HB 1569 caused each of them nonspeculative, particularized, and imminent injuries. *See AHM*, 602 U.S. at 381 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). They must show that they have been injured in a ***personal*** and ***individual*** way.[6] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Moreover, they must allege personal and individual injuries with specificity. *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016); *AVX Corp.*, 962 F.2d at 115. Instead of doing so, they make impermissibly conclusory allegations and speculate regarding the choices third parties ***might*** make in the future.[7] *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). In short, the Individual Plaintiffs must be dismissed as parties because they do not have a stake in the outcome of this case.[8]

---

[5] Despite citing Defendants' Memorandum at 17-20 which argues that "without a cognizable concrete and particularized harm, HB 1569 could not have caused injury to the Organizational Plaintiffs, nor could the Court redress their alleged injuries with a favorable decision[,]" Plaintiffs assert that Defendants have not challenged the causation and redressability elements of direct organizational standing. ECF No. 36-1 at 20. To be clear, the Organizational Plaintiffs are unregulated parties alleging injuries that are too attenuated from HB 1569's third party regulations to confer standing. *AHM*, 602 U.S. at 382-83. Moreover, redressability is a function of injury, and since HB 1569 has not caused Plaintiffs injury, there is nothing for this Court to redress in a favorable decision. *See California v. Texas*, 593 U.S. 659, 672-73 (2021).

[6] "While the requisite injury may be common to many … it may not be shared by all." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (citations omitted).

[7] The Individual Plaintiffs' standing allegations are wildly speculative, but even if the Court finds that their subjective fear of "injurious government action" is "not fanciful, irrational, or clearly unreasonable[,]" Plaintiffs' allegations nevertheless fail to meet the requirement that their injuries be "certainly impending." *See Blum v. Holder*, 744 F.3d 790, 797 (1st Cir. 2014) (quoting *Clapper*, 568 U.S. at 416).

[8] Since redressability is a function of injury, and since HB 1569 has not caused the Individual Plaintiffs injury, there is nothing for this Court to redress in a favorable decision. *See California*, 593 U.S. at 672-73.

### A. Plaintiffs Taylor and Rust Have Not Plausibly Alleged Standing

Ms. Taylor and Mr. Rust ("Registered Voters") concede that HB 1569 does not apply to them because they are registered voters.[9] *See* ECF No. 45 at 15, 17. This should end the analysis and the Register Voters should be dismissed from this lawsuit. In a bid to avoid this commonsense result, Plaintiffs offer a parade of horribles that could, someday, somehow, cause HB 1569 to burden the Registered Voters' right to vote. To accept their standing argument, the Court must first assume that the Statewide Voter Registration System ("SVRS") will go down when they vote in a future election because *if* that happens, HB 1569 might apply to them.[10] *Id.* at 15. The Court must then speculate that *if* Ms. Taylor still has not "formally updated her U.S. passport," and *if* they move towns, their presentation of "reasonable documentation" may cause injury-in-fact. *See id.* at 16-18. They reason that the burden is "likely" to occur because a local official—who is not a party to this lawsuit—*might* deny their reasonable documentation, whatever documentation that might be. *See id.* Mr. Rust adds that he "is substantially more susceptible to a voter challenge being deemed 'well grounded' due to his lack of a physical address[.]" *Id.* at 18.

Injury-in-fact cannot be hypothetical. *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). And it should go without saying that "substantially more susceptible" does not establish injury-in-fact. *See Blum*, 744 F.3d at 796. The Registered Voters do not premise their standing on "certainly impending" injury, but rather on pure conjecture of possible future injuries. *See*

---

[9] Plaintiffs claim that they have not conceded this point, emphasizing that HB 1569 "***should not*** apply" to them. ECF No. 45 at 22 (emphasis in original). But courts should presume that government officials will always act in good faith unless presented with "well-nigh irrefragable proof" to the contrary. *See Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) (citations omitted).

[10] Plaintiffs allege SVRS availability "is highly limited at best," but Plaintiffs know that is not true. Plaintiffs allege that "hundreds" or "thousands" used Qualified Voter Affidavits in recent presidential elections, in which they allege that more than 1.5 ***million*** people voted. ECF No. 1, ¶¶ 11, 2. As Plaintiffs' allegations demonstrate, SVRS access is routine, not limited. *Id.*

*Sever v. Salem*, 390 F. Supp. 3d 299, 307 (D. Mass. 2019) ("Allegations of *possible* future injury are not sufficient.") (quoting *Blum*, 744 F.3d at 796) (emphasis in original).

