UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coalition for Open Democracy, League of Women Voters of New Hampshire, The Forward Foundation, McKenzie Nykamp Taylor, December Rust, Miles Borne, by his next friend Steven Borne, Alexander Muirhead, by his next friend Russell Muirhead, and Lila Muirhead, by her next friend Russell Muirhead, <br><br>  Plaintiffs, <br><br> vs. <br><br> David M. Scanlan, in his official capacity as New Hampshire Secretary of State, and John Formella, in his official capacity as New Hampshire Attorney General, <br><br>  Defendants. | Civil Action No. 1:24-cv-00312-SE |

**PLAINTIFFS' MOTION TO COMPEL
THE STATEWIDE VOTER DATABASE AND RELATED DOCUMENTS**

**(Expedited Treatment Requested Under Local Rule 7.1(f))**

Plaintiffs Coalition for Open Democracy ("Open Democracy"), League of Women Voters of New Hampshire ("LWV-NH"), and The Forward Foundation (together the "Organizational Plaintiffs"), and McKenzie Nykamp Taylor, December Rust, Miles Borne, by his next friend Steven Borne, Alexander Muirhead and Lila Muirhead, by their next friend Russell Muirhead, (together the "Individual Plaintiffs") hereby move to compel Defendants Secretary of State David M. Scanlan and Attorney General John Formella (together the "Defendants") to produce a copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide

151884176_2

voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation. The production of the database is essential to aiding Plaintiffs in demonstrating that HB 1569 unconstitutionally burdens the fundamental right to vote under the United States Constitution. Defendants' claim that state law prevents disclosure of the database is without merit. As explained in more detail below, state law privileges do not trump federal civil discovery rules, and district courts in New Hampshire have repeatedly and consistently rejected arguments to the contrary. Accordingly, as the information in the database is not only critical to this case, but also to the completion of Plaintiffs' expert report, due on June 4, 2025, Plaintiffs ask that this Motion to Compel be granted on an expedited basis pursuant to Local Rule 7.1(g).

## DISCOVERY REQUEST AT ISSUE

Pursuant to Local Rule 37.1(a), "[a]ny discovery motion filed pursuant to Fed. R. Civ. P. 26 or 30 - 37 shall include, in the motion itself or in an attached memorandum, a verbatim recitation of each interrogatory, request, answer, response, and objection, or a copy of the actual discovery document which is the subject of the motion, provided that the party shall file only that portion of the discovery document that is objected to or is the subject of the motion."

Here, Plaintiffs' Second Request for the Production of Documents (the "Second RFPD") was served on February 25, 2025 and Plaintiffs submitted one document request to Defendants. This request sought the following: "A copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation." Second RPFD 1.

Defendants served their response on March 12, 2025, stating as follows:

1

151884176_2

**Defendants' Objections:** "The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request." RSA 654:45, VI. The parties have already met and conferred regarding this Request, Defendants have declined to produce responsive records, and the Court is expecting Plaintiffs to file a motion to compel production of the SVRS.

**Defendants' Joint Response:** Neither the Secretary's nor Attorney General's Offices has the statutory authority to produce the SVRS. Indeed, they have a statutory obligation to resist production of the database.

## MOTION TO COMPEL STANDARD

"Unless otherwise limited by court order, the scope of discovery [extends to] any nonprivileged matter that is relevant to any party's claim or defense and [is] proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In other words, "[i]nformation is generally discoverable if it is: (1) non-privileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Fraser Eng'g Co. v. IPS-Integrated Project Servs.*, No. 17-cv-102-JD, 2018 U.S. Dist. LEXIS 110312, at *3–4 (D.N.H. Jan. 22, 2018) (citing Fed. R. Civ. P. 26(b)(1)). "When a party refuses to produce a document when requested, the party seeking that document may move to compel its production." *Id.* (citing Fed. R. Civ. P. 37(a)(3)(B)(iv)). "The movant bears the initial burden of proving that the information it seeks is relevant for the purposes of discovery." *Id.*; *see also Cont'l W. Ins. v. Opechee Constr. Corp.*, No.

15-cv-006-JD, 2016 U.S. Dist. LEXIS 54716, at *2–3 (D.N.H. 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)). Evidence is relevant as long as it meets the minimal threshold of "encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." *Cont'l W. Ins.*, 2016 U.S. Dist. LEXIS 54716, at *3. Furthermore, "[t]he purpose of pretrial discovery is to make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Wamala v. City of Nashua*, No. 09-cv-304-JD, 2010 U.S. Dist. LEXIS 105229, at *1 (D.N.H. Sept. 20, 2010) (internal quotation marks omitted).

