UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coalition for Open Democracy, League of Women Voters of New Hampshire, The Forward Foundation, McKenzie Nykamp Taylor, December Rust, Miles Borne, by his next friend Steven Borne, Alexander Muirhead, by his next friend Russell Muirhead, and Lila Muirhead, by her next friend Russell Muirhead, <br><br>      Plaintiffs, <br><br> vs. <br><br> David M. Scanlan, in his official capacity as New Hampshire Secretary of State, and John Formella, in his official capacity as New Hampshire Attorney General, <br><br>      Defendants. | Civil Action No. 1:24-cv-00312 |

**PLAINTIFFS' RESPONSE TO REPUBLICAN PARTIES'
AMICUS BRIEF IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

Defendants offered only cursory attention to their Rule 12(b)(6) motion across two briefs, but the Republican National Committee and the New Hampshire Republic State Committee ("Republican Amici") now attempt a third bite at apple. Republican Amici previously indicated they had nothing of value to add to Defendants' existing dismissal arguments,[1] and that remains true. Their amicus brief serves little purpose beyond confusing the issues and expending judicial resources. At the core, Republican Amici ask the Court to apply the wrong standards at the pleadings stage, seek to impose novel and insurmountable constitutional standards for challenging voting restrictions, and understate (or in some cases simply ignore) the Complaint's allegations. For these reasons, and the reasons outlined in the Plaintiffs' Opposition to Defendants Motion to Dismiss, ECF No. 45, and its Surreply, ECF No. 54,[2] the Court should deny the motion to dismiss.

## ARGUMENT

**I.    Plaintiffs adequately plead right-to-vote claims against HB 1569.**

The First Circuit has held that when a "complaint alleges facts which, if true, tend to support" a claim that the challenged provision imposes an "undu[e] burden" on voting rights, "[t]hat clinches the matter." *Cruz v. Melecio*, 204 F.3d 14, 22 (1st Cir. 2000). The Plaintiffs' allegations here "support [the] claims" that HB 1569 "unduly burden[s]" the right to vote. *Id.*; *see, e.g.*, Opp'n, ECF No. 45 at 19–20 (detailing allegations of significant burdens). Indeed, the Republican Amici concede that there are "difficulties of obtaining proof of citizenship." Br. at 10

---

[1] *See* Republican Committees' Mot. to Intervene, ECF No. 39 ¶ 11; Republican Committees' Reply, ECF No. 44-1 at 3 (insisting they merely "intend to join" defendants' arguments "to dismiss the Complaint" rather than file additional arguments in a required Rule 24(c) filing).
[2] Please note that any capitalized terms not defined herein are intended to take the definitions from Plaintiffs' prior briefing in opposition to the motion to dismiss. *See* ECF Nos. 45 & 54.

1

(quoting *Burdick v. Takushi*, 504 U.S. 428, 438–39 (1992)).³ Accordingly, "[t]he fact-specific nature of the relevant inquiry . . . obviates a resolution of this case on the basis of the complaint alone." *Cruz*, 204 F.3d at 22. As the First Circuit has explained,

> If, for example, [Plaintiffs] can prove that [obtaining documentary proof] is prohibitively expensive or otherwise difficult to achieve (as the complaint avers), then [the state] will have to show that the . . . requirement is narrowly drawn to advance a compelling governmental interest. This showing requires [it] to come forward with proof. Whether it ultimately can succeed in this endeavor is a sufficiently open question that we cannot conclude, *on the pleadings,* that no set of facts exists under which the appellants might prevail.

*Id*. Under this framework, Republican Amici cannot at this stage overcome the Complaint's allegations on HB 1569's burden on the right to vote.

   A.  <u>Republican Amici improperly apply heightened standards at the pleadings stage.</u>

The Court should reject Republican Amici's misstatement of the standards governing the motion to dismiss and their thinly veiled effort to treat this as a motion for summary judgment. "[M]otions to dismiss under Rule 12(b)(6) are decided based solely on the face of the complaint." *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 n.4 (1st Cir. 2021). At the motion to dismiss stage, a court must "take all of the factual allegations in the complaint as true," and all reasonable inferences should be drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs "need not definitively prove [their] injury or disprove the [state's] defenses" *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 637 (2023). First, Republican Amici seek to avoid well-established precedent by invoking rare circumstances in which courts in other Circuits have dismissed a candidate-filed ballot access claim. Br. at 9–10. Their cases are plainly

