UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| COALITION FOR OPEN DEMOCRACY, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, *et al.*,<br><br>    *Defendants*. | Case No. 1:24-cv-00312-SE-TSM |

**DEFENDANTS' AMENDED OBJECTION TO MOTION TO COMPEL
THE STATEWIDE VOTER DATABASE & RELATED DOCUMENTS**

NOW COME Defendants New Hampshire Secretary of State David M. Scanlan and New Hampshire Attorney General John M. Formella (collectively, the "Defendants"), by and through their counsel, the Office of the Attorney General, and amends and supersedes their Objection (ECF No. 69) to Plaintiffs' Motion to Compel the Statewide Voters Database & Related Documents (ECF No. 60),[1] and state as follows:

**INTRODUCTION**

Defendants cannot produce New Hampshire's Statewide Voter Registration System ("SVRS"). Pursuant to the authority conferred to it under federal law, New Hampshire chooses the methods to implement its SVRS, and New Hampshire has chosen to protect its database from disclosure. State-based SVRS implementation is an integral part of the Help America Vote Act's ("HAVA") cooperative federalism statutory scheme. Moreover, the SVRS is critical infrastructure. Disclosing physical and virtual critical infrastructure to third parties would

---

[1] In addition to providing two supporting affidavits, Defendants offer this Amended Objection to correct a factual inaccuracy on page 12 of ECF No. 69 (the original Objection) regarding Qualified Voter and Challenged Voter Affidavit data maintained by the SVRS.

frustrate the purpose of the Homeland Security Act and unnecessarily expose New Hampshire's election systems to cybersecurity threats.

Federal and state law prohibiting SVRS disclosure notwithstanding, the Federal Rules also prohibit SVRS disclosure. Plaintiffs' request exceeds the permissible scope of discovery because it is neither relevant to claims or defenses, nor is it proportional to the needs of this case. For these reasons, and as more fully articulated below, the Court should deny Plaintiffs' Motion to Compel.

## DEFENDANTS' JURISDICTIONAL OBJECTION

Defendants' Motion to Dismiss, which asserts that Plaintiffs do not have standing to challenge House Bill 1569 ("HB 1569"), is currently pending before the Court. ECF No. 36. This Objection to Plaintiffs' Motion to Compel the Statewide Voter Database & Related Documents does not waive Defendants' contention that the Court does not have subject-matter jurisdiction in this case. And since "[t]he Court's power to order discovery is circumscribed by its jurisdiction; where it has no jurisdiction, it has no power, and cannot order discovery." *Savis, Inc. v. Warner Lambert, Inc.*, 967 F. Supp. 632, 641 (D.P.R. 1997) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171-172 (1938)); *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir. 1991) ("Unless a federal court possesses subject matter jurisdiction over a dispute, therefore, any order it makes (other than an order of dismissal or remand) is void.") (cited by *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 100 (1st Cir. 2001)). Accordingly, the Court should defer ruling on Plaintiffs' Motion to Compel until the Court grants or denies Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any non-privileged matter that is relevant to claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "The movant bears the initial burden of proving that the

2

information it seeks is relevant for the purposes of discovery." *Fraser Eng'g Co. v. IPS-Integrated Project Servs.*, No. 17-cv-102-JD, 2018 U.S. Dist. LEXIS 110312, at *3–4 (D.N.H. Jan. 22, 2018) (citing Fed. R. Civ. P. 26(b)(1)).

