UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Coalition for Open Democracy et al.</u>

    v.                                                  Case No. 24-cv-312-SE
                                                                Opinion No. 2025 DNH 066

<u>David Scanlan et al.</u>

<u>MEMORANDUM ORDER</u>

       Several organizations and individuals bring suit against the New Hampshire Secretary of State and the New Hampshire Attorney General seeking a declaratory judgment that 2024 New Hampshire House Bill 1569's (HB 1569) provisions violate their rights under the United States Constitution and requesting injunctive relief barring state officials from implementing those provisions. At issue here is the plaintiffs' motion to compel the defendants to produce a copy of the New Hampshire statewide voter database and all documents concerning the use of the database, including instruction manuals or other guides relating to the data fields contained in the database and their correct interpretation. Doc. no. 60. The defendants object. The court held a number of conferences on the issue and also offered the parties oral argument and an evidentiary hearing, which all declined. At a conference on May 20, 2025, the court explained that it was granting the motion to compel, ordering the defendants to produce the requested information on or before May 27, 2025, and would be issuing this memorandum order at a later date explaining its legal reasoning. On May 23, 2025, the defendants moved for an extension of time to comply. The court will address that motion in a separate order.

<u>Standard of Review</u>

       Under the federal rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. P. 26(b)(1). After providing notice and making the necessary effort to resolve the discovery issue, a party may move to compel another party to produce requested information or documents. Fed. R. Civ. P. 37(a)(1) & 37(a)(3)(B). "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." Abiomed, Inc. v. Enmodes GmbH, No. CV 23-10087-DJC, 2024 WL 4626240, at *2 (D. Mass. Oct. 30, 2024). Once that showing is made, the opposing party bears the burden of showing that the requested production is improper. de Laire v. Voris, No. 21-CV-131-JD, 2021 WL 6883274, at *1 (D.N.H. Nov. 29, 2021).

Background

On September 12, 2024, then-New Hampshire Governor Chris Sununu signed into law HB 1569. The law went into effect on November 11, 2024. HB 1569 made several changes to New Hampshire's voter registration and identification requirements that the plaintiffs allege violate their rights under the United States Constitution.

Specifically, before HB 1569 became effective, a prospective voter could register to vote on Election Day by establishing her citizenship, identity, and age, either by presenting documentary evidence or, if she did not possess the necessary documentation, by executing at her polling location what is commonly known as the Qualified Voter Affidavit. Voters who submitted the Qualified Voter Affidavit attested to their qualifications under penalty of voter fraud and perjury. HB 1569 eliminated the Qualified Voter Affidavit. Count I alleges that HB 1569's elimination of the Qualified Voter Affidavit constitutes an unjustifiable burden on the right to vote in violation of the Fourteenth Amendment.

The plaintiffs also contest the constitutionality of HB 1569's elimination of the Challenged Voter Affidavit. Under New Hampshire law, if a voter challenges the qualifications

of any other voter registered in the town or ward in which the election is held, see New Hampshire Revised Statute Annotated (RSA) § 666:4, the moderator must determine if it is "more likely than not" that the challenge to the voter's qualifications is "well grounded," RSA 659:27. Before HB 1569 became effective, if the moderator determined that the challenge was more likely than not well grounded, the prospective voter could cast an eligible ballot through a Challenged Voter Affidavit, sworn under the penalties of voter fraud and perjury. HB 1569 eliminated the right to vote by Challenged Voter Affidavit. Instead, if the moderator deems the challenge more likely than not well grounded, the prospective voter cannot cast a vote unless the moderator's decision is overruled by a New Hampshire Superior Court. Count II alleges that HB 1569's elimination of the Challenged Voter Affidavit constitutes an unjustifiable burden on the right to vote, Count III alleges that it violates the plaintiffs' right to procedural due process, and Count IV alleges that it violates their right to equal protection under the law.

Discussion

In the plaintiffs' second request for the production of documents, they requested: "A copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."[1] Doc. no. 60 at 2. The defendants objected, stating

> "The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained

---

[1] Although the plaintiffs quote their second request for production and the defendants' response thereto, they do not include a copy of either document with their motion to compel. Because the defendants do not dispute the plaintiffs' representation as to the content of the request for production or the defendants' response thereto, the court accepts that the plaintiffs' description is accurate.

