UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coalition for Open Democracy, League of Women Voters of New Hampshire, The Forward Foundation, McKenzie Nykamp Taylor, December Rust, Miles Borne, by his next friend Steven Borne, Alexander Muirhead, by his next friend Russell Muirhead, and Lila Muirhead, by her next friend Russell Muirhead, <br><br> Plaintiffs, <br><br> vs. <br><br> David M. Scanlan, in his official capacity as New Hampshire Secretary of State, and John Formella, in his official capacity as New Hampshire Attorney General, <br><br> Defendants. | Civil Action No. 1:24-cv-00312 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER THE ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THE SVRS**

**INTRODUCTION**

The standard for obtaining the "extraordinary remedy" of reconsideration of a court order is an exceptionally high bar, requiring the movant to produce "newly discovered evidence (not previously available) [that] has come to light" or demonstrate a "manifest error of law." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). Defendants fail to do so, raising only trivial disagreements with the Court's well-reasoned order. For instance, even if Defendants had not waived their relevance arguments—which they did—they do not ask the Court to reconsider its rejection of those arguments on the merits. Similarly, they complain that a protective order in prior litigation reserved their future rights to oppose disclosure of the Statewide Voter Registration System ("SVRS"), but this Court did not find estoppel of any kind; rather, it expressly recognized that reservation of rights but nevertheless rejected the substance of Defendants' arguments. Further, their re-litigation of declarations already provided to and deemed insufficient by the Court is inconsequential and meritless.

Defendants continue to evade compliance with a Court order. The Court should deny the motion for reconsideration and order appropriate relief to limit further obstructions.

**PROCEDURAL HISTORY**

On February 25, 2025, Plaintiffs sent Defendants their Second Requests for Production of Documents ("RFPs"), with a single request related to the SVRS. On March 12, 2025, Defendants sent Plaintiffs their combined Responses & Objections to Plaintiffs' First & Second RFPs, declining to produce the SVRS and related records, stating only that Defendants lacked the statutory authority to produce the SVRS under RSA § 654:45, VI.

Unable to reach a resolution, on March 27, 2025, Plaintiffs filed a motion to compel the SVRS and related documents. ECF No. 60. After obtaining an extension from the Court, on April 28, 2025, Defendants filed their amended Objection to the Motion to Compel, ECF No. 70, along

1

with affidavits from Defendant Secretary of State David Scanlan and Elections Director Patricia Piecuch.  ECF Nos. 70-1 ("Scanlan Aff.") & 70-2 ("Piecuch Aff.").

On May 5, 2025, the Court set a hearing for the Motion to Compel for May 12.  Defendants moved to continue the hearing for approximately one month.  ECF No. 71.  While Plaintiffs consented to a brief continuance to accommodate counsel's schedule, they objected to any continuance beyond the week of May 12.  *Id*.  On May 9, 2025, the Court held a status conference, where it informed the parties that it did not need a hearing unless either party believed it was necessary; both parties declined to insist on a hearing.  *See* Min. Entry (May 9, 2025).

On May 20, 2025, the Court held another status conference on the motion to compel and orally granted Plaintiffs' Motion to Compel, informing the parties that a written order would follow.  *See* Min. Entry (May 20, 2025).  The Court entered an Endorsed Order on the same day granting the Motion to Compel and ordering Defendants to produce the compelled discovery to the Plaintiffs on or before May 27, 2025.  May 20, 2025 Endorsed Order.

Three days later, on May 23, 2025, Defendants sought to continue their obligations under the court's Order indefinitely, stating that production within the ordered timeline was impossible due to technical complexities.  ECF No. 73 at 2.  On May 27, 2025, Plaintiffs objected to an indefinite continuance, noting the exceptionally compressed expert disclosure and trial schedule and Defendants' unexplained, self-inflicted delays.  ECF No. 74 at 1–2.

On May 27, 2025, the Court published its written Memorandum Order granting the Motion to Compel and reaffirming that Defendants were ordered to "produce the requested information on or before May 27, 2025."  Mem. Order, ECF No. 75 at 1, 5 (May 27, 2025).

