UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

COALITION FOR OPEN DEMOCRACY, *et al.*,

    *Plaintiffs*,

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, *et al.*,

    *Defendants*.

Case No. 1:24-cv-00312-SE-TSM

## DEFENDANTS' MOTION TO STAY ORDER COMPELLING PRODUCTION OF THE STATEWIDE VOTER DATABASE AND RELATED DOCUMENTS

NOW COME Defendants New Hampshire Secretary of State David M. Scanlan and New Hampshire Attorney General John M. Formella, by and through their counsel, the Office of the Attorney General, moves to stay this Court's May 20, 2025, order granting Plaintiffs' motion to compel pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A). In support of this motion, the Defendants state as follows:

1. On March 27, 2025, Plaintiffs filed a motion to compel requesting the court compel Defendants to produce a "copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation[.]" Pls.' Mot. to Compel, ECF No. 60 at 7 (Mar. 27, 2025). Defendants' objected, articulating multiple reasons they should not be compelled to produce the database. Defs.' Am. Obj. Mot. to Compel, ECF No. 70 (Apr. 28, 2025). In an Endorsed Order signed May 20, this Court found the Defendants' reasoning unpersuasive and granted Plaintiffs' motion to compel, ordering Defendants to "produce to the plaintiffs the information requested in the motion to

1

compel" by May 27. End. Order (May 20, 2025).  The Court subsequently issued a Memorandum Order setting forth the rationale for its decision.  Mem. Order, ECF No. 75 (May 27, 2025).

2. Defendants filed a motion to reconsider pointing out several facts and points of law misapprehended by the court. Defs.' Mot. to Recons., ECF No. 77 (June 3, 2025).  Plaintiffs subsequently objected.  Pls.' Opp'n Mot. to Recons., ECF No. 78 (June 6, 2025).  The Court denied Defendants' motion on June 11, 2025, "for the reasons stated in the plaintiffs' objection." End. Order (June 11, 2025).

3. Defendants are contemporaneously filing an appeal with the United States Court of Appeals for the First Circuit challenging the order granting the Plaintiffs' motion to compel. While such an appeal is interlocutory, it is likely to be heard under the collateral order doctrine.

4. Federal courts of appeal generally exercise appellate jurisdiction only once a final decision has been rendered. *See United States v. Joseph*, 26 F.4th 528, 532 (1st Cir. 2022).  This rule, however, is subject to an exception known as the collateral order doctrine. *Id.*  This exception allows review of orders which "finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

5. "To fall within the limited class of final collateral orders, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* (internal citations omitted).  In the context of discovery rulings, court sometimes

2

add a fourth requirement: (4) the case presents "an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion." *In re Recticel Foam Corp.*, 859 F.2d 1000, 1003-04 (1st Cir. 1988) (quoting *United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir. 1979)).  These requirements are sometimes known as finality, separability, urgency, and importance. *Id.*

6. The order Defendants appeal meets the finality requirement as it conclusively answers the disputed question.  The Plaintiffs asked this Court to order Defendants to produce a "copy" of the statewide voter registration system. The Defendants objected to this request. The Court granted the Plaintiffs' motion and denied the Defendants' motion for reconsideration. The Court reiterated as recently as June 12 that it expects the Defendants to comply with its order. Indeed, the Court has already informed Defendants that there will be sanctions for noncompliance.  This Court has thus conclusively resolved the parties' dispute over whether the statewide voter database system can be produced in this case through civil discovery.

7. The order Defendants appeal also meets the separability requirement. Disclosure of the statewide voter database system is an extremely important issue to the people of the State of New Hampshire. The statewide voter database system contains highly sensitive information for nearly one million New Hampshire voters. It is a critical component of New Hampshire's election infrastructure. It was created at the direction of Congress and the Help America Vote Act ("HAVA"), which expressly authorized New Hampshire to choose how to implement HAVA's minimum voting system standards. 52 U.S.C. § 21081. Congress' conferral upon New Hampshire of discretionary authority to develop and maintain its computerized statewide voter registration list came with unambiguous federal standards and proscriptions.  *See* 52 U.S.C. § 21081(a).  Congress explicitly required New Hampshire to ensure that, regardless of the method

the state chooses to implement the system, the state's computerized statewide voter registration list must protect voter privacy, ballot confidentiality, and adequate technological security, among other things. *See id.* Taking Congress at its word, New Hampshire's citizens, through their elected officials, chose to protect this information by enacting a statute that unambiguously excludes disclosure of the statewide voter database system through civil discovery. Whether a federal district court may nonetheless order discovery of the statewide voter database system in a case brought under 42 U.S.C. § 1983 notwithstanding HAVA and an unambiguous state law passed pursuant to that statute is an extremely important issue of first impression. This question is wholly separate from the merits of this case, which concern whether changes to New Hampshire's voter-registration requirements unduly burden the right to vote.

