UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coalition for Open Democracy, League of Women Voters of New Hampshire, The Forward Foundation, McKenzie Nykamp Taylor, December Rust, Miles Borne, by his next friend Steven Borne, Alexander Muirhead, by his next friend Russell Muirhead, and Lila Muirhead, by her next friend Russell Muirhead,<br><br>Plaintiffs,<br><br>vs.<br><br>David M. Scanlan, in his official capacity as New Hampshire Secretary of State, and John Formella, in his official capacity as New Hampshire Attorney General,<br><br>Defendants. | Civil Action No. 1:24-cv-00312 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO STAY ORDER COMPELLING PRODUCTION OF THE STATEWIDE
VOTER REGISTRATION DATABASE AND RELATED DOCUMENTS**

## INTRODUCTION

Seventeen days into Defendants' ongoing violation of this Court's order compelling productions related to the statewide voter registration system ("SVRS"), they demanded an indefinite stay of that order pending appeal. The Court's discovery order is a quintessentially unappealable interlocutory order, and Defendants' arguments in support of appellate jurisdiction and a stay are uniformly meritless. Defendants are now prepared to press their ill-fated effort to run out the clock to the First Circuit and potentially the Supreme Court. The Court should deny the motion to stay.

## PROCEDURAL HISTORY[1]

On March 27, 2025, Plaintiffs filed a motion to compel the contents of the SVRS and related documents. ECF No. 60. After briefing and multiple conferences, on May 20, 2025, the Court orally granted Plaintiffs' motion. Min. Entry (May 20, 2025). The Court also entered an Endorsed Order ordering Defendants to produce the compelled discovery by May 27, 2025. *See* May 20, 2025 Endorsed Order. On May 27, 2025, the Court published a Memorandum Order reiterating its ruling and reaffirming its order to "produce the requested information on or before May 27, 2025." Mem. Order, ECF No. 75 at 1, 5 (May 27, 2025). After further briefing, the Court denied Defendants' motion for reconsideration. *See* June 11, 2025 Endorsed Order.

Defendants failed to produce the compelled documents by May 27, in direct violation of the Court's order. *See, e.g.*, June 12, 2025 Tr. at 43:7–8 ("[T]he defendants in this case are currently in violation of a Court order and have been in violation of that Court order for some time."); *id.* at 6:13–17 ("You have now failed to comply with an order of this Court, . . . and you are still very much under an order of this Court to disclose the information you have previously

---

[1] For further procedural history, see Pls.' Opp'n to Mot. to Reconsider, ECF No. 78 at 1–4.

been ordered to disclose."); *see also* Mot. to Stay at 3 ("[The Court] expects the Defendants to comply with its order."); *id.* at 4 ("Since the Memorandum Order, the Court has held two virtual status conferences at which the Court reiterated that the deadline for compliance has passed.").

As of this filing, Defendants have been in violation of the Court's order for 20 days.

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). When deciding whether grant such an intrusion, courts weigh four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the traditional standard are the most critical." *Id.* "It is not enough that the chance of success on the merits be 'better than negligible,'" as the law requires "more than a mere 'possibility'" of success. *Id.* (cleaned up). "By the same token, simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Id.* at 434–35 (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

When a litigant files a notice of appeal "that designates a clearly unappealable order, the district court need not stay proceedings but should continue to adjudicate the underlying matter in the ordinary course, as if no notice of appeal has been filed." *U.S. Bank Nat'l Ass'n v. Richmond*, No. 24-1342, 2024 WL 4529690, at *2 (1st Cir. July 25, 2024).

## ARGUMENT

**I.     Defendants are unlikely to succeed on the merits.**

Defendants' effort to challenge this Court's discovery order will fail before it even reaches the merits, as it is not an appealable collateral order. Further, for reasons well known to the Court, Defendants' cooperative federalism argument is meritless, as is their newly raised attempt to claim that a state law privilege supersedes federal procedural rules.