### B. Plaintiffs Borne and the Muirheads Have Not Plausibly Alleged Standing

Mr. Borne, Mr. Muirhead, and Ms. Muirhead's ("Youth Plaintiffs") only allegation to support standing is that when they register to vote, HB 1569 will require that they "locate and present" reasonable citizenship documentation. *See* ECF No. 1, ¶¶ 51-53. This argument fails because it is a generalized grievance—every prospective voter must prove citizenship. *See Draper*, 827 F.3d at 3; RSA 654:12, I. Standing requires the Youth Plaintiffs to allege that they have been injured in a personal and individual way that differentiates them from the general public, but they have not done so. *See Lujan*, 504 U.S. at 560 n.1. Moreover, their standing allegations are incomplete. If locating and presenting reasonable documentation is burdensome, completing an affidavit would also be burdensome because it would be a requirement in addition to the voter application. *See* ECF No. 45 at 19 ("The severity of the burden has no bearing on standing."). So, the allegation that HB 1569 places a *greater* burden on the Youth Plaintiffs than completing an affidavit is conclusory, and requires additional specificity regarding that which makes it more burdensome, but they have not done so.[11] *See AHM*, 602 U.S. at 381.

### III. Plaintiffs Have Not Stated Claims upon Which the Court May Grant Relief

Not one of the Plaintiffs has alleged that he or she has been denied the right to vote, so

---

[11] The Youth Plaintiffs misconstrue the out-of-circuit dicta they cite to support their novel standing theory. *Contra* ECF No. 45 at 18-19. In *Billups*, the Eleventh Circuit held that two plaintiffs had standing to challenge a voter ID law where: (1) they were registered voters; (2) who did not have photo ID; and (3) that as "*registered voters*, [they] would be required to present photo identification *to vote* in person, so they have suffered a sufficient injury." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009) (emphasis added). The law required the plaintiffs to make a special trip to the county registrar's office—a trip that was not required of other registered voters. *Id.* at 1351. In dicta, the court opined that even if the plaintiffs had the required ID, merely presenting ID was a sufficient injury for standing. *Id.* at 1351-52. The Eleventh Circuit's only citation in support of this view was another Eleventh Circuit decision in which the plaintiff had specifically alleged that the state unlawfully rejected her voter application, which she intended as a notice of address change. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005). *Billups* is neither relevant nor persuasive here.

the only questions presented in this case are whether HB 1569 will imminently deny them their rights to vote or whether it unduly burdens their rights to vote.[12] *See* ECF No. 1, ¶¶ 92-122. But rather than explain how the Complaint's allegations could lead to a reasonable inference that HB 1569 caused injury to Plaintiffs' First or Fourteenth Amendment rights, the Opposition reiterates allegations of possible future harm. This is not sufficient because a "naked assertion devoid of further factual enhancement" does not suffice to establish claims upon which First Circuit courts may grant relief. *Maldonado v. Fontanes*, 568 F.3d 263, 273 n.6 (1st Cir. 2009) (quoting *Iqbal* and *Twombly*) (cleaned up). Plaintiffs' assertions that HB 1569 burdens them and nonparties, without describing how or to what degree it personally burdens Plaintiffs, is rote recitation of the elements—they are not factual allegations. *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) (analyzing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

That which a plaintiff must prove at the merits stage of a case determines what a plaintiff must plausibly allege at the pleadings stage. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). The parties agree that if this case proceeds to the merits, the Court will apply the *Anderson-Burdick* analytical framework to weigh the character and magnitude of Plaintiffs' purported injuries caused by HB 1569. *See* ECF No. 45 at 19-20. The state's interest is not in dispute, as "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). So, to plausibly state a claim, Plaintiffs' allegations must permit the Court to reasonably infer that HB 1569 (1) will imminently deny their rights to register or vote; or (2) imposes burdens disproportionate to New Hampshire's interest in election integrity. *See Hall v.*

---

[12] The Organizational Plaintiffs cannot vote and, for the reasons explained in Sec. I above, HB 1569 does not regulate the Organizational Plaintiffs or their activities. Thus, the Organizational Plaintiffs cannot state claims upon which the Court may grant relief.