## ARGUMENT

This motion is straightforward. The evidence sought by Plaintiffs is highly relevant to their claims, non-privileged, and reasonable in light of the scope of the claims and arguments of this case. *See Fraser Eng'g Co.*, 2018 U.S. Dist. LEXIS 110312, at *3–4.

First, Defendants do not question the relevancy of the voter database information sought, nor could they. Here, the production of the database is essential to aiding Plaintiffs in demonstrating that HB1569 unconstitutionally burdens the fundamental right to vote under the United States Constitution. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (finding that a court considering a challenge to a state election law must balance the character and magnitude of injury against the justifications put forward by the state). The database will aid Plaintiffs in presenting a complete picture (with data) demonstrating the degree to which individuals who participated in New Hampshire elections prior to HB 1569 would have been impacted by HB 1569

3

had it been in effect in prior elections, and those who have been burdened by HB 1569 since its effective date on November 11, 2024.

For example, the database will assist Plaintiffs in identifying those who, before HB 1569 went into effect, used the Qualified Voter Affidavit process to establish citizenship when they registered to vote, and thus would have been impacted by HB 1569's proof of citizenship requirements had the law been in effect. Defendant Secretary Scanlan himself stated at a June 5, 2024 committee of conference hearing that there were "about 45,000 voters [in New Hampshire] that were born in different countries, and of those, about 7,000 used a qualified voter affidavit to prove their citizenship qualifications." *See* Compl. ¶ 66. He estimated that removing the Qualified Voter Affidavit for citizenship would affect "tens of thousands" of New Hampshire voters who could not otherwise be quickly verified as being previously registered through the centralized voter database. *Id.* And, in the 2020 presidential election year, over 950 New Hampshire voters registered to vote using a Qualified Voter Affidavit to attest to citizenship, age, or identity. *See id.* ¶ 60 (N.H. Dep't. of State, Re: Report to Legislature: Voter Affidavits, at 14–15 (Sept. 8, 2022)).[1]

The database is also critical to establishing the burdens that have been imposed on voters since HB 1569 became effective on November 11, 2024. Publicly available news reports indicate that, during the 2025 municipal elections, individuals were turned away from voting because of HB 1569's onerous terms requiring documentary proof of citizenship for new registrants who could no longer complete Qualified Voter Affidavits. *See* Todd Bookman and Josh Rodgers, "NH's New ID Requirements Send Some Would-be Voters Home to Grab Passports, Birth Certificates," NHPR (Mar. 11, 2025), https://www.nhpr.org/nh-news/2025-03-11/nhs-new-id-requirements-send-some-would-be-voters-home-to-grab-passports-birth-certificates ("In

---

[1] On information and belief, this number is likely several magnitudes higher, and plaintiffs need access to the database to investigate substantial discrepancies in data reported by the state versus other sources.

Londonderry, at least one person who attempted to register was turned away for failing to bring proof of citizenship, according to a poll observer, though it wasn't clear if the person returned with any documentation.").

The database will also help Plaintiffs and this Court evaluate the degree to which Challenged Voter Affidavits were used before HB 1569's enactment. HB 1569 removed the process where a prospective voter who was already registered (and, thus, has already established eligibility to vote)—but whose eligibility was nevertheless challenged by a peer voter (or political-party appointed challenger) on election day—could cast an eligible ballot through a Challenged Voter Affidavit, sworn under the penalties of voter fraud and perjury. The result of HB 1569 is that many of these challenged voters who have already registered (and, thus, who previously established their eligibility) will not have documentary proof of citizenship with them on election day to rebut a surprise challenge to their qualifications because they registered before election day. Without the availability of this Challenged Voter Affidavit, any otherwise eligible voter can be disenfranchised if a moderator decides a voter challenge is "more likely than not" to be "well grounded," a vague standard that is undefined in HB 1569, without any meaningful, readily available right of appeal. Accordingly, the database is critical to evaluate the extent to which Challenged Voter Affidavits have been used in the past and the extent to which voters have been challenged since HB 1569's enactment on November 11, 2024.

Second, Defendants' argument that state law prevents disclosure of the database is foreclosed by federal discovery rules. In federal court, state law privileges must cede to federal civil discovery rules, and federal courts in New Hampshire have consistently rejected any claim to the contrary—especially when a protective order would protect any confidentiality that exists under state law. *See Moses v. Mele*, No. 10-cv-253-PB, 2011 U.S. Dist. LEXIS 59590, at *13

5

151884176_2

(D.N.H. June 1, 2011) ("Assertions of privilege in federal court, in cases dealing with federal questions, are governed by federal law." (citing Fed. R. Evid. 501)); *Saucedo v. Gardner*, No. 17-cv-183-LM, 2017 U.S. Dist. LEXIS 223162, at *8 (D.N.H. Oct. 27, 2017) (rejecting City of Manchester's efforts to quash subpoena on the ground that affidavit ballots and affidavit ballot envelopes may be protected by law; "And even if some of the information, including the voter's signature or the reason for voting by absentee ballot, is confidential under state law, *see* RSA 654:31-a, such information will be protected from disclosure by the protective order entered in this case"); *G.K. v. Sununu*, No. 21-cv-4-PB, 2021 U.S. Dist. LEXIS 254089, at *9 (D.N.H. Dec. 30, 2021) ("State statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions."); *see also Spiegel v. Engagetel*, No. 15 C 1809, 2015 U.S. Dist. LEXIS 168344, at *13 (N.D. Ill. Dec. 16, 2015) (collecting cases making clear that "litigants cannot use state statutes or constitutional provisions to skirt the requirements of Rule 45"). This case is no different.

Third, Plaintiffs' request is reasonable, as evidenced by the fact that the Secretary of State and Attorney General have produced the same evidence to parties in similar cases. The Secretary of State and Attorney General produced the statewide voter database pursuant to the terms of an agreed-upon protective order in *Casey v. N.H. Sec'y of State*—a case that alleged that changes to New Hampshire's statutory definitions of "resident" and "residence" were intended to burden the right to vote by indirectly making voter registration an effective declaration of residency that triggers obligations and fees for drivers and vehicle owners under New Hampshire's Motor Vehicle Code. *See Casey v. N.H. Sec'y of State*, No. 19-cv-149-JL, 2019 WL 6352476 (D.N.H. Nov. 27, 20219). This production occurred after the district court (Laplante, J.) orally ruled at an August 13, 2019 status conference, over the defendants' objection, that the state-law privilege set

6

out in RSA 654:45 did not apply in that federal proceeding and directed the defendants to produce database information as part of discovery. In producing this database information in that case, the defendants there preserved their objection to disclosing the database information, did not waive that objection in any way, and reserved the right to reassert RSA 654:45 as a basis for withholding discovery if any party seeks database information beyond the scope of what was represented to the court during the August 13, 2019 conference. The defendants also did not waive their right to raise the privilege set out in RSA 654:45 in any future litigation brought in state or federal court in which the database information is sought, whether through discovery or otherwise. This is memorialized in ECF Nos. 52 and 53 (¶2) in the *Casey* matter. Plaintiffs are willing to follow the same procedure here, followed in *Casey* (and *Saucedo*[2]), and, as communicated to the Defendants in our meet and confer, are willing to enter into a reasonable protective order.

WHEREFORE, for the reasons stated above, the Plaintiffs request that the Court:

a) Compel the production of "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation"; and

b) Other and further relief as this Court deems just and proper in the circumstances.

---

[2] In *Saucedo v. Gardner*, municipalities produced pursuant to the terms of an agreed-upon protective order various affidavit ballot applications and affidavit ballot envelopes that arguably were protected under New Hampshire law. *See* No. 17-cv-183-LM, ECF No. 30. That case challenged the process for rejecting voters due to a perceived signature mismatch on affidavit ballot applications and affidavit ballot envelopes failed to guarantee basic fairness and was unconstitutional because perceived mismatches lacked notice and an opportunity cure. *See Saucedo v. Gardner*, 335 F. Supp. 3d 202 (2018).

## **CERTIFICATION**

Pursuant to L.R 7.1(c), the undersigned certifies that a good faith attempt has been made to obtain concurrence in the relief sought. Defendants object. Moreover, on February 24, 2025, counsel for the parties met-and-conferred in an attempt to narrow the dispute but were unable to resolve the dispute without Court intervention.

Respectfully submitted,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, MCKENZIE NYKAMP TAYLOR, DECEMBER RUST, MILES BORNE, BY HIS NEXT FRIEND STEVEN BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Henry R. Klementowicz*
Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH  03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

Ming Cheung
Clayton Pierce
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
slakin@aclu.org

151884176_2

Case 1:24-cv-00312-SE-TSM   Document 60   Filed 03/27/25   Page 11 of 11

        Geoffrey M. Atkins
        John T. Montgomery
        Desiree M. Pelletier
        ROPES & GRAY LLP
        Prudential Tower, 800 Boylston Street
        Boston, MA 02199
        (617) 951-7000
        Geoffrey.Atkins@ropesgray.com
        John.Montgomery@ropesgray.com
        Desiree.Pelletier@ropesgray.com

*Counsel for Plaintiffs*

March __, 2025

**CERTIFICATE OF SERVICE**

I certify that on today's date I served a copy of the foregoing on all counsel through the court's ECF system.

*/s/ Henry Klementowicz*
Henry Klementowicz

10

151884176_2