---

³ The insistence that "the difficulties of obtaining proof of citizenship . . . are a far cry from the 'heavy burden[]'" of taking an "unnecessary chance with your life . . . simply to vote," Br. at 10 (quoting *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 15 (1st Cir. 2020)), is a blatant red herring. A restriction need not endanger lives to unconstitutionally burden voting rights. *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020) (holding documentary proof of citizenship ("DPOC") requirements unconstitutionally burden the right to vote).

inapposite. *Compare Daunt v. Benson*, 999 F.3d 299, 309 (6th Cir. 2021) (dismissing candidate eligibility case under the "law-of-the-case" doctrine where the allegations did not "differ from or go beyond" prior record and the plaintiffs conceded "there are only legal questions at issue"); and *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016) (finding further factual development unnecessary because—in the unique context of ballot ordering—a candidate's claim about "positional bias" "fail[s] to raise an inference of any cognizable constitutional burden"); *with Soltysik v. Padilla*, 910 F.3d 438, 444–48 (9th Cir. 2018) (reversing dismissal of ballot access claims even though pleaded burden was "not severe," since a defendant is "required to offer evidence that its regulation . . . is a reasonable means of achieving the state's desired ends").

Second, improper factual arguments pervade the brief, effectively seeking to convert Defendants' motion to one for summary judgment. For example, Republican Amici bemoan that the Complaint does not itemize exactly "how many . . . voters [without DPOC] reside in New Hampshire; how many are attempting to register to vote; or how many would be unable to access citizenship documents if they tried." Br. at 7. But Plaintiffs "need not definitively prove [their] injury or disprove the [state's] defenses" at this stage. *Tyler*, 598 U.S. at 637. Further, they dispute well-pleaded allegations: Republican Amici start their brief, for instance, by encouraging the Court to ignore alleged data and engaged in improper credibility assessments as the pleadings stage because the underlying survey—conducted by a reputable state university—was co-sponsored by organizations supportive of voting rights. *See* Br. at 7. And they end by purporting to introduce new evidence of a single individual charged with voter fraud hundreds of miles away. Br. at 19. None of this is appropriate at the motion to dismiss stage.

B. <u>Republican Amici misstate well-established standards for right-to-vote claims.</u>

Defendants and Republican Amici cannot agree on why they think the complaint fails to state a right-to-vote claim: Defendants argue the Court can only consider burdens on *Plaintiffs*

3

*themselves* but not burdens on "nonparties," Reply, ECF No. 48 at 9, while Republican Amici insist that any burdens are "legally irrelevant" unless they are "categorical burdens" on *all* voters, Br. at 13–14. Both arguments are incorrect and drastically oversimplify the *Anderson-Burdick* balancing standard. *See* Surreply, ECF No. 54 at 5 (responding to Defendants' misstatement of law).

Here, the Court "must balance any burden on the right to vote imposed by the DPOC requirement against the government's asserted interests as justifications for imposing that burden." *Fish*, 957 F.3d at 1127. In considering the burden, courts look to the law's impact on voters broadly, along with any special burdens on particular groups. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198–99 (2008) (considering burdens imposed on all eligible persons who "do not possess [qualifying] identification" and weighing whether any "heavier burden may be placed on a limited number of persons"). "*Crawford* teaches that . . . while we are to evaluate 'the statute's broad application to all . . . voters' to determine the magnitude of the burden, we may nevertheless specifically consider the 'limited number of persons' on whom '[t]he burdens that are relevant to the issue before us' will be 'somewhat heavier.'" *Fish*, 957 F.3d at 1127 (quoting *Crawford*, 553 U.S. at 198–99, 202–03).

Republican Amici instead ask the Court to rely wholly on a line from Justice Scalia's concurring opinion in *Crawford* for the proposition that burdens faced by any subset of voters (rather than "*voters generally*") are "legally 'irrelevant.'" Br. at 13-14 (quoting *Crawford*, 553 U.S. at 204, 206 (Scalia, J., concurring in the judgment)). However, *Crawford*'s controlling opinion rejected Republican Amici's theory. *See Crawford*, 553 U.S. at 190 n.8 ("Contrary to Justice Scalia's suggestion . . . , our approach remains faithful to *Anderson* and *Burdick*."). Amici nevertheless fault Plaintiffs for pleading burdens on people who lack qualifying documentation,

4

persons of color, and the ten percent of the New Hampshire electorate that registers each Election Day.[4] Republican Amici's effort to paint the tens of thousands of voters—if not more—who lack qualifying documentation or will have difficulty providing it as a legally irrelevant "small group" is particularly disingenuous. *See* Br. at 6, 13–14. *Crawford* explicitly held that the burdens most "relevant to the issue before us are those imposed on persons who are eligible to vote but do not possess [qualifying] identification . . . ." 553 U.S. at 198.[5]

Republican Amici do not help their cause by cherry-picking selective quotes from cases that either are inapposite or support Plaintiffs. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1261 (11th Cir. 2020) (concluding a claim based on ballot order was "nonjusticiable" and "not based on the right to vote *at all*, so [it could not] evaluate their complaint using [*Anderson-Burdick*] standards"); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 236 (5th Cir. 2020) (declining to examine "individual impacts" on a "plaintiff-by-plaintiff basis" and emphasizing that the *Crawford* controlling opinion "did not go as far as the [Scalia] concurrence"); *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1319 (11th Cir. 2021) (analogizing to Scalia's concurrence when reviewing an *intentional racial discrimination claim* against voter ID law, but "readily acknowledg[ing] that the challengers in *Crawford* did not allege intentional race

---

[4] Amici's focus on a lack of constitutional right to Election Day registration (which Plaintiffs do not invoke) is bizarre. A state cannot insulate against one provision's unconstitutionality by enacting another provision that is more generous than the baseline required by the Constitution. *See* Br. at 12 (arguing that HB 1569 is not unconstitutional because "New Hampshire accommodates voters with election-day registration [that] makes the State's elections *less* burdensome, not more."). A substantial number of New Hampshirites register or re-register on Election Day, rather than make multiple trips to election officials. If those voters are turned away because they believed they were registered, bring DPOC that gets rejected, or cannot provide DPOC, they will be disenfranchised.

[5] Here, Plaintiffs allege, for instance, that over 40 percent of voting-eligible citizens lack a passport, and defendant Scanlan conceded that tens of thousands will be directly injured in New Hampshire. *See, e.g.*, Compl. ¶¶ 66, 76. The burden is of a different magnitude than that considered in *Crawford*, where "99% of Indiana's voting age population already possesse[d] the necessary photo identification to vote" and for the remaining less than one percent, photo ID could be obtained for free. 553 U.S. at 188 n.6.

discrimination"); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 631 (6th Cir. 2016) (noting views of Scalia's concurrence, but affirming "under the controlling opinion's more liberal approach to burden measuring").

C. Plaintiffs allege significant burdens on the right to vote.

The Court should reject Republican Amici's further arguments that Plaintiffs fail to allege burdens to the right to vote created by HB 1569.

First, Republican Amici implausibly argue that the Complaint fails to even challenge New Hampshire's DPOC requirement because HB 1569 technically only created such a regime by *removing* the Qualified Voter Affidavit. *See* Br. at 6. That is, Republican Amici believe "[t]he Constitution doesn't require [a Qualified Voter Affidavit or Challenged Voter Affidavit], so removing them doesn't violate the Constitution." Br. at 6.[6] This argument is nonsensical—prior to HB 1569, New Hampshire voters could register without providing DPOC and swear to their qualifications when challenged at the polls; after HB 1569, voters can do neither. This is precisely what Plaintiffs challenge. HB 1569's changes leave behind a uniquely burdensome DPOC requirement and voter challenge regime that make New Hampshire a glaring outlier nationwide. It is the *only* state in the nation to require DPOC to participate in federal elections. Compl. ¶ 12.

Next, Republican Amici's insistence that the costs of obtaining DPOC pose no burden—a disputed factual contention at best—falls flat. *See* Br. at 7–8 (encouraging dismissal because for

---

[6] Republican Amici's purported support for this hyper-technical argument is inapplicable to the facts in this case. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 624 (6th Cir. 2016) (rejecting inapposite argument "that any expansion of voting rights must remain on the books forever," because it would dissuade states from ever "pass[ing] bills expanding voting access if, once in place, they could never be modified in a way that might arguably burden some segment of the voting population's right to vote."); *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1188 (9th Cir. 2021) (rejecting an *Anderson-Burdick* challenge to Arizona's election-day cure deadline for voters who "forget to sign the affidavit" on a mail-in ballot). Plaintiffs here do not argue that the state merely modified a pro-voter provision, nor they do they complain about the "consequence of noncompliance" with a burdenless task. *Id.* Plaintiffs challenge the burdens of complying with the DPOC rule and how, due to those burdens, many will be unable to register.

*some* individuals the cost of DPOC is $15). The cost is but one facet of the cumulative burden on voters, and Plaintiffs' allegations of substantial costs are more than enough to survive this motion to dismiss. Compl. ¶¶ 78–80. Republican Amici ignore *Crawford*'s heavy emphasis that an Indiana photo ID could "be obtained for free," and its warning that "[t]he fact that most voters already possess . . . some . . . form of acceptable identification, would not save the statute" from constitutional challenge if voters had to "pay a tax or a fee to obtain a new [qualifying] identification." 553 U.S. at 198; *see also Fish*, 957 F.3d at 1113, 1131 (evidence of "the cost of a replacement birth certificate" demonstrates a "significant burden on the right to vote"). The *Crawford* plurality explained that many people—including those with "economic or other personal limitations," "homeless persons," and "elderly persons born out of State"—"may find it difficult either to secure a copy of their birth certificate or to assemble the other required documentation to obtain a state-issued identification." 553 U.S. at 199.[7] The Court concluded, however, that "[t]he severity of that burden" was "mitigated" due to unique aspects of Indiana law—namely "the fact that, if eligible, voters without photo identification may cast provisional ballots that will ultimately be counted" upon completing an "*affidavit*" about their qualifications. *Id*. Here, HB 1569 removes affidavit options that saved the Indiana photo ID law from heightened scrutiny. *See Fish*, 957 F.3d at 1128–29 (holding Kansas's DPOC requirement unconstitutional because, unlike the "affidavit" option in *Crawford*, it "offered no similar safety valve").

Further, Republican Amici rely on irrelevant cases upholding other states' registration deadlines to insist that the time it takes to obtain qualifying documents poses no burden. Br. at 8. Plaintiffs do not challenge New Hampshire's registration deadline, and none of those cases

---

[7] In discussing the wider range of documents used to obtain a photo ID in Indiana, *Crawford* noted that "most States" "charge[] a fee for obtaining a copy of one's birth certificate" and "[s]ome States charge *substantially more*" than Indiana. 553 U.S. at 198 n.17 (emphasis added).

involved burdens that would preclude voters *who sought to comply with the registration deadlines* from registering to vote.[8] *See Fish*, 957 F.3d at 1129 (emphasizing that "voters who were not registered due to a lack of DPOC . . . could show up to vote but be turned away without a backup option for them to cast votes"); *see also Crawford*, 553 U.S. at 199 ("heavier burden" posed by "difficult[ies]" of "secur[ing]" or "assembl[ing] . . . required documentation" in time was "mitigated by" provisional balloting).

    D.  No state interest outweighs the alleged burdens as a matter of law.

Under Republican Amici's arguments, no plaintiff could ever state a right-to-vote claim if the state is able to identify an interest in the challenged law. Br. at 16–21. Not so.

Republican Amici assert that HB 1569 is supported by interests in "conducting orderly elections, enhancing public confidence in election integrity, and guarding against voter fraud." *Id.* at 16. To begin, they concede that only one of these interests appears on the face of the Complaint. Br. at 16, 18. Notably, Amici assert interests beyond those raised by Defendants themselves. *See* Mem. of Law, ECF No. 36-1 at 30 (arguing only a voter fraud interest); Reply at 9 (same).[9] But even assuming Defendants have some relevant or even compelling interest, the inquiry does not end. *Crawford*, 553 U.S. at 190 n.8 ("*Burdick* surely did not create a novel 'deferential "important regulatory interests" standard.'"); *Fish*, 957 F.3d at 1125 n.4 ("[S]ix Members of the [*Crawford*] Court . . . rejected" such a "reframing of the *Anderson-Burdick* balancing test").

---

[8] Even accepting Amici's voter-blaming theory, many voters cannot register earlier, for example, if they do not meet other qualifications—e.g., age or domicile—until just before an election.

[9] In response to interrogatories asking for "*any* state interests that justify the challenged provisions," Defendants only identified an interest in "counting only the votes of eligible voters."

Plaintiffs allege significant harms from HB 1569.[10] Accordingly, the burden is on state to prove that their interests *justify* that those harms. *See, e.g.*, *Crawford*, 553 U.S. at 191 ("However slight that burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"); *Fish*, 957 F.3d at 1132 (concluding state's "legitimate interests are insufficiently weighty to justify the limitations on the right to vote imposed by the DPOC requirement"). Republican Amicis' own case citations prove this point. *E.g.*, *Common Cause R.I.*, 970 F.3d at 15 (asking whether "the incremental interest in the specific regulation at issue" is justified, not whether "in the abstract, the broader regulatory interest—preventing voting fraud and enhancing the perceived integrity of elections—is substantial and important"); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009) (even a "legitimate interest . . . must be weighed against the burden . . . to determine whether the interest is 'sufficiently weighty to justify the limitation'"). At this stage, "[t]hat clinches the matter" and the Court need not wade through premature arguments about the merits of abstract state interests at this time. *Cruz*, 204 F.3d at 22.

## II. The Complaint pleads freestanding Due Process and Equal Protection claims.

Republican Amici misstate precedent to imply that Plaintiffs cannot independently plead Due Process and Equal Protection claims. In *Libertarian Party of N.H. v. Gardner*, a political party raised three ballot access claims—two based on First Amendment "rights of association and

---

[10] Given that Republican Amici point to sources outside the Complaint, they cannot ignore that HB 1569 forced officials to turn away, in a low estimate, a hundred people in small-scale municipal elections this spring. *See* Adam Sexton, *Advocates Say New Voter Registration Rules Turned Away Nearly 100 New Hampshire Voters*, WMUR (Mar. 25, 2025), https://www.wmur.com/article/voter-registration-new-hampshire-aclu-32525/64290324; Carrie Levine, *New Hampshire Election Offers Preview of Barriers Posed by SAVE Act*, Votebeat (Mar. 24, 2025), https://www.votebeat.org/2025/03/24/new-hampshire-election-proof-of-citizenship-law-voter-registration/ (quoting Defendant Scanlan's admission that "based on the number of individuals that were turned away to get further documentation, we know that we have a lot more work to do").

9

political speech" and an Equal Protection claim about differential treatment of political parties. 638 F.3d 6, 14–18 (1st Cir. 2011). The court properly "review[ed] all of the First and Fourteenth Amendment claims" in that case "under the sliding scale approach" in *Anderson* and *Burdick*. *Id.* at 14. Notably, the First Circuit did not collapse any of those claims together; it addressed each freestanding claim separately according to unique, relevant case law. *Id.* at 14–18. And the court said nothing about right-to-vote, procedural due process, or lack-of-uniform-standards claims.

Relevant precedent runs contrary to Republican Amici's argument. For example, courts in the First Circuit review procedural due process claims related to voting rights under the familiar *Mathews v. Eldridge* standard. *See, e.g.*, *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 222 (D.N.H. 2018) (striking down New Hampshire's signature matching requirement that "vest[ed] moderators with sole, unreviewable discretion to reject ballots" under *Mathews v. Eldridge* without reference to *Anderson-Burdick*); *id.* at 223 (not reaching the right-to-vote claim, but emphasizing that that such a claim "target[ted] the same basic defects in the statute . . . , albeit under the auspices of a different test").[11] In fact, caselaw relied on elsewhere in Republican Amici's brief directly contradicts their last-ditch effort to collapse Plaintiffs' claims together. *See, e.g.*, *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 630–37 (applying distinct standards for claims based on burdens on right to vote, a lack of uniform standards, and a violation of due process).

## CONCLUSION

For the reasons herein and in prior briefing, the Court should deny the motion to dismiss.

---

[11] To the extent Republican Amici cite to a small minority of other Circuits that have analyzed other voting-related claims under the *Anderson-Burdick* framework, *see* Br. at 21–22, that precedent is not binding on this court and remains on shaky ground. *Cf. Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 390–91 (6th Cir. 2020) (recognizing the "ongoing uncertainty in this circuit" regarding whether Anderson-Burdick standard "encompasses procedural due process claims").

10

Respectfully submitted on this April 4, 2025,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, MCKENZIE NYKAMP TAYLOR, DECEMBER RUST, MILES BORNE, BY HIS NEXT FRIEND STEVEN BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Henry R. Klementowicz*

Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

Ming Cheung
Clayton Pierce
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
slakin@aclu.org

Geoffrey M. Atkins

          John T. Montgomery
          Desiree M. Pelletier
          ROPES & GRAY LLP
          Prudential Tower, 800 Boylston Street
          Boston, MA 02199
          (617) 951-7000
          Geoffrey.Atkins@ropesgray.com
          John.Montgomery@ropesgray.com
          Desiree.Pelletier@ropesgray.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2025, a copy of the foregoing document was served upon counsel for Plaintiff via electronic mail.

                                                                        /s/ Henry Klementowicz

                                                                 *Henry R. Klementowicz*