A matter is relevant if it bears on or could reasonably lead to another matter that could bear on an issue in the lawsuit. *See Bonner v. Triple S Mgmt. Corp.*, 68 F.4th 677, 685 (1st Cir. 2023) (noting that the right to discovery is limited by relevancy). Relevance should be broadly construed, but a "speculative or attenuated connection between materials sought and claims or defenses [is] insufficient to establish relevance under Rule 26(b)(1)." *Estate of Lawrence v. Lavoie*, No. 14-cv-570-PB, 2017 U.S. Dist. LEXIS 230031, at *9 (D.N.H. July 25, 2017) (quotations and citation omitted). The proportionality analysis considers factors such as the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the requested discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

## STATEMENT OF FACTS

New Hampshire's Statewide Voter Registration System is a computerized statewide voter registration list required by federal law. 52 U.S.C. § 21083. It is a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered by the Secretary of State, containing the name and registration information of every legally registered voter in the state, identifying each legally registered voter with a unique identifier. 52 U.S.C. § 21083(a)(1)(A). It is a database and communications system accessed by local election officials throughout the state, limited to each local election official's jurisdiction. RSA 654:45, I(a) & II. It includes information reflected on voter registration forms, accepted absentee ballot applications, voter checklists, and voter actions as recorded on the marked

checklist maintained by each city, ward, and town. *Id.* The SVRS is an integral part of the Secretary's duty to maintain a secure verification process that ensures voters sharing a place and date of birth, along with a substantially similar name (including nicknames or likely name changes), are unique voters. *See* RSA 654:45, I-V.

## ARGUMENT

The Court's lack of subject-matter jurisdiction to compel disclosure of New Hampshire's Statewide Voter Registration System notwithstanding, the Court should deny Plaintiffs' Motion to Compel for three reasons. First, the Help America Vote Act's cooperative federalism statutory scheme prohibits disclosure of the SVRS. Second, the SVRS is critical infrastructure that cannot be disclosed. Third, even if federal and state law do not exempt the SVRS from disclosure, Plaintiffs' request for production of the SVRS exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure.

**I.     The Help America Vote Act's Cooperative Federalism Statutory Scheme Prohibits Disclosure of New Hampshire's Statewide Voter Registration System**

HAVA prohibits disclosure of New Hampshire's SVRS. Federalism divides and shares authority between federal and state governments. In the realm of election law, concurrent and complementary federal and state authority is the norm. The Help America Vote Act expressly authorizes states to choose methods to implement minimum voting system standards for use in federal elections. Pursuant to this authority, New Hampshire has chosen to protect its SVRS from disclosure in litigation. This statutory exemption is not a rule of procedure—it is an integral part of Congress's cooperative federalism statutory scheme. Accordingly, the Court cannot abrogate New Hampshire's substantive right to implement federal election standards.

### A.     Federal and State Sovereigns Share Constitutional Authority Over Elections

Dual sovereignty is a hallmark of the United States system of government. The Federalist No. 51 (James Madison) ("In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments."). In New Hampshire,

> [t]he people of this State have the sole and exclusive right of governing themselves as a free, sovereign, and independent State; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in Congress assembled.

N.H. Const. pt. I, art. 7; *accord* U.S. Const. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."). New Hampshire's sovereignty is limited only by the Supremacy Clause of the United States Constitution:

> [T]he Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2; *Wyeth v. Levine*, 555 U.S. 555, 584 (2009) ("[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause.") (citations and quotations omitted). This federalist system divides and shares authority between federal and state governments. *See Alden v. Maine*, 527 U.S. 706, 714 (1999) ("[Federalism is] a system in which the State and Federal Governments would exercise concurrent authority over the people[.]") (citations and quotations omitted).

Federal law may be supreme, but not every act of Congress preempts state law. *See Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Indeed, Congress often "divides responsibility for complex regulatory schemes between states and the federal government[.]" *See Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 281 (5th Cir. 2010). There are numerous examples of this

"cooperative federalism" in the United States Code, where Congress establishes standards but states retain "latitude to proceed in any number of fashions," if states' choices are consistent with federal priorities.  *Id.* (quoting Phillip J. Weiser, Federal Common Law, Cooperative Federalism, and Enforcement of the Telecom Act, 76 N.Y.U. L. REV. 1692, 1742-43 (2001)).  "In other words, cooperative federalism 'best describes those instances in which a federal statute provides for state regulation or implementation to achieve federally proscribed policy goals.'"  *Mass. v. Sebelius*, 701 F. Supp. 2d 182, 192 (D. Mass. 2010) (quoting Philip J. Weiser, Towards a Constitutional Architecture for Cooperative Federalism, 79 N.C. L. Rev. 663, 668 (2001)).

Many federal laws related to voting rights feature cooperative federalism.  *See, e.g.*, *Colón-Marrero v. Vélez*, 813 F.3d 1, 15 (1st Cir. 2016) (noting that HAVA requires state-based administrative complaint procedures); *Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 12, 133 S. Ct. 2247, 2255 (2013) (noting that the National Voter Registration Act gives states "the flexibility to design and use their own registration forms" where the federal form "provides a backstop").  "Weighing the respective federal and state interests in the electoral context represents a delicate endeavor because both sovereigns share constitutional authority over this field."  *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 754 F. Supp. 3d 664 (E.D.N.C. 2024) (citing U.S. Const. art. I, § 4, cl. 1).  HAVA's cooperative federalism scheme balances federal and state interests in regulating elections "by granting the states substantial discretion in implementing their own 'methods' for 'complying with the requirements' of HAVA."  *Id.* (quoting 52 U.S.C. § 21085).

### B. The Help America Vote Act Authorizes States to Choose Methods of Implementing Statewide Voter Registration Systems

Congress enacted HAVA to establish minimum state voting system standards for use in federal elections.  *See* 52 U.S.C. § 21081 ("Each voting system used in an election for Federal

office shall meet the following requirements….").  So, states must implement voting systems to ensure accountability, accessibility, voter privacy, and ballot confidentiality.  *See* 52 U.S.C. § 21081(a).  Among other things, HAVA mandates that states educate voters regarding voting systems' function and usage, allow voters to fix their mistakes and system errors, and ensure vote count reliability and accuracy.  *See generally*, 52 U.S.C. § 21081(a).  HAVA also requires states to develop and implement computerized statewide voter registration lists, commonly referred to as SVRS:

> [E]ach State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State[.]

*See* 52 U.S.C. § 21083(a)(1).  HAVA's computerized statewide voter registration list provision is comprehensive.  It details numerous general, maintenance, verification, and usage requirements.  *See* 52 U.S.C. § 21083(a)-(c).  It also mandates that the "appropriate State or local official shall provide adequate technological security measures to prevent the unauthorized access to the computerized list[.]" 52 U.S.C. § 21083(a)(3).  An integral part of HAVA's statutory scheme, however, is delegation of implementation strategies to the state: "The specific choices on the methods of complying with the requirements of this title ***shall be left to the discretion of the State***."  52 U.S.C. § 21085 (emphasis added).

    **C.**    **Pursuant to the Authority Conferred to New Hampshire by the Help America Vote Act, New Hampshire Prohibits Disclosure of Its Statewide Voter Registration System**

HAVA articulates clear federally proscribed policy goals, while reserving to New Hampshire wide latitude to proceed in any fashion it chooses that is consistent with HAVA's priorities.  *See* 52 U.S.C. §§ 21084, 21085.  The discretionary methods the state uses to meet or

7

exceed HAVA's standards are codified in the New Hampshire Revised Statutes Annotated Chapter 654. Under New Hampshire law:

> [t]he secretary of state is authorized to plan, develop, equip, establish, site, and maintain a statewide centralized voter registration database and communications system, hereinafter referred to as the voter database, connecting users throughout the state.

RSA 654:45, I(a).

Two federal policy priorities are relevant to the Court's consideration of Plaintiffs' Motion to Compel. First, HAVA requires state voting systems to "preserve[] the privacy of the voter and the confidentiality of the ballot." 52 U.S.C. § 21081(a). Second (and relatedly), HAVA requires states to "provide adequate technological security measures to prevent the unauthorized access to the computerized list[.]" 52 U.S.C. § 21083(a)(3). To implement these federal priorities, New Hampshire chose an unequivocal method:

> The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request.

RSA 654:45, VI. New Hampshire's authorized election officials may access the SVRS, but *only* within that election official's jurisdiction. RSA 654:45, II. Even the SVRS *access point* is carefully circumscribed to ensure cybersecurity. *Id.* (restricting the "database access point" to the town or city clerk's office unless the Secretary of State expressly authorizes additional access points in a town or city, "including election day access points at polling places."). Indeed, voter privacy and confidentiality are so fundamental to New Hampshire's implementation of HAVA's computerized statewide voter registration list, that unauthorized disclosure is *criminal*: "Any person who discloses information from the voter database in any manner not authorized by this section shall be guilty of a misdemeanor." RSA 654:45, VI.

So, New Hampshire's prohibition of SVRS disclosure in civil litigation cannot be severed from HAVA as if it were an idiosyncratic state-based procedural privilege:

> The requirements established by this title [52 U.S.C. §§ 21081 *et seq.*] are minimum requirements and nothing in this title shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this title so long as such State requirements are not inconsistent with the Federal requirements under this title or any law described in section 906 [52 U.S.C. § 21145].

52 U.S.C. § 21084. Nondisclosure of New Hampshire's SVRS is an integral part of the federal statutory scheme to secure voting rights, protect election integrity, defend voter privacy, and safeguard ballot confidentiality.

### D. The Court's Rules of Procedure and Evidence, if They Conflict with HAVA and New Hampshire Law, Must Yield to HAVA's Statutory Scheme

Plaintiffs ask the Court to order disclosure of the SVRS pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, but the Court cannot grant Plaintiffs' requested relief. The Court's rules of procedure and evidence must yield to HAVA's prevailing statutory scheme and the substantive rights Congress conferred upon New Hampshire through HAVA. The Federal Rules carry the weight and supremacy of federal law because the Supreme Court promulgated the Rules pursuant to the Rules Enabling Act. *See* 28 U.S.C. § 2072(a). The Federal Rules may not, however, "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). So, the "federal rules cannot displace a State's definition of its own rights or remedies." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010) (Stevens, J., concurring) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13-14 (1941)).

For the reasons stated above, HAVA authorized New Hampshire to define its rights regarding SVRS disclosure, and HAVA's statutory scheme carves out an exception to the Rule 26(b)(1)'s disclosure requirements, *if* federal and state law conflict with Rule 26(b)(1). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 401 (2010) ("Congress

9

… has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit—either by directly amending the rule or by enacting a separate statute overriding it in certain instances."). In other words, in the context of this lawsuit, Rule 26(b)(1) does not "really regulate procedure[.]" *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (cleaned up). HAVA's requirements of privacy, confidentiality, and security, as implemented by RSA 654:45, VI, is a rule of decision that controls over the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1652.

## II. The Help America Vote Act and New Hampshire Law Notwithstanding, the Statewide Voter Registration System Is Critical Infrastructure that Cannot Be Disclosed to Third Parties

State and local election infrastructure is a subsector of the government facilities infrastructure. U.S. Dep't of Homeland Security, Statement by Sec. Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector (Jan. 6, 2017) ("DHS CI Designation").[2] "Critical infrastructure" is:

> a DHS designation established by the Patriot Act and given to systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters. Election systems meet this definition and must be secured to safeguard our Nation's democratic process.

DHS Cybersecurity Services Catalog for Election Infrastructure at 3 (quotations omitted).[3] The SVRS is critical infrastructure. *See id.* The Secretary cannot satisfy his obligation to protect critical election infrastructure from cybersecurity threats if the SVRS is disclosed to third parties.

---

[2] Available at https://www.dhs.gov/archive/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical.

[3] Available at https://www.eac.gov/sites/default/files/eac_assets/1/6/DHS_Cybersecurity_Services_Catalog_for_Election_Infrastructure.pdf

10

Disclosure would frustrate the purpose of the Homeland Security Act and the work of the Cybersecurity & Infrastructure Security Agency. *See* 6 U.S.C. § 481(b); 6 U.S.C. § 652(e).

**III.   Alternatively, the Federal Rules of Civil Procedure Prohibit Disclosure of New Hampshire's Statewide Voter Registration System**

Even were this Court to conclude that the Federal Rules govern over New Hampshire's implementation of HAVA's computerized statewide voter registration list, Plaintiffs' request exceeds the permissible scope of discovery. The Federal Rules do not permit production of the SVRS for at least three reasons. First, the SVRS exceeds the permissible scope of discovery because it is irrelevant to claims or defenses. Second, even if the SVRS were relevant to claims or defenses, disclosure is not proportionate to the needs of the parties in this case, as production burdens on time and human and financial resources would substantially outweigh any likely benefit. Third, even if Plaintiffs were able to identify some information in the SVRS that is relevant, discoverable, and proportionate to the needs of the parties, Defendants should be allowed to produce that information in an alternative manner without providing the Plaintiffs access to the entire secure and confidential SVRS.

**A.   The Statewide Voter Registration System Does Not Contain Data Relevant to Claims or Defenses**

Plaintiffs assert three justifications for demanding production of the SVRS on relevancy grounds, but these reasons either misconstrue that which they must prove to prevail at trial, or Plaintiffs misunderstand the data maintained by the SVRS. First, Plaintiffs assert that the database:

> will aid Plaintiffs in presenting a complete picture (with data) demonstrating the degree to which individuals who participated in New Hampshire elections prior to HB 1569 would have been impacted by HB 1569 had it been in effect in prior elections, and those who have been burdened by HB 1569 since its effective date on November 11, 2024.

ECF No. 60 at 4-5.  Such information is demonstrably irrelevant.  At the merits stage, the Court will weigh the character and magnitude of the purported injuries caused by the repeal of the Qualified Voter and Challenged Voter Affidavits ("QVA" and "CVA") to the Plaintiffs, themselves.  *See* ECF No. 1 at ¶¶ 92-122.  This is not a class action—the only relevant burden to weigh against the state's interest is the burden experienced by each individual Plaintiff.

Also, the SVRS does not indicate the "degree" to which prior registering voters "***would have been*** impacted by HB 1569" because it does not record whether a registrant would have been equally as willing to provide reasonable documentation of his or her citizenship with his or her application.  It only reflects raw numbers.  Regardless, the SVRS is both overinclusive and underinclusive of this data.  It is overinclusive because, in addition to QVA and CVA data, it has private information such as names, addresses, birthdates, unique voter identifier numbers, birth towns and states, naturalization courts and cities, absentee information, last four Social Security numbers, voter telephone numbers and e-mail addresses, election histories, and more.  It is underinclusive because CVA data indicates whether a voter used a CVA to assert his or her qualifications to vote, but it does not specifically indicate citizenship.  And although QVA data should include information regarding whether a voter used a QVA to prove citizenship, that data is dependent upon a local election official's proper use of a database field.  So, even if it were relevant (which it is not), the SVRS will not "assist Plaintiffs in identifying those who, before HB 1569 went into effect, used the Qualified Voter Affidavit process to establish citizenship when they registered to vote[.]"  *Contra* ECF No. 60 at 5.

Second, Plaintiffs assert that the "database is also critical to establishing the burdens that have been imposed on voters since HB 1569 became effective on November 11, 2024." *Id.* Plaintiffs are seeking information regarding whether any qualified voter who attempted to

register to vote in the March elections did not register because the voter lacked reasonable documentation of citizenship.  *Id.* at 5-6.  The SVRS will not contain this information, as it only contains data related to qualified registered voters.

Third, Plaintiffs assert that the "database will also help Plaintiffs and this Court evaluate the degree to which Challenged Voter Affidavits were used before HB 1569's enactment." *Id.* at 6.  Again, the degree to which CVAs were used by those who are not Plaintiffs in this case is irrelevant because only the degree to which HB 1569 burdens the ***Plaintiffs*** is relevant to claims and defenses.  *See* ECF No. 1 at ¶¶ 100-122.  Regardless (and contrary to Plaintiffs' argument), the SVRS is not "critical to evaluate the extent to which Challenged Voter Affidavits have been used in the past[.]"  ECF No. 60 at 6.  If Plaintiffs can demonstrate a need and relevance for raw numbers, the proper vehicle is an interrogatory, not an overinclusive request for production of the entire database, which collects significantly more data than just affidavit use.

      **B.**    **Production of the Entire Statewide Voter Registration Database and Its Legacy System Is Not Proportionate to the Needs of this Case**

Even to the extent that some data maintained in the SVRS might relate to claims or defenses, New Hampshire's SVRS contains private information that cannot be disclosed to Plaintiffs.  Access to the system is carefully circumscribed by statute and state agency practice to ensure the confidentiality of private data and the cybersecurity of the voting system.  Third party access unnecessarily jeopardizes system integrity.  A protective order is helpful and reduces risk, but it does not sufficiently mitigate the risk inherent in allowing non-governmental access.  The menace of hackers, malware, and ransomware are very real, and they are not deterred by protective orders.  Moreover, production of the database prior to 2024 would require production of New Hampshire's legacy system, ElectioNet.  It will take time to produce these databases, and

this case does not have the luxury of time. Accordingly, producing these databases is not proportional to the needs of this case as these burdens outweigh an unlikely marginal benefit.

### C. Interrogatory Responses, Not Database Production, Is the Proper Vehicle Through Which to Provide Plaintiffs with the Information They Seek

If the SVRS contains discoverable data within the scope of the Federal Rules, the Court should limit discovery to sources that are more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs justify compelled SVRS disclosure because they want to know how many people used affidavits prior to HB 1569. *See* ECF No. 60 at 3-4. This is duplicative, in whole or in part, of Plaintiffs' Interrogatory Nos. 1 (number of QVAs), 2 (number of disqualified registrants who used QVAs), 4 (number of CVAs), and 5 (number of disqualified voters who used CVAs). Subject to Defendants' objections, Defendants have provided initial responses and will supplement those responses when appropriate and available. Accordingly, the Court should deny the Motion to Compel as duplicative and unnecessarily burdensome.

### REQUEST FOR A HEARING

For the foregoing reasons, New Hampshire's Statewide Voter Registration System cannot be produced to third parties under any circumstance. The United States Department of Homeland Security has designated election infrastructure as a subsector of existing government facilities critical infrastructure. DHS CI Designation. Critical election infrastructure includes:

> storage facilities, polling places, and centralized vote tabulations locations used to support the election process, and information and communications technology to include voter registration databases, voting machines, and other systems to manage the election process and report and display results on behalf of state and local governments.

*Id.* Critical election infrastructure is a priority within the National Infrastructure Protection Plan, and state and local governments are required to cooperate with Homeland Security to ensure the system's cybersecurity. *Id.* Defendants respectfully request an evidentiary hearing regarding the

SVRS as critical election infrastructure.[4] An evidentiary hearing will enable Defendants to explore precisely what information Plaintiffs seek and why they seek it, and Defendants will offer Secretary Scanlan's testimony regarding the state's obligation to resist disclosure of this critical infrastructure.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel. Defendants have attached the Secretary of State's and the Elections Director's affidavits to support Defendants' hearing request and to verify the accuracy of the foregoing information regarding SVRS data.

                                                                             Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date:  April 28, 2025           /s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

---

[4] Due to the highly sensitive nature of the testimony that could be presented at a hearing, Defendants reserve the right to ask the Court to close the hearing (or portions of it) to the public if necessary.

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

                                          /s/ Michael P. DeGrandis
                                          Michael P. DeGrandis