>therein be disclosed pursuant to a subpoena or civil litigation discovery request."
>RSA 654:45, VI. The parties have already met and conferred regarding this
>Request, Defendants have declined to produce responsive records, and the Court
>is expecting Plaintiffs to file a motion to compel production of the SVRS.[2]

Id. at 3. They further responded that "[n]either the Secretary's nor Attorney General's Offices has the statutory authority to produce the SVRS. Indeed, they have a statutory obligation to resist production of the database." Id. The plaintiffs now move for an order compelling the defendants to produce a copy of the SVRS and all documents concerning the use of the database.

I. Relevancy

The plaintiffs bear the initial burden of showing that the requested discovery is relevant. They argue that the SVRS and accompanying documents are relevant because they will aid the plaintiffs in demonstrating HB1569's unconstitutional burden on the right to vote by illustrating the character and magnitude of the injury caused by the law. The information in the database will establish how individuals who participated in New Hampshire elections prior to HB 1569's effective date may have been affected by the law had it been in effect during past election cycles, and how those voters may have been burdened by the law since it went into effect. Specifically, they assert that the database will help them identify voters who used a Qualified Voter Affidavit to establish citizenship to register to vote before HB 1569 went into effect and will help them determine the extent to which voters have used Challenged Voter Affidavits in the past. They add that the database will provide essential information about burdens on voters since November 1, 2024, confirming or dispelling news reports about voters turned away from polls as a result of the implementation of HB 1569. They contend that this information is relevant to their claims

---

[2] The defendants use "SVRS" as shorthand for New Hampshire's Statewide Voter Registration System, the database that is the subject of the plaintiffs' motion to compel. For ease of reference, the court will use that acronym for the remainder of the order.

because it will show how many voters will be and have been affected by HB 1569 and the burden it places on the right to vote.

In their objection, the defendants argue that the SVRS and accompanying documents are not relevant to any claim or defense in this case. They assert that the plaintiffs' claims are limited to how the elimination of the affidavits affects them individually, not voters generally. They further contend broadly that the database would not provide the information that the plaintiffs seek.

As a preliminary matter, the defendants have waived their relevance argument because they did not object to the plaintiffs' second request for production of documents on relevancy grounds. See doc. no. 60 at 3; see, e.g., Katz v. Liberty Power Corp., LLC, No. 18-CV-10506-ADB, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) ("Further, any objection that the Defendants did not raise in their initial response is deemed waived.").

Even if the court considered the defendants' relevancy objections, they would not carry the day. Where, as here, the plaintiffs challenge a statute for placing an unconstitutional burden on the right to vote, the court is not limited to the burden placed on the named plaintiffs. See Common Cause R.I. v. Gorbea, 970 F.3d 11, 14–15 (1st Cir. 2020) (looking to burdens placed on voters generally as opposed to plaintiff parties specifically); Fish v. Schwab, 957 F.3d 1105, 1127 (10th Cir. 2020) (same in the context of requiring documentary proof of citizenship). Even if it were so limited, at least one of the named plaintiffs, Coalition for Open Democracy, is an organization that seeks to encourage participation in elections through voter education and services, including voter registration and poll observing. Therefore, discovery related to the direct effects of the elimination of the affidavits would still include the SVRS and accompanying documents.

Defendants' other relevancy arguments are likewise unpersuasive. The defendants essentially contend that information that would shed light on whether HB 1569 affects voters' ability to participate in elections is not relevant to the plaintiffs' claims that HB 1569 unconstitutionally hinders voters' ability to participate in elections. Generously construed, the defendants argue that the information is not relevant because it would not be sufficient on its own to carry the day for the plaintiffs. This is not the test for relevance. Because the plaintiffs have carried their burden to establish that the requested discovery is relevant, the court will turn to the defendants' arguments that production would be improper.

II.     The Defendants' Objections

Initially, the defendants request that the court defer its ruling on the plaintiffs' motion to compel until it issues its ruling on the defendants' pending motion to dismiss. Because an order on the motion is forthcoming and at least certain plaintiffs and claims will survive the defendants' motion, and in light of the plaintiffs' request for expedited treatment under Local Rule 7.1(f) due to upcoming expert disclosure deadlines, the court will rule on the plaintiffs' motion to compel before issuing a ruling on the motion to dismiss.

The defendants argue that disclosure of the database and accompanying documents is improper for three reasons. First, the New Hampshire legislature has decided to prohibit disclosure in exercise of its legislative power under the cooperative federalism required by the Help America Vote Act (HAVA), Pub. L. No. 107-252, 116 Stat. 1668 (codified as amended at 52 U.S.C. §§ 20901-21145). Second, even if HAVA does not prevent disclosure, the SVRS is critical infrastructure that cannot be disclosed to third parties. And third, the Federal Rules of Civil Procedure prohibit disclosure of the SVRS. The court addresses each of these arguments in turn.

      A.      HAVA and Cooperative Federalism

HAVA requires each state to maintain, "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A). Under HAVA, "[t]he computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State," shall "contain[ ] the name and registration information of every legally registered voter in the State," and "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." Id., § 21083(a)(1)(A)(i), (ii), (viii).

HAVA also has several other provisions, two of which are relevant to the defendants' arguments in this case. First, it requires states to "provide adequate technological security measures to prevent the unauthorized access to the computerized list" of voters. Id., § 21083(a)(3). Second, it provides that the "specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State." Id., § 21085.

New Hampshire implemented HAVA's requirements through RSA 654:45, which authorizes the secretary of state to establish and maintain a statewide centralized voter registration database. That statute further provides: "The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request." RSA 654:45, VI.

Although the language of RSA 654:45, VI prohibits disclosure of the SVRS in response to a civil litigation discovery request, the defendants do not contend that the statute, standing

7

alone, prohibits disclosure of the database to the plaintiffs in this case. As the plaintiffs point out in their motion, doc. no. 60 at 6-7, federal courts in this district and others have consistently held that state law privileges must cede to federal civil discovery rules, e.g., Moses v. Mele, 10-cv-253-PB, 2011 WL 2174029, at *5 (D.N.H. June 1, 2011); G.K. v. Sununu, 21-cv-4-PB, 2021 WL 6932204, at *3 (D.N.H. Dec. 30, 2021). Instead, the defendants argue that RSA 654:45, VI is unique and prohibits disclosure of the database in this case specifically because it is part of HAVA's "cooperative federalism statutory scheme." Doc. no. 70 at 4.

The defendants' argument is a red herring. "[C]ooperative federalism 'best describes those instances in which a federal statute provides for state regulation or implementation to achieve federally proscribed policy goals.'" Massachusetts ex rel. Exec. Off. of Health & Hum. Servs. v. Sebelius, 701 F. Supp. 2d 182, 192 (D. Mass. 2010) (quoting Philip J. Weiser, Towards a Constitutional Architecture for Cooperative Federalism, 79 N.C.L.Rev. 663, 668 (2001)). Defendants appear to argue that HAVA's embodiment of cooperative federalism imbues RSA 654:45, VI with enough federal character that it displaces the general understanding that "[s]tate statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions." G.K., 2021 WL 6932204, at *3 (quotation omitted); see 8 Wright & Miller, Fed. Prac. & Proc. § 2016 ("Ordinarily, however, only federal provisions [related to privilege] apply with respect to a federal claim."). But they cite no authority supporting this theory. Here, HAVA delegates state regulation and implementation of federal policy goals related to voting but not related to civil discovery. The defendants do not explain how Congress's direction to New Hampshire to implement a statutory scheme related to voting absolves the state of its discovery obligations in federal court. Nor do they cite any caselaw that supports that proposition.

8

Indeed, the primary case on which the defendants rely, Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010), deals with the interplay between state procedural rules and the Federal Rules of Civil Procedure in a case based on diversity jurisdiction. In it, the Supreme Court held that the plaintiffs could maintain a class action notwithstanding New York's law barring it because the prohibition was procedural and not substantive. It is even clearer that requiring production of the SVRS in this case would not alter the substantive rights of the parties. Moreover, the defendants' legal argument is particularly weak here, where they seek to avoid their discovery obligations in a case in which the plaintiffs assert federal constitutional claims. And, while the defendants correctly note that the Shady Grove majority highlights Congress's ability to enact a separate statute overriding a Federal Rule of Civil Procedure, the defendants offer no support for their contention that Congress's directive to "provide adequate technological security measures" or New Hampshire's RSA 654:45, VI is a decision of Congress sufficient to override the rules of civil procedure. In short, cooperative federalism does not release the defendants from complying with their discovery obligations in this case.

B.  Critical Infrastructure

"Critical infrastructure is defined as systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." Curling v. Kemp, 334 F. Supp. 3d 1303, 1311 n.9 (N.D. Ga. 2018) (quoting 42 U.S.C. § 5195c(e)), aff'd in part, appeal dismissed in part sub nom. Curling v.

Sec'y of Georgia, 761 F. App'x 927 (11th Cir. 2019). On January 6, 2017, the Secretary of the Department of Homeland Security designated election systems as critical infrastructure.[3]

The defendants argue that they cannot produce the database in discovery in this case because the Secretary "cannot satisfy his obligation to protect critical election infrastructure from cybersecurity threats if the SVRS is disclosed to third parties." Doc. no. 70 at 10. They offer no support for that statement, and they point to no caselaw supporting the notion that the designation of election systems as critical infrastructure absolves them of their discovery obligations in a case in federal court. That contention is especially undermined in this case, where the plaintiffs are willing to enter into a strict protective order and the defendants previously produced the SVRS, or an older legacy system, in discovery in a case in this court after DHS designated election systems as critical infrastructure to plaintiffs represented by the same attorneys who have appeared in this case. See Casey et al. v. N.H. Sec'y of State et al., No. 19-cv-149 (D.N.H. 2019) (doc. no. 52).[4] The defendants do not contend that there have been any cybersecurity or other threats to the SVRS associated with their disclosure of the database in that prior case. Therefore, DHS's designation of election systems as critical infrastructure does not shield the SVRS from discovery in this case.[5]

---

[3] U.S. Dep't of Homeland Security, Statement by Sec. Jeh Johnson on the Designation of Election Infrastructure as a Critical Infrastructure Subsector (Jan. 6, 2017), https://www.dhs.gov/archive/news/2017/01/06/statement-secretary-johnson-designation-election-infrastructure-critical (last visited May 27, 2025).

[4] The defendants in Casey preserved their right to object to disclosing the database information in future litigation.

[5] The defendants have also raised concerns about criminal liability pursuant to RSA 654:45, VI. The court does not find this threat credible in light of this order and because the SVRS or prior voting databases have been disclosed voluntarily in prior federal litigation, subject to protective orders, with no adverse criminal consequences.

### C.     Federal Rules of Civil Procedure

The defendants contend that the plaintiffs' request for the SVRS exceeds the permissible scope of discovery. They argue that disclosure is not proportionate to the needs of the parties in this case because the burden on the defendants to produce the SVRS substantially outweighs the likely benefit to the plaintiffs. In addition, the defendants contend that they should be allowed to produce the information that the plaintiffs seek in an alternative manner without providing the plaintiffs with access to the entire SVRS.[6]

The defendants' representations as to the burden of production focus largely on their concerns regarding confidentiality and cybersecurity, which the court has already addressed. They further state that it will take time to produce the SVRS and a necessary legacy system, ElectioNet. These arguments do not demonstrate that the burden and expense of producing the SVRS outweigh its likely benefit to the plaintiffs. That is particularly the case here where the plaintiffs assert that the defendants have not timely responded to other discovery requests and because the plaintiffs' immediate need for a copy of the SVRS is critical for them to comply with deadlines related to their experts.

The defendants also contend that the plaintiffs have propounded interrogatories regarding voters' use of the affidavits, to which the defendants have responded in part. They argue that, therefore, production of the SVRS is duplicative and unnecessarily burdensome. The problem for the defendants is that the plaintiffs contend that the defendants have not responded properly to their interrogatories. The court understands that the defendants have recently provided additional responses. There is nothing in the record, however, to suggest that these additional responses

---

[6] The defendants also argue that the request exceeds the permissible scope of discovery because the SVRS is irrelevant to any claims or defenses in this case. The court has already addressed and rejected that argument above.

obviate the need for the production requested in this motion or render it disproportionate to the needs of the case. Therefore, the defendants have not shown that the plaintiffs can obtain the same information in less burdensome ways. And, if anything, given the representations that the defendants have made about their limited resources and manpower, it is more efficient for the plaintiffs' experts to review the SVRS and identify the information they need rather than for the defendants to attempt to search the database and respond to the plaintiffs' interrogatories.

<u>Conclusion</u>

For the foregoing reasons, the court granted the plaintiffs' motion to compel (doc. no. 60) on May 20, 2025.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

May 27, 2025

cc: Counsel of Record