Defendants failed to produce the compelled documents by May 27, in direct violation of the Court's order.

The Court held another status conference on May 29, 2025, affording the parties an opportunity to voice their positions on the status of the compelled production, the status of a protective order, and other negotiations between the parties. The Court then entered an Endorsed Order directing the parties to file a joint status report on or before June 3, 2025 to include the status of the proposed protective order and defendants' production. May 29, 2025 Endorsed Order. The Court further ordered that, "[f]or every day after May 27, 2025, that the defendants do not comply fully with the court's order granting the plaintiffs' motion to compel, the plaintiffs' expert report deadline is extended for a commensurate amount of time." Id.[1]

Throughout this time, Plaintiffs have engaged in expedited, good-faith efforts to resolve the dispute, despite Defendants' continued non-compliance with the Court's Order. Plaintiffs' sole goal is to obtain relevant discovery to which they are entitled as quickly as possible and through any means feasible to effectively prosecute their case. Recently, on June 2, 2025, the parties met with the CEO of ReFrame Solutions, New Hampshire's SVRS vendor. In that meeting, the vendor's CEO represented that once he is given the field names of the data he must pull, he can provide .csv files of the relevant contents of the SVRS within three days. Despite the Court's Order, Defendants have refused to provide Plaintiffs with any field names, offering only summaries of the data. Thus, it is Plaintiffs' understanding that absent Defendants' persistent efforts to negotiate production of something less than what the Court has compelled, there is no technological bar to the state's vendor providing Plaintiffs with relevant contents of the database in usable form within a few days.

---

[1] At the time of this filing, Defendant are still not in compliance with the Court's order on the motion to compel. Accordingly, an additional ten days—and counting—have been added to Plaintiff's initial June 18, 2025 expert report deadline.

On June 3, 2025, the Parties filed their status report, indicating that Defendants had not yet produced any further discovery.  ECF No. 76 ¶ 5.  Plaintiffs reiterated their position that "the Defendants have been in non-compliance with the Court's order on the Motion to Compel since May 27, 2025."  *Id.* ¶ 3.  The status report further explained that the parties had not yet agreed to the terms of a protective order, a draft of which was at that time with Defendants for their consideration.[2]

On June 3, 2025, Defendants filed the pending motion for reconsideration of the Court's Orders granting the Motion to Compel.

## STANDARD OF REVIEW

"[A] motion for reconsideration may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."  *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007); *see* L.R. 7.2(d) ("A motion to reconsider an interlocutory order of the court . . . shall demonstrate that the order was based on a manifest error of fact or law . . . .").  "Reconsideration is not 'a vehicle for a party to undo its own procedural failures' or a means to 'advance arguments that could and should have been presented to the district court prior to' its decision."  *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, No. 17-cv-747-LM, 2019 WL 1745635 at *1 (D.N.H. Apr. 18, 2019) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 104 (1st Cir. 2006)).  "As such, the court will not grant reconsideration based on arguments that were not previously made or based on arguments that were rejected in the prior order."  *Id.* (citing *Bitcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014)); *see also* Mot. to Reconsider, ECF No. 77 at 3 (conceding that "[r]econsideration

---

[2] The Parties have not reached agreement on a Protective Order yet, despite good faith negotiations.  However, the guided visit proceeded as planned the morning of Friday, June 6 under a separately negotiated nondisclosure agreement.

4

of an order 'is an extraordinary remedy which should be used sparingly,'" and "'is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." (citations omitted)).

## ARGUMENT

Defendants raise three arguments in support of their motion: (1) the Court "misapprehended the facts" when holding that "the defendants have waived their relevance argument," Mot. to Reconsider at 4; (2) the Court "misapprehended the legal significance of Defendants' actions" when they voluntarily produced the SVRS in prior litigation, *id.* at 6; and (3) the Court "misapprehends the uncontroverted facts about the threat from cyberattacks," *id.* at 8.

These arguments fail on their merits and, crucially, Defendants raise neither "newly discovered evidence" nor a "manifest error of law" that might justify the "extraordinary remedy" they seek. *Palmer*, 465 F.3d at 30.

### I. Defendants' re-litigation of the waiver of their relevance argument is both misguided and insufficient to grant reconsideration.

In their objection to the motion to compel, Defendants argued that "[t]he Statewide Voter Registration System does not contain data relevant to claims or defenses," relying on an erroneous belief that "the only relevant burden to weigh against the state's interest is the burden experienced by each individual Plaintiff." Defs.' Am. Obj. to Mot. to Compel ("Obj."), ECF No. 70 at 11–13. But the Court rejected this argument, holding, *inter alia*, that "the defendants have waived their relevance argument because they did not object to the plaintiffs' second request for production of documents on relevancy grounds." Mem. Order at 5. Defendants seek reconsideration of the Court's finding that they waived their relevancy argument. Mot. to Reconsider at 4–6. This attempt fails for at least four reasons.

*First*, even assuming Defendants were correct about waiver, it would not matter. The Court

independently held that "[e]ven if the court considered the defendants' relevancy objections, they would not carry the day" because "the court is not limited to the burden placed on the named plaintiffs" under well-settled precedent. Mem. Order at 5. Moreover, "[e]ven if [the Court] were so limited, at least one of the named plaintiffs, Coalition for Open Democracy, is an organization that seeks to encourage participation in elections through voter education and services, including voter registration and poll observing." *Id.* Therefore, "discovery related to the direct effects of the elimination of the affidavits would still include the SVRS and accompanying documents." *Id.* Defendants do not seek reconsideration of this aspect of the Court's order, nor could they. *See, e.g.*, *D'Pergo Custom Guitars*, 2019 WL 1745635, at *1 ("[T]he court will not grant reconsideration . . . based on arguments that were rejected in the prior order.").

*Second*, Defendants' attempt to belatedly shoehorn the SVRS into their relevancy objections to narrower RFPs—a connection they have failed to draw until now—is not credible. Plaintiffs requested production of the SVRS in their second set of RFPs which included a single request for "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation." Defendants' response to that RFP in its entirety is as follows:

> **Defendants' Objections:** "The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request." RSA 654:45, VI. The parties have already met and conferred regarding this Request, Defendants have declined to produce responsive records, and the Court is expecting Plaintiffs to file a motion to compel production of the SVRS.
>
> **Defendants' Joint Response:** Neither the Secretary's nor Attorney General's Offices has the statutory authority to produce the SVRS. Indeed, they have a statutory obligation to resist production of the database.

*See* Defs.' Resps. & Objs. to Pls.'s Reqs. For Produc., ECF No. 77-1 at 18. The response contains

no objection based on the relevance of the SVRS to Plaintiffs' claims.

After an adverse ruling, Defendants seek to retroactively claim that a handful of responses objecting—without explanation—to the relevance of QVA and CVA usage, were in fact objections based on the relevance of the SVRS.[3] But these responses repeatedly claim that the Defendants are not the custodian of the requested discovery, even though the Secretary is indisputably the custodian of the SVRS. Further, when Defendants felt the SVRS may have been implicated by a request, they said so. For example, in response to RFP No. 12, seeking certain communications with and guidance to election officials, Defendants stated that "the Request may implicate disclosure of SVRS records, which is prohibited by law," but again failed to argue that any such records were not relevant. *See* Defs.' Resps. & Objs. to Pls.'s Reqs. For Produc. at 12 (instead arguing that the probative value is outweighed by the burden on Defendants). If Defendants believed the SVRS was irrelevant, they failed to say so in response to the second set of RFPs, despite expressly raising relevancy objections for several other requests in the first set of RFPs.

*Third*, even if the other relevance objections highlighted in this reconsideration motion could be construed as objections to the relevance of the entire SVRS, they were cursory objections devoid of any substance. For example, in response to RFP No. 5, Defendants merely offered the conclusory statement that CVAs "may not be relevant to Plaintiffs' challenge to the lawfulness of HB 1569." Mot. to Reconsider. at 5. Courts routinely find waiver when an objection to a discovery request is stated in conclusory fashion, as here. *See, e.g.*, *Bourne v. Town of Madison*, No. 05-cv-365-JD, 2007 WL 951552, at *3 (D.N.H. Mar. 27, 2007) (denying motion to reconsider order compelling discovery and holding that "boilerplate objections or blanket refusals . . . are

---

[3] Defendants' unexplained relevance objections to QVAs, CVAs, and related materials is independently misguided—this case exclusively challenges the removal of QVAs and CVAs.

insufficient to assert a privilege" (quoting *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (holding a relevance objection to RFPs "is really no objection at all" when "it does not address why potentially responsive documents are being withheld").

*Fourth*, even if the Court "lacked complete information regarding each response and objection that related to SVRS data," Mot. to Reconsider at 6, Defendants had many opportunities to provide that information before now. They could have made this argument and attached the full set of responses to their objection, which had several other exhibits; they could have raised it at the Court's May 9, 2025 conference when the Court inquired about the RFP asking for the SVRS; or they could have raised it at oral argument or an evidentiary hearing, which was "offered" by the Court and "declined" by Defendants, *see* Mem. Order at 1. That is, the issue "could and should have been presented to the district court prior to' its decision," but it was not. *D'Pergo Custom Guitars*, 2019 WL 1745635, at *1 (quoting *Iverson*, 452 F.3d at 104).

For these reasons, the Court should not reconsider its rejection of Defendants' relevance arguments.

## II. The Court's reference to Defendants' prior disclosure of the SVRS under similar circumstances is not ground for reconsideration.

Defendants argued in their objection that they cannot produce the database in discovery because the Secretary "cannot satisfy his obligation to protect critical election infrastructure from cybersecurity threats if the SVRS is disclosed to third parties." Obj. at 10. The Court rejected that argument, noting that "[t]hey offer no support for that statement, and they point to no caselaw supporting the notion that the designation of election systems as critical infrastructure absolves them of their discovery obligations in a case in federal court." Mem. Order at 10. The Court found "[t]hat contention is especially undermined in this case, where the plaintiffs are willing to enter

8

into a strict protective order and the defendants previously produced the SVRS, or an older legacy system, in discovery in a case in this court after DHS designated election systems as critical infrastructure to plaintiffs represented by the same attorneys who have appeared in this case." *Id.* at 10 (citing *Casey v. N.H. Sec'y of State*, No. 19-cv-149 (D.N.H. 2019) (Dkt. No. 52)).

Defendants now protest that the Court "misapprehended the legal significance of Defendants' actions" in *Casey*. Mot. to Reconsider at 6. This is a red herring. They complain that "the Court did not cite any authority supporting the proposition that the district court's *Casey* order somehow waived Defendants' rights in this case or that the *Casey* defendants' reservation did not apply here." *Id.* at 7. That is because the Court did no such thing; rather, it correctly concluded that, despite letting them raise such arguments, Defendants' recent willingness to produce a snapshot of the statewide database just years ago under a similar protective order to similarly situated plaintiffs undermines the credibility of their alarmism.[4] Defendants further gripe that "[t]he Court did not explain why *such a reservation* undermines Defendants' argument that cooperative federalism prohibits disclosure of the SVRS in this case." *Id.* (emphasis added). But again, the *reservation of rights* was not the issue; it is their recent disclosure of the statewide database under nearly identical circumstances that belies their argument today.[5]

---

[4] Defendants concede that the Court explicitly recognized and cited the Defendants' reservation of rights in the *Casey* protective order. *Id.* (citing Mem. Order at 10 & n.4).

[5] *Cf. Bourne*, 2007 WL 951552, at *4 (denying motion to reconsider based on argument that production "would be unduly burdensome because Bourne had already obtained these documents through discovery in the related state case," because it "hardly supports the defendants' argument," given that "if many of the requested documents have already been produced to Bourne in another case, it should not be difficult to undertake a second production"); *Burlington*, 408 F.3d at 1149 ("The claim that responding in a timely fashion would have been impossible or overly burdensome is hard to justify, especially because the record reveals . . . that many of the same documents were previously produced in a prior lawsuit.").

9

Thus, Defendants' argument is misguided on its merits and raises mere disagreements with the Courts' reasoning that are not cognizable on a motion for reconsideration. *See Palmer*, 465 F.3d at 30 (holding denial of reconsideration was proper when movant "did no more than reiterate the arguments she earlier had advanced, claiming somewhat counterintuitively that the district court had 'overlooked' her [argument]" when it in fact "had not overlooked that allegation but, rather, had found it wanting").

### III. Defendants' attempt to relitigate affidavits and arguments already presented and rejected are meritless and improper.

Defendants attached two affidavits to their Objection to the Motion to Compel, one from the Secretary of State and another from the Elections Director. *See* Scanlan Aff.; Piecuch Aff. The Court granted the Motion to Compel—despite these affidavits and Defendants' arguments about "confidentiality and cybersecurity"—concluding, *inter alia*, that "DHS's designation of election systems as critical infrastructure does not shield the SVRS from discovery in this case." Mem. Order at 10–11. Defendants now put forward those same affidavits and arguments again, insisting that the Court "misapprehends the uncontroverted facts about the threat from cyberattacks." Mot. to Reconsider at 8.

The "extraordinary remedy" of reconsideration is "not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer*, 465 F.3d at 30. Rather, "[t]o obtain relief" based on alleged factual misapprehension, "the movant must demonstrate [] that newly discovered evidence (not previously available) has come to light . . . ." *Id.* Defendants' attempt to rehash the contents of affidavits already provided to the Court is improper. *See, e.g.*, *Klonoski v. Mahlab*, 953 F. Supp. 425, 427, 431 n.4 (D.N.H. 1996)

10

(reaffirming order compelling discovery and emphasizing that "rather than prepare supplemental affidavits which might have clarified the factual bases for the asserted privileges, [defense counsel] chose simply to rely on the affidavits previously submitted," which the Court had already determined to be "insufficient"). If Defendants wished to further develop these arguments for the Court, they could have done so in their objection,[6] included more details in Secretary Scanlan's affidavit, or accepted the Court's offer for an evidentiary hearing.

In any event, in granting the Motion to Compel, the Court necessarily concluded the points they now re-raise were unpersuasive. For instance, Defendants reiterate that the Secretary's office has allegedly "been contacted by many voters who are concerned with the privacy of their voter records," *see* Mot. to Reconsider at 8 (quoting Scanlan Aff. ¶ 10), but they fail to note that Secretary Scanlan stated this in the context of "public discourse" about how "[s]tate law makes the checklist data, the name, domicile address, mailing address, town or city, and party affiliation, if any, of registered voters, public information," Scanlan Aff. ¶ 10; *see* RSA § 654:31.II ("[A]ny person may view the data that would be available on the public checklist, as corrected by the supervisors of the checklist, on the statewide centralized voter registration database maintained by the secretary of state . . . .").[7] The frustration of some voters with the *state's* publication of their

---

[6] Notably, Defendants declined to cite or reference these affidavits *anywhere* in the body of their objection, apart from stating in the conclusion that they were attached separately.

[7] State law also requires the Secretary to sell to any "political party" "a list of the name, domicile address, mailing address, town or city, voter history, and party affiliation, if any, of every registered voter in the state." RSA § 654:31.IV. The state has profited by "more than $1.1 million in the past decade" from selling voter information, and Secretary Scanlan has taken a different tone when defending his office's sales of sensitive personal data, stating, "If you're going to participate in an election, the other voters that are participating have a right to know who is participating in the election." Charlotte Matherly, *New Hampshire sells voter data to political candidates and parties. What happens to it?*, CONCORD MONITOR (Oct. 14, 2024), https://www.concordmonitor.com/NH-sells-voter-data-to-political-candidates-here-s-what-they-do-with-it-55945677.

11

personal information is not a security concern, and these facts only serve to further undermine Defendants' security and privacy arguments.

Defendants' motion otherwise repeats to a few vague sentences in the Secretary's prior affidavit about "[e]lection infrastructure" being "under threat from domestic and foreign actors who seek to intrude into the system for criminal purposes" without offering any credible examples of such threats, either related to Defendants' voluntary disclosure in *Casey* or otherwise. His conclusory allegation of a nationwide threat ignores that federal law requires 44 other states to publicly disclose their voter registration files. *See* 52 U.S.C. § 20507(i)(1) (Section 8 of the National Voter Registration Act); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 45–47 (1st Cir. 2024) (holding Maine's Central Voter Registration system and Voter File must be "subject to disclosure under Section 8(i)(1)" because they "plainly relate[] to the carrying out of Maine's voter list registration and maintenance activities," including the Help America Vote Act's "computerized list" requirements).

While Defendants may have preferred if the Court dedicated more pages to rejecting each allegation and affidavit, *see* Mot. to Reconsider at 9 (speculating that "[t]he Court did not consider" the evidence before it), the Court was under no obligation to do so. *See, e.g.*, *United States v. Siciliano*, 578 F.3d 61, 74 (1st Cir. 2009) ("The premise of this argument—that a court denying a motion for reconsideration must offer a reasoned explanation of its disposition of every argument made in the motion, or otherwise risk abusing its discretion—is hopeless.").

## CONCLUSION

The Court should deny Defendants' motion for reconsideration. Plaintiffs respectfully ask the Court to deny Defendants' hearing request given the lack of new arguments, to permit the

Court to issue an order more expeditiously and end any prolonged tolling of Defendants' deadline to seek an interlocutory appeal. Defendants continue to profess that they understand that time is of the essence and that they recognize the authority of the Court, yet their actions repeatedly suggest otherwise. *See, e.g.*, *Limone v. United States*, 815 F. Supp. 2d 393, 402 (D. Mass. 2011) (holding that "the repeated filing of meritless motions to stay or reconsider discovery orders" are "[d]iscovery abuses" supporting sanctions). Accordingly, Plaintiffs respectfully seek an order:

1. Reiterating that Defendants are in continued violation of the Court's May 20, 2025 Endorsed Order and May 27, 2025 Memorandum Order;

2. Ordering Defendants to, within 10 days, do one of the following:

    a. Obtain a final order reversing the Court's orders from the First Circuit;[8]

    b. Obtain an emergency stay of the Court's orders from the First Circuit;

    c. Stipulate to the fact that "HB 1569 imposes severe burdens on New Hampshire voters"; or

    d. Produce to Plaintiffs the complete contents of the SVRS in .csv format;

3. Inviting Plaintiffs to seek appropriate sanctions after the deadline in Prayer 2, in the event of Defendants' continued noncompliance; and

4. Ordering further relief as the Court may deem just and proper.

Respectfully submitted on this June 6, 2025,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION,

---

[8] By requesting such relief, Plaintiffs do not concede that the Court's discovery orders meet the narrow criteria that would permit interlocutory appeal as an exception to the "[t]he general rule is that interlocutory orders are not immediately reviewable." *Awuah v. Coverall N. Am., Inc.*, 585 F.3d 479, 480 (1st Cir. 2009) (listing criteria).

13

MCKENZIE NYKAMP TAYLOR, DECEMBER RUST, MILES BORNE, BY HIS NEXT FRIEND STEVEN BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Henry R. Klementowicz*

Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

Ming Cheung*
Clayton Pierce*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
slakin@aclu.org

Geoffrey M. Atkins*
John T. Montgomery*
Desiree M. Pelletier*
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199
(617) 951-7000
Geoffrey.Atkins@ropesgray.com

John.Montgomery@ropesgray.com
Desiree.Pelletier@ropesgray.com

*Counsel for Plaintiffs*

\*Admitted *pro hac vice*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a copy of the foregoing document was served upon counsel for Plaintiff via electronic mail.

_____

*Henry R. Klementowicz*