8. The order Defendants appeal meets the urgency requirement. Through an Endorsed Order on May 20, which offered no narrative reasoning, the Court directed Defendants to comply within seven days. The Court's Memorandum Order was issued May 27, the same day as Defendants' compliance deadline. Since the Memorandum Order, the Court has held two virtual status conferences at which the Court reiterated that the deadline for compliance has passed. Moreover, at the most recent conference on June 12, 2025, the Court held in abeyance Plaintiffs' oral motion for relief that included a request that Defendants be required to do one of three things: (1) obtain a First Circuit order reversing the Court's database orders or a First Circuit stay; (2) to stipulate that "HB 1569 imposes severe burdens on New Hampshire voters;" or (3) produce the entirety of the database in .csv format.

9. If this Court's May 20th and 27th orders are not stayed, then the Defendants will be required to turn over the statewide voter database system despite a clear legislative directive not to do so. In other words, the cat will be out of the bag. Once the statewide voter database system

is produced, then the privilege authorized by HAVA and unambiguously embodied in the language of RSA 654:45, VI will have been pierced. And that decision will be effectively unreviewable on appeal, both because it is entirely separate from the merits of this case for the reasons already stated and because there will be no effective way to unwind the court's order on appeal at the end of this case once the statewide voter database system has already been produced to and used by the plaintiffs in a way—including by contacting voters directly based on information in the database—that is contrary to HAVA and the plain language of RSA 654:45, VI. This is the type of urgency that, in other contexts, the First Circuit has found more than sufficient to justify application of the collateral-order doctrine. *See Doe v. Mass Inst. Of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022) (applying the collateral order doctrine to pseudonym denial in part because "[o]nce a litigant's true name is revealed in the public docket, the toothpaste is out of the tube"). Thus, if the First Circuit does not hear this issue now, it will be functionally lost.

   10. The order Defendants appeal meets the importance requirement. No court has previously issued an order compelling production of New Hampshire's statewide voter database system notwithstanding HAVA and a statute enacted under it like RSA 654:45, VI. Neither the First Circuit nor the Supreme Court has ever addressed whether civil discovery in a § 1983 case can overcome a State's decision as to how to implement a system like the statewide voter database system made pursuant to express congressional authority under HAVA. Neither the First Circuit nor the Supreme Court has addressed the appropriate standard to apply to this issue or whether resolving it is within the sound discretion of a district court or, as the Defendants contend, turns on one or more questions of law that would be entitled to *de novo* review. Resolution of this issue is not merely important to the parties of the case, but to all citizens of the State of New Hampshire whose information is contained in the statewide voter database system

and whose representatives enacted a statute unambiguously protecting that information from civil discovery. It also presents the critical question of whether a State can take Congress at its word when it requires them to create a database that the State might not otherwise be inclined create.

11. For all these reasons, this Court's order granting Plaintiffs' motion to compel is appealable as a collateral order.

12. A party seeking a stay of judicial proceedings pending appeal "bears the burden of proving that the circumstances justify" the granting of that request. *Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). To make such a showing, an appealing party must establish: (1) a likelihood of success on the merits; (2) irreparable injury absent a stay; (3) the stay will not substantially injure the other parties' interests in the proceeding; and (4) the stay is in the public interest. *Id.* at 34-35. The circumstances of this case meet this standard and justify a stay.

13. The Defendants are likely to succeed on the merits of the appeal. While the Defendants recognize that the Court has rejected their cooperative federalism argument, they respectfully disagree with that conclusion and believe it will be reversed by the First Circuit or Supreme Court. In reaching its conclusion, the Court faulted the Defendants for not pointing to a case on point. Contrary to the Court's conclusion, this does not mean that the Defendants' argument lacks merit. Rather, it reflects the fact that no court has previously addressed the important issue implicated in the Plaintiffs' motion—namely whether RSA 654:45, VI operates as a matter of federal law to exempt the database from disclosure because Congress, through HAVA, required States to create databases and to implement them in a way that ensures, among other things, voter privacy and ballot confidentiality, but expressly left it to the States to

determine how to implement their databases. The Defendants' arguments on this issue raise questions of law implicating the rules of statutory construction and are likely to succeed on appeal.

14. This likelihood of success is further supported by the fact that, even if RSA 654:45, VI only operated as a state privilege, disclosure remains barred. In its memorandum order, this Court cited a number of other district court decisions applying the test articulated in *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), for determining whether a state law privilege applies in federal court. ECF No. 75 at 8 (citing *Moses v. Mele*, 10-cv-253-PB, 2011 WL 2174029, at *5 (D.N.H. June 1, 2011) and *G.K. v. Sununu*, 21-cv-4-PB, 2021 WL 6932204, at *3 (D.N.H. Dec. 30, 2021)). Though the Court did not independently apply the *Hampers* factors to RSA 654:45, VI, the Defendants read its memorandum order to implicitly conclude that those factors weigh in favor of discovery. The First Circuit is likely to reverse this conclusion. The First Circuit is likely to conclude that each of the *Hampers* factors—(1) whether the interest would be recognized by the state; (2) the costs to the federal interests in applying the privilege to prevent disclosure; and (3) the State's assertion that the privilege is "intrinsically meritorious" in the "independent judgement" of the federal courts, *id.* at 22—weighs in favor of recognizing RSA 654:45, VI, even if the Defendants' cooperative federalism argument lacked merit and the statute only conferred a state-law privilege.

15. The interests of the State of New Hampshire will be irreparably injured absent a stay. Where a district court issues an order that bars a state from executing its duly enacted law, the state suffers irreparable harm. *See Abbott v. Perez*, 585 U.S. 579, 602 (2018). The Supreme Court has explained that where a district court orders the functional equivalent of an injunction barring a state from executing its duly enacted laws, "this would seriously and irreparably harm

7

the State, and only an interlocutory appeal can protect that State interest." *See id.* at 602-03. Only an unconstitutional law may be so enjoined, without irreparably harming the state. *Id.* This Court's order prevents New Hampshire from enforcing duly enacted state law designed to protect voter privacy and election integrity. Disclosure of the SVRS while an appeal is pending would effectively moot the appeal because the SVRS cannot be clawed back in any meaningful way, given the explicit proscription against disclosure in New Hampshire law. The Court did not hold that either SVRS confidentiality or HB 1569 is unconstitutional. For this reason alone, the irreparable harm prong is satisfied.

16.     The irreparable harm prong is also satisfied, however, because the people of the State of New Hampshire whose private information such as voter telephone numbers, e-mail addresses, and confidential voter information (voters whose information is not public because they are the victims of domestic violence, for example), among other things, will have that information produced to third parties despite a clear expectation of privacy that is both of federal- and state-law dimension. Even local election officials do not have such extensive access. Local officials can search the database to confirm voter registrations across the state, but they only have access to private voter information related to the voters in their specific towns or wards. This Court's order directs unprecedented third-party access to the database that does not exist in any other context. And the Plaintiffs have made clear that they intend to *use* that information to contact voters directly to discuss their voting history. *See* Pls.' Mot. to Compel, ECF No. 60 at 4 (Mar. 27, 2025). In other words, voters who have every expectation under federal and state law that the information contained in the statewide voter database system will remain private and confidential will be contacted by third parties represented by advocacy groups and learn that the information was provided notwithstanding those protections. This sort

8

of contact will bring with it the clear message that, notwithstanding federal and state law to the contrary, private information maintained as part of New Hampshire's critical election infrastructure can be turned over any time a party proceeds past a motion to dismiss in a voting case brought in federal court. Disclosure of private information cannot be undone—the toothpaste will be out of the tube. *See Mass Inst. Of Tech.*, 46 F.4th at 66. Disclosure will also send that message at a time when election integrity is increasingly being questioned. This is, quintessentially, one of the things RSA 654:45, VI is designed to protect against. For this reason, too, the irreparable harm prong is satisfied.

17. A stay will not substantially injure Plaintiffs' interests in this proceeding. Plaintiffs assert that the database:

> will aid Plaintiffs in presenting a complete picture (with data) demonstrating the degree to which individuals who participated in New Hampshire elections prior to HB 1569 would have been impacted by HB 1569 had it been in effect in prior elections, and those who have been burdened by HB 1569 since its effective date on November 11, 2024.

ECF No. 60 at 4-5. To the extent the Plaintiffs want access to database data to do some sort of comparative analysis to show the number of voters who used affidavits to register in the past but will not be able to do so now, they already have that data. Defendants produced Excel spreadsheets (slip sheet at SOS-000003) on May 18, 2025—two days before the Court issued its Endorsed Order. The data shows QVA and CVA use by current active, pending, and pending removal voters from January 1, 2016 to May 15, 2025. The notion, then, that the Plaintiffs need access to the database to conduct a comparative analysis is not persuasive.

18. The Plaintiffs have also indicated that they intend to use information contained in the database to contact voters directly. As explained above, this is a significant intrusion into voters' privacy that RSA 654:45, VI is designed to protect against. But even setting that aside,

9

the Plaintiffs do not explain why they *need* this information. Defendants have already produced all checklists submitted to the Secretary's Office by local election officials between 2018 and 2024 (SOS-000004 and SOS-481048) with 2016 checklists forthcoming. This information discloses voter names, mailing addresses, domicile addresses, voter IDs, and CVA use to obtain ballots. The Plaintiffs do not explain why contacting voters by mail and requesting that they reach out to Plaintiffs' counsel is an insufficient means of communication. Nor do they suggest that they have no other means of identifying voters' other contact information, including their phone numbers. The Plaintiffs' desire to access database information therefore stems from convenience, not from need. They will not be substantially injured in the event of a stay.[1]

19.   A stay is in the public interest largely for the same reasons the interests of the State of New Hampshire and its people will be irreparably injured absent a stay. Turning over the data while the legal issues are being litigated would relegate the privilege argument to an academic exercise. The public, through their elected representatives in Congress, enacted HAVA. That statute requires States to create voter databases and that they implement the system to ensure voter privacy and ballot confidentiality but leaves it to the States to determine how that implementation should occur. *See* 52 U.S.C. §§ 21081(a), 21083(a)(1). The people of New Hampshire, through their elected representatives in the General Court, enacted RSA 654:45, VI,

---

[1] To the extent the Plaintiffs would argue that they need to access the database information because it would take too long to obtain and process information from other sources, this argument is not persuasive. The Plaintiffs have demanded that this case be resolved sufficiently in advance of the 2026 election to avoid any *Purcell*-related argument. The Defendants and the Court have indulged that demand. But there is no immutable rule that an election case *must* be resolved in advance of an upcoming election; indeed, the *Purcell* principle recognizes that this will often *not* be possible. Rule 26 contemplates that discovery must be proportionate to the needs of the case. If, to marshal the evidence they feel is necessary to prove their claim, the Plaintiffs require more time than the current discovery period allows, then the answer is to expand the discovery period to match the needs of the case. It is not to allow the Plaintiffs access to a confidential database simply because it would be more convenient than obtaining information from some other source.

which expressly exempts the database from disclosure through discovery. "The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980). "[G]iving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (citation omitted). Additionally, as discussed, the database at issue here contains private information related to nearly one million New Hampshire voters, as well as critical election infrastructure that is essential to maintaining election integrity. It is clear, particularly when considering that the plaintiffs do not need any of the information in question to prosecute their case, that the public interest weighs overwhelmingly in favor of a stay.

WHEREFORE, Defendants New Hampshire Secretary of State David M. Scanlan and New Hampshire Attorney General John M. Formella respectfully request this court stay its May 20, 2025, order granting Plaintiffs' motion to compel pending resolution of Defendants' appeal to the United States Court of Appeal for the First Circuit.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: June 13, 2025

/s/ Matthew T. Broadhead
Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Michael P. DeGrandis, N.H. Bar No. 277332

Assistant Attorney General
Catherine A. Denny, N.H. Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
matthew.t.broadhead@doj.nh.gov
michael.p.degrandis@doj.nh.gov
catherine.a.denny@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

 /s/ Michael P. DeGrandis
Michael P. DeGrandis