A. <u>The discovery order is not an appealable collateral order.</u>

Defendants' appeal is not "likely to be heard under the collateral order doctrine," Mot. to Stay at 2, because "[i]t is apodictic that discovery orders, in general, are not final." *In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins.*, 864 F.2d 208, 210 (1st Cir. 1988) (quotation omitted). Interlocutory orders are only appealable as collateral orders if they "(1) are distinct from the merits, (2) are definitive as to the issues sought to be reviewed, (3) affect interests that could not be vindicated by appeal after a final judgment, and (4) present an important issue meriting immediate review." *Awuah v. Coverall N. Am., Inc.*, 585 F.3d 479, 480 (1st Cir. 2009). Thus, the doctrine only applies to a "small class of decisions that do not end the litigation but are nonetheless considered 'final' and thus immediately reviewable." *United States v. Gorski*, 807 F.3d 451, 458 (1st Cir. 2015) (internal quotation marks omitted). "[A]lthough the [Supreme] Court has been asked many times to expand the 'small class' of collaterally appealable orders, [it has] instead kept it narrow and selective in its membership." *Will v. Hallock*, 546 U.S. 345, 350 (2006). "The burden of establishing jurisdiction rests with the party who asserts its existence." *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir. 2005).

"Ordinarily, litigants may not seek immediate appeal of discovery orders because they are not final decisions and orders of the district court." *Gorski*, 807 F.3d at 458; *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("[W]e have generally denied review of pretrial discovery orders."); *In re Insurers Syndicate*, 864 F.2d at 210 ("[D]iscovery orders rarely satisfy all four of these criteria.") (quotation omitted).

3

First, the Court's discovery order is "unreviewable" as a matter of black letter law. "[M]ost discovery orders do not fall within the collateral order exception [] because they do not meet the 'otherwise effectively unreviewable' requirement; the party resisting the discovery order 'can gain the right of appeal . . . by defying it, being held in contempt, and then appealing from the contempt order, which would be a final judgment as to [him].'" *FDIC v. Ogden Corp.*, 202 F.3d 454, 459 (1st Cir. 2000) (quoting *Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254, 257 (1st Cir. 1989)); *see Mohawk*, 558 U.S. 111 ("Another long-recognized option is for a party to defy a disclosure order and incur court-imposed sanctions. . . . Such sanctions allow a party to obtain postjudgment review without having to reveal its privileged information."). This "forced choice" is "a useful filter, helping to separate those cases in which appellate review of the discovery order is worthwhile from those in which it is not." *Garcia*, 876 F.2d at 258.

That "the Court has already informed Defendants that there will be sanctions for noncompliance" does not help them "meet the finality requirement." Mot. to Stay at 3. Quite the opposite. Defendants have a choice: comply (under a strict protective order) or defy the order and face the consequences. Defendants must "decide if [their] reasons for resisting the court order are good enough—and [their] resolve strong enough—to incur the risk of a contempt citation." *Garcia*, 876 F.2d at 258. Because they can still "refuse to comply with the order," "[t]his is a perfect example of a discovery order that is not immediately appealable." *Ogden Corp.*, 202 F.3d at 458 n.2.

Next, Defendants fail by arguing that an appeal should be permitted for *this particular* order. In assessing whether an order falls within the "narrow class," courts "do not engage in an 'individualized jurisdictional inquiry.'" *Mohawk*, 558 U.S. at 107 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). Rather, courts take a categorical approach: "[a]s long as the

4

class of claims, taken as a whole, can be adequately vindicated by other means, 'the chance that the litigation at hand might be speeded, or a "particular injustic[e]" averted,' does not provide a basis for jurisdiction under § 1291." *Id.* (quoting *Livesay*, 437 U.S. at 473).  The Supreme Court has held "the limited benefits of applying 'the blunt, categorical instrument of § 1291 collateral order appeal' to privilege-related disclosure orders simply cannot justify the likely institutional costs."  *Id.* at 112; *see Gorski*, 807 F.3d at 458 (rejecting arguments about specific order because "the Court made it clear in *Mohawk* that the availability of collateral order review is determined by examining 'the class of claims, taken as a whole.'").  Thus, even if Defendants' arguments about *this* order had merit, the First Circuit would still lack jurisdiction.  It matters not that "an order to disclose privileged material may, in some situations, have implications beyond the case at hand," as "the same can be said about many categories of pretrial discovery orders for which collateral order appeals are unavailable."  *Mohawk*, 558 U.S. at 112.

Further, Defendants incorrectly insist that the order is sufficiently urgent to be appealable because once the compelled material is disclosed, "the cat will be out of the bag."  Mot. to Stay at 4–5.  As the Supreme Court has explained, "[t]hat a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed.'" *Mohawk*, 558 U.S. at 107 (quoting *Digital Equip. Corp v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994)); *see id.* at 109 (order was unappealable even though it "is undoubtedly correct that an order to disclose privileged information intrudes on [] confidentiality").  The only case Defendants cite to support their urgency assertion—and, indeed, their only citation in support of *any* of the four prongs they must prove to invoke appellate jurisdiction—is *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022), an inapposite case involving orders denying a litigant's motion to proceed by pseudonym.  *See, e.g.*, *Doe v. Coll. of N.J.*, 997 F.3d 489, 494 (3d Cir. 2021)

5

("[T]he appeal of an order denying a motion to proceed anonymously is readily distinguishable from the grant of a motion to compel disclosure of privileged information in discovery . . . ."). For reasons addressed in the public interest discussion below, Defendants' related privacy concerns are unfounded.

Additionally, Defendants' importance arguments are overstated. The significance of their so-called "cooperative federalism" issue is highly exaggerated for reasons addressed in the subsequent discussion of their unlikelihood of success on merits, Plaintiffs' prior briefing, and the Court's well-reasoned order. *See, e.g.*, Mem. Order at 7–9 (describing "cooperative federalism" argument as "a red herring" and "particularly weak"). One new assertion is worth attention here: Defendants state that "[n]o court has previously issued an order compelling production of New Hampshire's statewide voter database system notwithstanding [the Help America Vote Act ("HAVA")] and a statute enacted under it like RSA 654:45, VI." This is false. Just three weeks ago, Defendants filed a protective order from *Casey v. N.H. Sec'y of State*, No. 19-cv-149 (D.N.H. 2019), entered long after the enactment of HAVA in 2002, as an exhibit to their motion to reconsider. *See* Ex. 2 to Defs.' Mot. to Reconsider, ECF No. 77-2. In a section titled "Judicial Determination Regarding Discoverability of Database Information," that order states,

> At the August 13, 2019 preliminary pretrial conference, the defendants objected to disclosing information from the Database . . . to the plaintiffs on the basis that such information is privileged and confidential under N.H. Rev. Stat. Ann. § 654:45 and cannot be disclosed pursuant to a subpoena or civil litigation discovery request. *The court ruled, over the defendants' objection, that the state-law privilege set out in N.H. Rev. Stat. Ann. § 654:45 did not apply in this federal proceeding and directed the defendants to produce Database Information as part of discovery in this case*. In light of this ruling, the defendants will produce Database Information in response to the plaintiffs' discovery requests, subject to the terms of this Protective Order.

*Id.* at 2 (emphasis added).[2]

Plaintiffs expect to address further deficiencies in Defendants' jurisdictional arguments before the Court of Appeals. At this stage, each of the preceding points is sufficient to deny a stay.

B. <u>Defendants' arguments fail on the merits.</u>

Even if the discovery order were appealable, Defendants' effort would fail on the merits. "The sine qua non of the stay pending appeal standard is whether the movants are likely to succeed on the merits." *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) (quoting *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993)) (cleaned up). "It is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted) ("[M]ore than a mere 'possibility' of relief is required"). Further, when "consider[ing] the [Defendants'] likelihood of success, it is relevant that the appeal on the merits from the district court's [discovery] order, which is sought to be stayed pending appeal, would be subject to an abuse of discretion standard of review." *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022); *Pina v. Child.'s Place*, 740 F.3d 785, 790 (1st Cir. 2014) ("We review challenges to a district court's discovery determinations under an abuse of discretion standard.")

Defendants raise two grounds to support of their likelihood of success on appeal: their "cooperative federalism" claim and a new argument that "even if RSA 654:45, VI only operated as a state privilege, disclosure remains barred." Mot. to Stay at 6–7. Neither is likely to succeed.

First, Defendants' cooperative federalism argument "is a red herring." Mem. Order at 8. The Court properly rejected this "particularly weak" argument, noting that "defendants do not

---

[2] The *Casey* court's oral ruling was, or course, a court order. *See, e.g.*, *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 n.7 (11th Cir. 1993) ("Oral orders are just as binding on litigants as written orders"). The *Casey* court's oral order was further reemphasized in the protective order, which, as Defendants insist, "more to the point, . . . was a court order." Mot. to Reconsider at 7.

7

explain how Congress's direction [in HAVA] to New Hampshire to implement a statutory scheme related to voting absolves the state of its discovery obligations in federal court." *Id.* Defendants' "belie[f]" that the Court's holding "will be reversed by the First Circuit or Supreme Court" is not sufficient. Mot. to Stay at 6–7. They do not explain *why* they might succeed, nor could they. There is no basis to read HAVA's directive to "provide adequate technological security measures" so broadly as to implicitly authorize states to override Federal Rules of Civil Procedure. To the contrary, HAVA confirms that Congress *did not* intend for its "technological security" provisions to authorize states to prevent disclosure of voter registration information, in litigation or otherwise. HAVA expressly states that "nothing in this Act may be construed to authorize or require conduct prohibited under . . . [t]he National Voter Registration Act of 1993 [("NVRA")]" "or to supersede, restrict, or limit the application of [the NVRA]." HAVA § 906, Pub. L. 107–252, October 29, 2002, 116 Stat 1666. Accordingly, through HAVA, Congress expressly *did not* authorize states to violate NVRA Section 8(i)(1)'s preexisting requirement that they must disclose voter registration materials. *See e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 45–47 (1st Cir. 2024) (concluding state privilege law is preempted by NVRA and Maine's Central Voter Registration system and Voter File must be "subject to disclosure under Section 8(i)(1)" precisely *because* it "plainly relates to the carrying out of Maine's voter list registration and maintenance activities," including HAVA's "computerized list" requirements).[3] This argument is not likely to succeed.

Second, Defendants raise a new argument that, "even if RSA 654:45, VI only operated as a state privilege," it still trumps the Federal Rules of Civil Procedure. Mot. to Stay at 7. Defendants base this argument on their belief that the Court implicitly applied a multi-factor

---

[3] New Hampshire is one of very few states exempt from the NVRA, but the First Circuit's analysis still makes clear that Congress did not intend in HAVA to implicitly authorize states to bar disclosure of their voter registration lists, as Defendants argue here.

8

analysis and did so incorrectly. *Id.* (citing *In re Hampers*, 651 F.2d 19 (1st Cir. 1981)). As a preliminary matter, Defendants cannot raise this argument on appeal. "To preserve a point for appeal, some developed argumentation must be put forward in the nisi prius court—and a veiled reference to a legal theory is not enough to satisfy this requirement." *Mullane v. United States Dep't of Just.*, 113 F.4th 123, 132 (1st Cir. 2024) (quoting *B&T Masonry Const. Co. v. Pub. Serv. Mut. Ins. Co.*, 382 F.3d 36, 40 (1st Cir. 2004)). "In this vein, we have made clear 'that a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court.'" *Id.* (quoting *B&T Masonry*, 382 F.3d. at 41) (cleaned up); *see also, e.g.*, *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 321 (1st Cir. 2009) (holding that appellant "could not raise [an] issue for the first time on appeal" when they "failed" to "raise this argument before [prior] court in a motion for reconsideration").

Defendants point to the Court's reliance on two cases—*G.K. v. Sununu*, No. 21-cv-4-PB, 2021 WL 6932204, at *3 (D.N.H. Dec. 30, 2021) and *Moses v. Mele*, No. 10-cv-253-PB, 2011 WL 2174029, at *5 (D.N.H. June 1, 2011)—as the source of this alleged issue.[4] Plaintiffs cited both of these cases in the motion to compel for the proposition that "state law privileges must cede to federal civil discovery rules, and federal courts in New Hampshire have consistently rejected any claim to the contrary." Mot. to Compel, ECF No. 60 at 5–6. In their objection, Defendants failed to respond to these cases—or to this argument at all—and instead doubled down on their position that "New Hampshire's prohibition of SVRS disclosure in civil litigation cannot be severed from

---

[4] *G.K. v. Sununu* does not cite *Hampers*. *Moses v. Mele* concluded that "[s]tate statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions," regardless of the mode of analysis used. 2011 WL 2174029, at *5. The party seeking to enforce the state law privilege argued that "the court should utilize the process outlined in *Hampers*," but the court explained that even under *Hampers*' reasoning, the state law privilege would not apply. *Id.* at *6.

9

HAVA as if it were an idiosyncratic state-based procedural privilege." Obj. to Mot. to Compel, ECF No. 70 at 9. After the Court granted Plaintiffs' motion, citing these cases, Defendants moved to reconsider but neglected to raise this "state law privilege" argument. *See* Mot. to Reconsider, ECF No. 77. Defendants' attempt to mount this novel argument for the first time on appeal will not succeed.

Even if the argument were properly raised on appeal, it would fail on the merits. Defendants do not explain *why* the Court erred; rather, their motion offers only the conclusory statement that "[t]he First Circuit is likely to conclude that each of the *Hampers* factors" weighs in their favor. Mot. to Stay at 7. That proclamation is both insufficient to support a stay and incorrect. Even assuming the district court "implicitly" applied *Hampers'* analysis, Mot. to Stay at 7, it would have done so correctly. For one, the *Hampers* analysis pertained to the probative nature of evidence barred by state-law privilege in a federal criminal investigation, and the court stressed "that this is a criminal, and not a civil case." *Hampers*, 651 F.2d at 24. Further, when considering "whether the federal interest in seeking full disclosure is a weak or strong one," *Hampers* emphasized that only "longstanding" state privileges build a "reliance interest" in "assured confidentiality." *Id.* at 21–22. The New Hampshire law at issue here was enacted only a few years ago to avoid compliance with a state court's discovery order in other litigation. *See Petition of New Hampshire Sec'y of State*, 171 N.H. 728, 730–34 (2019). And the federal interest is otherwise strong: for example, federal law mandating public disclosure of such information in nearly all states, *see* 52 U.S.C. § 20507(i)(1), would be severely undermined if states could evade it by simply passing a conflicting state statute. Moreover, the state law prohibition does not qualify as "intrinsically meritorious." *Hampers*, 651 F.2d at 22–23. Voters do not register "in a confidence that they will not be disclosed," *id.* at 23, nor is there any indication that voters would

10

decline to register absent strict confidentiality, *see id.* (asking "whether this element of confidentiality is essential to 'the full and satisfactory maintenance of the relation between the parties'").[5] For these reasons and more, this argument is highly likely to fail on the merits.

## II. Defendants will not suffer irreparable injury absent a stay.

It is well settled that discovery orders do not impose irreparable injury because options remain for the compelled party. *Mohawk*, 558 U.S. at 112 (concluding that, at worst, the "fraction of orders" compelling discovery of privileged information that "may nevertheless harm individual litigants" cause "only imperfectly reparable" harm, not irreparable harm). Even "litigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal." *Id.* at 110 (describing options).

Moreover, the protective order—which is required by the Court, *see* June 12, 2025 Endorsed Order, and is in the final stages of negotiation between the parties—mitigates any possible harm to Defendants. The Supreme Court has instructed that "protective orders are available to limit the spillover effects of disclosing sensitive information" when compelled by discovery orders. *Mohawk*, 558 U.S. at 112; *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 n.2 (2011) (explaining that when "the Government produce[s] the documents under a protective order," their "compliance with the production order does not affect our review," as appellate courts can "still provide effective relief by preventing further disclosure and by excluding the evidence from trial" on appeal from final judgment) (citing *Mohawk*).

Claims of irreparable harm must be correct in "fact and reality." *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 15 (1st Cir. 2020). "[S]imply showing some 'possibility of irreparable

---

[5] As discussed in the public interest section below, Defendants have disclosed the same information in prior litigation, state law requires the sale and disclosure of much of compelled discovery, and Defendant Scanlan has publicly stated voters have no expectation of privacy.

11

injury,' fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (citation omitted). Defendants fail to make a sufficient showing. They cannot rely on vague speculation about future cyberattacks or data breaches. *See* Mem. Order at 10 ("They offer no support for that statement."); *cf. Common Cause R.I.*, 970 F.3d at 15 (finding no "irreparable harm" because a claim about "fraudulent ballots" may be "correct as a matter of theory," "[b]ut it is dubious as a matter of fact and reality"). And Defendants' prior disclosure of the statewide database without consequence undermines the credibility of their alarmist arguments. *See* Mem. Order at 10.

Defendants rely on a single inapposite case to argue the "State of New Hampshire" would be harmed absent a stay. Mot. to Stay at 7. In *Abbott v. Perez*, the Court held that district court orders "effectively directing the State not to conduct . . . elections using [legislatively enacted] districting plans" were "effectively injunctions" and thus appealable under 28 U.S.C. § 1253. 585 U.S. 579, 584, 594 (2018). Although Section § 1253 is not applicable here, the Court analogized it to 28 U.S.C. § 1292(a)(1), which gives appellate courts jurisdiction over interlocutory orders granting or denying injunctions. *Id.* at 594. Here, Defendants do not invoke § 1292(a); they rely solely on § 1291 because this order is not an interlocutory injunction. The Court has not enjoined any state law; it correctly explained that a state law privilege governs only state judicial proceedings and has not restricted the law's operation in state courts.[6]

Because Defendants fail on the first two factors, the Court should end its analysis here. Only after "an applicant satisfies the first two factors" does "the traditional stay inquiry call[] for assessing the harm to the opposing party and weighing the public interest." *Nken*, 556 U.S. at 435;

---

[6] Defendants' allegations of harms to New Hampshire voters, Mot. to Stay at 8–9, are not relevant to "whether *the applicant* will be irreparably injured absent a stay," *Nken*, 556 U.S. at 433–34 (emphasis added). At most, these points pertain to the public interest. Accordingly, Plaintiffs address that argument in the relevant portion of this brief.

*see Candelario-Del Moral v. UBS Fin. Servs. Inc. of P.R.*, 290 F.R.D. 336, 346–47 (D.P.R. 2013), *aff'd sub nom. In re Efron*, 746 F.3d 30 (1st Cir. 2014) ("Given [the movant's] failure to meet his burden under the first two factors, 'an analysis of the other factors . . . would be supererogatory.'") (quoting *Weaver*, 984 F.2d at 14 n.5).

### III. The remaining factors weigh strongly against granting a stay.

A stay would substantially injure Plaintiffs. Plaintiffs' particular need for the compelled discovery is well known to the Court. *See, e.g.*, Mem. Order at 4–5, 11–12; June 12, 2025 Tr. at 52:6 (proposed alternatives are "insufficient"). The Court should reject Defendants' suggestion that their lesser production of generalized data mitigates their three-week (and counting) defiance of a court order. *See Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (refusing to let "the defendant [become] the sole arbiter of [the] decision" whether to turnover discovery, which is "unquestionably the decision of the judge").

This case is proceeding on an exceptionally tight timeline, given imminent elections and the *Purcell* issues that could arise if trial is pushed. Although Defendants have repeatedly recognized as much and assured the Court that they will comply with its trial schedule, they now concerningly change course. *See* Mot. to Stay at 10 n.1 (dismissing *Purcell* concerns and stating "the answer is to expand the discovery period" rather than to adhere to the Court's schedule). It is not just Plaintiffs who desire to resolve this case before the 2026 elections. Just days ago, the Court stated on the record:

> I have impressed upon you, meaning you collectively, the defendants and whoever is representing them at any hearing, that the timeline of this case is just immovable unless we, as one case, are going to decide that the election is no longer happening when it's supposed to happen, and we all know that's ridiculous, and, of course, we're not going to do that. This case has to be decided by a certain time, so we don't have a choice. Things have to move forward.

13

June 12, 2025 Tr. at 35:16–23.

Defendants should not be permitted to claim urgency after waiting weeks to notice an appeal. Defendants have asked for extensions of nearly every discovery deadline thus far—indeed, six months after serving initial requests, Plaintiffs have only received some publicly available documents, generalized unverifiable data, and incomplete interrogatory responses. Prior to admitting their noncompliance, Defendants routinely blamed their delay on the complexity of preparing this disclosure. If a stay is granted, Defendants will surely halt their long overdue preparations to facilitate disclosure. Plaintiffs cannot produce their expert reports without access to the compelled material, and at this stage, we fully expect Defendants would attempt to extend their expert deadline too, despite delays of their own making. If a stay is granted, it is likely that their dilatory approach will necessitate continuing the trial, risking 2026 elections held under laws that the Court may deem unconstitutional.

This same harm counsels in favor of denying the stay to support the public interest. The public interest weighs strongly against continued delay of these proceedings. There can be no public interest in conducting elections under unconstitutional conditions because of the state's unwarranted delays and defiance of a federal court order. "[T]he public interest will be served if discovery proceeds" because "[i]t is in the interests of justice that [Plaintiffs' voting rights claims] be decided as soon as possible," and "[d]enying the motion to stay will serve that interest." *Republic Maximal LLC v. Romulus Cap. Partners II, LLC*, 754 F. Supp. 3d 264, 272 (D. Mass. 2024).

Defendants' catastrophizing about the harms to individual voters is unwarranted. First, any disclosure of personal data would be subject to a strict protective order that, at most, allows Plaintiffs' team to ask voters about *themselves*. Second, Defendants' own actions belie their

privacy arguments. They disclosed this same information just years ago to similar plaintiffs represented by the same counsel. Mem. Order at 10. State law makes substantial amounts of voter information public. *See* RSA § 654:31.II. The state has profited by "more than $1.1 million in the past decade" from selling names, addresses, voter history, and party affiliations to political parties under RSA § 654:31.IV, and Secretary Scanlan defended the practice, stating, "If you're going to participate in an election, the other voters that are participating have a right to know who is participating in the election."[7] Defense counsel conceded political parties "add on" "contact information" to the records they purchase from the State. June 12, 2025 Tr. at 50:15–20. The risks of harm to the public from disclosure are therefore exceedingly minimal.

Defendants' reference to the pseudonym issue in *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022), is inapposite. That case involved unique concerns "involved with being identified as a perpetrator of sexual assault" such that "any ultimate success in th[e] matter would be negated by the disclosure of [appellant's] name." *Id.* at 73. No such issues arise here. Rather, other pseudonym precedent counsels that a stay should be denied when, as here, movants' fears are not "objectively reasonable," and they "continue to rely on [] generalized assertions" as support and do "not establish any non-speculative present harm from disclosure." *Mills*, 39 F.4th at 26.

Accordingly, the remaining factors counsel against granting the motion to stay.

## CONCLUSION

The Court should deny Defendants' motion to stay the order pending appeal.

---

[7] Charlotte Matherly, *New Hampshire Sells Voter Data to Political Candidates and Parties. What Happens to It?*, CONCORD MONITOR (Oct. 14, 2024), https://www.concordmonitor.com/NH-sells-voter-data-to-political-candidates-here-s-what-they-do-with-it-55945677.

Respectfully submitted on this June 16, 2025,

COALITION FOR OPEN DEMOCRACY, LEAGUE OF WOMEN VOTERS OF NEW HAMPSHIRE, THE FORWARD FOUNDATION, MCKENZIE NYKAMP TAYLOR, DECEMBER RUST, MILES BORNE, BY HIS NEXT FRIEND STEVEN BORNE, ALEXANDER MUIRHEAD, BY HIS NEXT FRIEND RUSSELL MUIRHEAD, AND LILA MUIRHEAD, BY HER NEXT FRIEND RUSSELL MUIRHEAD

By and through their attorneys,

*/s/ Henry R. Klementowicz*

Henry R. Klementowicz (N.H. Bar No. 21177)
Gilles R. Bissonnette (N.H. Bar No. 265393)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 333-2201
henry@aclu-nh.org
gilles@aclu-nh.org

Jacob van Leer*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

Ming Cheung*
Clayton Pierce*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
mcheung@aclu.org
cpierce@aclu.org
slakin@aclu.org

Geoffrey M. Atkins*
John T. Montgomery*
Desiree M. Pelletier*

16

ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199
(617) 951-7000
Geoffrey.Atkins@ropesgray.com
John.Montgomery@ropesgray.com
Desiree.Pelletier@ropesgray.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 16, 2025, a copy of the foregoing document was served upon counsel for defendants via electronic mail.

_____

*Henry R. Klementowicz*