*Twitter, Inc.*, No. 20-cv-536-SE, 2023 U.S. Dist. LEXIS 80569, *2 (D.N.H. 2023) (citing *Iqbal* as standing for the proposition that allegations need not be detailed, but they "must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"). The Complaint does not satisfy this requirement.

Plaintiffs offer three arguments to oppose Defendants' Rule 12(b)(6) Motion to Dismiss, but each fails. First, they characterize HB 1569's financial burdens as "significant." ECF No. 45 at 20. To the contrary, their allegations are limited to speculating that nonparties find passport or birth certificate fees "time-consuming and expensive." *Id.* **Nonparties' potential** burdens are not allegations in support of **Plaintiffs' real** burdens:

> To state a claim under section 1983, [a plaintiff] must plead that **he was deprived** of a constitutional or federal right, that a causal connection existed between [the defendant's] action and the deprivation of that right[.]

*Alston*, 988 F.3d at 574 (emphasis added). If Plaintiffs do not have passports or birth certificates, they must say as much. They must explain why acquiring either would be an undue burden, why it is an undue burden to provide other reasonable documentation, and why HB 1569-compliance will be more burdensome than completing an affidavit.[13] Because they have not done so, the Complaint does not sufficiently allege that HB 1569 imposes upon them a burden disproportionate to the state's interest.

Second, Plaintiffs assert that HB 1569 exposes them to risks of "arbitrary and disparate enforcement" due to statutory "ambiguity." *See, e.g.*, ECF No. 45 at 20 n.7. Not only is this statement not true as a matter of law, it is acutely speculative since they have not been denied

---

[13] Mr. Rust asserts that he does not have a passport and that he does not have "access" to his birth certificate. ECF No. 1, ¶ 49. He does not explain why regaining "access" to his birth certificate would be burdensome. Ms. Taylor has a passport, but it is in her maiden name. *Id.* ¶ 48. She does not explain why she believes that her still-valid passport would not be reasonable documentation of her citizenship under HB 1569. Regardless, the Registered Voters have not stated a claim because HB 1569 does not apply to them.

9

voter registration, nor has anyone challenged their eligibility. Moreover, Plaintiffs are not asserting that HB 1569 is unconstitutionally vague. HB 1569 mandates proof of voter eligibility with clear standards (*i.e.*, birth certificate, passport, and immigration papers) and affords applicants the opportunity to offer other reliable documentation of their choosing. *See* RSA 654:12, I(a). Plaintiffs are wrong to assert that the law is standardless. "Reasonable" and "more likely than not" are common legal standards.[14] "Reasonable" means that an election official's judgment must be "supported by a rational basis" that considers all relevant factors. *See River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). The "more likely than not" standard requires a showing of probability. *See United States v. Richardson*, 14 F.3d 666, 668 (1st Cir. 1994). Plaintiffs' assertion that the law could create varying results across localities does not state a claim, as the Fourteenth Amendment does not guarantee uniformity of results across jurisdictions. *See Beck v. Washington*, 369 U.S. 541, 554-55 (1962).

Relatedly, Plaintiffs' third argument that HB 1569's immediate judicial review provision is "illusory," is baseless. *See, e.g.*, ECF No. 45 at 23. Plaintiffs ask the Court to disregard HB 1569's statutory guarantee of "appeal forthwith" of local election officials' adverse decisions "before the close of the polls on election day." RSA 654:12, V. But the Court must assume that state court judicial review is adequate to protect Plaintiffs' rights, absent evidence to the contrary. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."). Plaintiffs have not provided any reason to believe that New Hampshire state courts cannot satisfy their statutory and constitutional obligations.

Plaintiffs offer only conclusory allegations to support their First and Fourteenth

---

[14] Plaintiffs complain that "well grounded" is arbitrary, but "well grounded" is not the statutory standard. The standard is "more likely than not that the challenge is well grounded." RSA 659:27, II.

10

Amendment claims that HB 1569 does not adequately protect their rights to register, to vote, or to overcome erroneous challenges to their voting eligibility. Accordingly, the Complaint should be dismissed for failure to state a claim upon which the Court may grant relief.

## CONCLUSION

For the foregoing reasons and as explained more fully in Defendants' Memorandum of Law (ECF No. 36), the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: March 5, 2025

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis